No. 26-40237

## UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

NATIONAL RELIGIOUS BROADCASTERS; SAND SPRINGS CHURCH; FIRST BAPTIST CHURCH WASKOM; INTERCESSORS FOR AMERICA,

*Plaintiffs-Appellants,*

v.

SCOTT BESSENT, ACTING COMMISSIONER OF THE INTERNAL REVENUE SERVICE; INTERNAL REVENUE SERVICE,

*Defendants-Appellees.*

On Appeal from the United States District Court
for the Eastern District of Texas
Case No. 6:24-CV-311

## OPENING BRIEF OF APPELLANTS

| | |
|---|---|
| James A. Campbell | Michael P. Farris |
| John J. Bursch | *Counsel of Record* |
| David A. Cortman | Sarah Siu |
| ALLIANCE DEFENDING FREEDOM | NATIONAL RELIGIOUS BROADCASTERS |
| 440 First Street NW, Suite 600 | 800 Maryland Ave, N.E. |
| Washington, DC 20001 | Washington, D.C. 20002 |
| (202) 393-8690 | (571) 359-6000 |
| jcampbell@ADFlegal.org | mfarris@nrb.org |
| jbursch@ADFlegal.org | ssiu@nrb.org |
| dcortman@ADFlegal.org | |

Jacob P. Warner
ALLIANCE DEFENDING FREEDOM
15100 N. 90th Street
Scottsdale, AZ 85260
(480) 444-0020
jwarner@ADFlegal.org

Rita M. Peters
CITIZENS FOR SELF-GOVERNANCE
7586 Stoney Lick Road
Mount Crawford, VA 22841
540-830-1229
rpeters@selfgovern.com

*Counsel for Appellants*

## CERTIFICATE OF INTERESTED PERSONS

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this court may evaluate possible disqualification or recusal.

Plaintiffs-Appellants:

National Religious Broadcasters

Sand Springs Church

First Baptist Church Waskom

Intercessors for America

Defendants-Appellees:

Scott Bessent, Acting Commissioner of the Internal Revenue Service

Internal Revenue Service

Counsel for Plaintiffs-Appellants:

Michael P. Farris

Sarah E. Siu

Rita M. Peters

Citizens for Self-Government

James A. Campbell

John J. Bursch

David A. Cortman

i

Jacob P. Warner

Alliance Defending Freedom

<u>Counsel for Defendants-Appellees</u>:

Jonathan L. Blacker

Marie Wicks

Aaron Henricks

Eduardo Mendoza

United States Department of Justice

*/s/ Michael P. Farris*
Michael P. Farris
Counsel for Appellants

## STATEMENT REGARDING ORAL ARGUMENT

This challenge to the Johnson Amendment's censorship of churches and religious organizations involves important issues regarding the scope of the Anti-Injunction Act and the Declaratory Judgment Act. Plaintiffs-Appellants National Religious Broadcasters (NRB), Sand Springs Church, First Baptist Church Waskom, and Intercessors for America respectfully request oral argument because they believe it could significantly help the decisional process in this case given the importance of the issues and the unusual procedural posture below.

## TABLE OF CONTENTS

Certificate of Interested Persons ...................................................i

Statement Regarding Oral Argument .................................................. iii

Table of Authorities..................................................................vi

Statement of Jurisdiction................................................................1

Statement of Issues ...................................................................2

Introduction .........................................................................3

Statement of the Case ...................................................................5

Summary of the Argument ..............................................................10

Argument..............................................................................14

I.  Plaintiffs have Article III standing..............................................14

    A.  Plaintiffs are censored. ......................................................14

    B.  The Johnson Amendment censors Plaintiffs; an injunction would let them speak.........................................16

II. The AIA is a claim-processing rule, and the Government waived it. ...................................................................17

    A.  The AIA is a claim-processing rule.......................................17

        1.  The AIA speaks to the litigant, not the court..............18

        2.  The AIA sits away from jurisdictional grants. ............21

        3.  The AIA yields to waiver and equity. .........................23

    B.  *Westmoreland* does not control. ...........................................25

        1.  The *Westmoreland* line assumed the AIA is jurisdictional; it never ran the clear-statement test. ...............................................................25

2. Intervening Supreme Court precedent changed the analysis, and the rule of orderliness lets this Court follow it.................................................27

C. The Government has waived the AIA. ...............................29

D. The DJA is procedural, but *Rivero* controls. ........................31

III. This suit clears the AIA and DJA regardless. ..............................32

A. Plaintiffs do not seek to restrict the assessment or collection of a tax.................................................................32

1. The Johnson Amendment imposes costs separate and apart from any tax penalty. .................................33

2. The Johnson Amendment and any tax penalty are several steps removed.............................................35

3. Violations of the Johnson Amendment are punishable by more than a tax penalty.......................40

B. Plaintiffs have no alternative remedy. ...............................42

C. Plaintiffs challenge IRS action unrelated to the protection of tax revenues...................................................47

D. The DJA and AIA are coextensive. .....................................49

Conclusion .................................................................................52

Certificate of Service ................................................................54

Certificate of Compliance ..........................................................54

# TABLE OF AUTHORITIES

### Cases

*Alexander v. "Americans United" Inc.,*
     416 U.S. 752 (1974) ....................................................................46

*Arbaugh v. Y&H Corp.,*
     546 U.S. 500 (2006) ............................................. 11, 17, 21, 26, 28

*Bailey v. George,*
     259 U.S. 16 (1922) ....................................................................23

*Bob Jones University v. Simon,*
     416 U.S. 725 (1974) ..........................9, 13, 23, 36, 37, 46, 47, 48

*Boechler, P.C. v. Commissioner,*
     596 U.S. 199 (2022) ....................................3, 11, 21, 22, 24, 28, 29

*Bonvillian Marine Serv., Inc. v. Pellegrin,*
     19 F.4th 787 (5th Cir. 2021) ..............................................27, 28

*Boutiller v. The Milwaukee,*
     8 Minn. 97 (1863) ......................................................................19

*Bowles v. Russell,*
     551 U.S. 205 (2007) ..................................................................23

*Branch Ministries v. Rossotti,*
     211 F.3d 137 (D.C. Cir. 2000)................................................. 7, 15

*Breuer v. Jim's Concrete of Brevard, Inc.,*
     538 U.S. 691 (2003) ..................................................................19

*Center for Individual Freedom v. Carmouche,*
     449 F.3d 655 (5th Cir. 2006) ....................................................16

*CIC Services, LLC v. IRS,*
     593 U.S. 209 (2021)
     ........................................................... 4, 9, 12, 32, 33, 34,
     35, 36, 37, 38, 40, 41, 42, 44

*Compare, Arkansas v. Farm Credit Services of Central Arkansas,*
   520 U.S. 821 (1997) ...................................................................30

*Crenshaw Cnty. Priv. Sch. Found. v. Connally,*
   474 F.2d 1185 (5th Cir. 1973) ....................................................37

*Cummins v. James,*
   4 Ark. 616 (1842) ......................................................................19

*Dodge v. Osborn,*
   240 U.S. 118 (1916) ...................................................................23

*Dowell v. Brown,*
   13 Smedes & M. 43 (Miss. 1849) ...............................................19

*Duncan v. Walker,*
   533 U.S. 167 (2001) ...................................................................20

*El Paso CGP Co. v. United States,*
   748 F.3d 225 (5th Cir. 2014) ............................................... 14, 48

*Elgin v. Department of Treasury,*
   567 U.S. 1 (2012) .......................................................................43

*Enochs v. Williams Packing & Navigation Co.,*
   370 U.S. 1 (1962) ....................................... 9, 22, 23, 25, 26, 28, 29

*Ex parte McCardle,*
   74 U.S. (7 Wall.) 506 (1868) ......................................................30

*Fort Bend Cnty. v. Davis,*
   587 U.S. 541 (2019) ...................................................................29

*Gonzalez v. Thaler,*
   565 U.S. 134 (2012) ...................................................................22

*Great Lakes Dredge & Dock Co. v. Huffman,*
   319 U.S. 293 (1943) ...................................................................31

*Green Sol. Retail, Inc. v. United States,*
   855 F.3d 1111 (10th Cir. 2017) .................................................49

*Groff v. DeJoy,*
    600 U.S. 447 (2023) ....................................................................... 18

*Helvering v. Davis,*
    301 U.S. 619 (1937) ........................................................................24

*Henderson ex rel. Henderson v. Shinseki,*
    562 U.S. 428 (2011) ........................................................................20

*Hill v. Wallace,*
    259 U.S. 44 (1922) ..........................................................................23

*Hobby Lobby Stores, Inc. v. Sebelius,*
    723 F.3d 1114 (10th Cir. 2013) ........................................... 18, 26

*Hotze v. Burwell,*
    784 F.3d 984 (5th Cir. 2015) ........................................ 11, 25, 26, 28

*Ins. Corp. of Ir. v. Compagnie des Bauxites de Guinee,*
    456 U.S. 694 (1982) ........................................................................30

*Jacobs v. Nat'l Drug Intel. Ctr.,*
    548 F.3d 375 (5th Cir. 2008) ........................................................27

*Kemlon Prods. & Dev. Co. v. United States,*
    638 F.2d 1315 (5th Cir. 1981). ............................................... 39, 40

*Kornman & Assocs., Inc. v. United States,*
    527 F.3d 443 (5th Cir. 2008) ........................................................18

*Lake v. Hastings,*
    2 Cushm. 490 (Miss. 1852) ...........................................................19

*Leckie Smokeless Coal Co.,*
    99 F.3d 573 (4th Cir. 1996) ..........................................................49

*Linn v. Chivatero,*
    714 F.2d 1278 (5th Cir. 1983) ............................................... 38, 39

*Matter of Mooney Aircraft, Inc.,*
    730 F.2d 367 (5th Cir. 1984) ........................................................30

*Matter of Westmoreland Coal Company,*
    968 F.3d 526 (5th Cir. 2020) .....11, 13, 25, 26, 28, 42, 43, 47, 49, 50

*Moore v. Lobbin,*
    4 Cushm. 304 (Miss. 1853) ........................................................19

*People's Bank v. Calhoun,*
    102 U.S. 256 (1880) ................................................................30

*Perlowin v. Sassi,*
    711 F.2d 910 (9th Cir. 1983) ....................................................49

*Pollock v. Farmers' Loan & Trust Co.,*
    157 U.S. 429 (1895) ................................................................24

*Reed Elsevier, Inc. v. Muchnick,*
    559 U.S. 154 (2010) ......................................... 17, 18, 20, 21, 23, 28

*Regan v. Tax'n with Representation of Wash.,*
    461 U.S. 540 (1983) ................................................................49

*Rivero v. Fid. Invs., Inc.,*
    1 F.4th 340 (5th Cir. 2021)................................... 12, 26, 28, 31, 32

*Seals v. McBee,*
    898 F.3d 587 (5th Cir. 2018) ....................................................16

*Skelly Oil Co. v. Phillips Petroleum Co.,*
    339 U.S. 667 (1950) ................................................................32

*Snyder v. Marks,*
    109 U.S. 189 (1883) ................................................................22

*South Carolina v. Regan,*
    465 U.S. 367 (1984) ...............................9, 13, 30, 42, 43, 44, 45, 47

*Speech First, Inc. v. Fenves,*
    979 F.3d 319 (5th Cir. 2020) ................................................ 15, 16

*State v. Inhabitants of Gorham,*
    37 Me. 451 (1854) ..................................................................19

*Steel Co. v. Citizens for a Better Env't,*
    523 U.S. 83 (1998) ........................................................ 11, 17, 26, 28

*Steffel v. Thompson,*
    415 U.S. 452 (1974) ....................................................................15

*Stokes v. Southwest Airlines,*
    887 F.3d 199 (5th Cir. 2018) ...................................................27, 28

*Sunshine Anthracite Coal Co. v. Adkins,*
    310 U.S. 381 (1940) ....................................................................24

*Susan B. Anthony List v. Driehaus,*
    573 U.S. 149 (2014) ....................................................................14

*Titcomb v. Fitchburg R. Co.,*
    12 Allen 254 (Mass. 1866) ..........................................................19

*Tomlinson v. Smith,*
    128 F.2d 808 (7th Cir. 1942); ......................................................49

*Turtle Island Foods, S.P.C. v. Strain,*
    65 F.4th 211 (5th Cir. 2023).........................................................16

*United States v. Hansen,*
    599 U.S. 762 (2023) ....................................................................19

*Villegas v. Noem,*
    149 F.4th 554 (5th Cir. 2025).......................................................27

*West Virginia v. EPA,*
    597 U.S. 697 (2022) ....................................................................21

*Wilkins v. United States,*
    598 U.S. 152 (2023) ....................................................................26

*Williamson v. Tucker,*
    645 F.2d 404 (5th Cir. 1981) .......................................................14

*Z Street v. Koskinen,*
    791 F.3d 24 (D.C. Cir. 2015) ................................ 13, 45, 46, 48, 49

x

## Statutes

1966 Federal Tax Lien Act (Pub. L. 89-719)............................................20

17 U.S.C. § 411 ......................................................................................20

26 U.S.C. § 4955 ........................................................................... 6, 35, 41

26 U.S.C. § 501 .................................................................................. 6, 15

26 U.S.C. § 508 .........................................................................................6

26 U.S.C. § 6213 ....................................................................................45

26 U.S.C. § 6852 ............................................................................... 6, 35

26 U.S.C. § 7409 ....................................................... 6, 35, 40, 41, 43

26 U.S.C. § 7421 ....................................................... 3, 11, 18, 32, 50

26 U.S.C. § 7422 .............................................................................. 43, 45

26 U.S.C. § 7428 .............................................................................. 44, 45

26 U.S.C. §§ 170 .......................................................................................6

28 U.S.C. § 1331 ............................................................................... 7, 52

28 U.S.C. § 1341 ....................................................................................21

28 U.S.C. § 2201 .............................................................................. 31, 49

## Other Authorities

Hawley, Erin M., *The Equitable Anti-Injunction Act*, 90 Notre Dame
L. Rev. 81 (2014)...........................................................................18

## STATEMENT OF JURISDICTION

Plaintiffs-Appellants filed this suit under the Declaratory Judgment Act, 28 U.S.C. §§ 2201–02, the United States Constitution, and the federal courts' inherent equitable power. The district court had subject matter jurisdiction under 28 U.S.C. § 1331. The district court entered final judgment dismissing the suit on March 31, 2026. ROA.1133–1142. Plaintiffs-Appellant timely filed their notice of appeal on April 22, 2026. ROA.1143. This Court has jurisdiction under 28 U.S.C. § 1291.

## STATEMENT OF ISSUES

National Religious Broadcasters, two churches, and the ministry Intercessors for America believe their faith commands them to speak to fellow believers—including about candidates for office. The Johnson Amendment forbids that speech on pain of tax and other penalties, so they keep silent. They sued to end that silence. The Government agreed: it declined to invoke the Anti-Injunction Act (AIA) or the Declaratory Judgment Act (DJA), answered the complaint, agreed on relief, and joined Plaintiffs in asking for a consent judgment. But the district court refused that request *sua sponte*, held both Acts jurisdictional, and dismissed for want of power, presenting two questions for review:

1.    The AIA says no suit "shall be maintained . . . by any person." It speaks to litigants, sits away from jurisdictional grants, and for more than a century has yielded to waiver and equity. Is the AIA a jurisdictional bar, or a claim-processing rule the Government waived—clearing the way for the consent judgment the parties sought?

2.    The AIA reaches only a suit to restrain the assessment or collection of a tax. This suit challenges a rule that silences speech; any tax sits several discretionary steps away, behind a violation Plaintiffs will never commit; Plaintiffs have no other way to sue; and a challenged action guards no revenue. Does the suit fall outside the AIA—and the DJA's coextensive exception—whatever their character?

2

## INTRODUCTION

National Religious Broadcasters, two churches, and the ministry Intercessors for America share a conviction: their faith commands them to share with fellow believers how candidates for office measure up against the standards of Scripture. But the Johnson Amendment forbids that speech and backs up its censorship with a string of tax and other penalties. So these organizations have silenced themselves rather than risk ruin. That silence is a present, ongoing injury; it's reasonable; and it gives them standing to sue. And sue they did.

The Government recognized the Johnson Amendment's constitutional invalidity. It declined to invoke the Anti-Injunction Act, agreed the district court had jurisdiction, and joined Plaintiffs in requesting a consent judgment protecting Plaintiffs' speech. The district court refused. *Sua sponte*, it held that the AIA stripped it of power to enter the judgment all sides sought, and it dismissed for lack of jurisdiction.

That was wrong, for two independent reasons. First, the AIA is not jurisdictional. It tells a person that one kind of suit "shall [not] be maintained." 26 U.S.C. § 7421(a). It says nothing about a court's power; it sits in the tax code, not among Title 28's jurisdictional grants; and for more than a century has yielded to waiver and equity. A jurisdictional bar does none of that. Lacking a clear statement that it is jurisdictional, *Boechler, P.C. v. Commissioner*, 596 U.S. 199 (2022), the AIA is a claim-processing rule, and the Government chose to waive it.

3

Second, the AIA does not reach this suit regardless. It bars only a suit to restrain the assessment or collection of a tax, and this suit restrains neither—it challenges a speech restriction. *CIC Services, LLC v. IRS*, 593 U.S. 209 (2021). The AIA has never reached a party Congress left no other way to file suit, and these Plaintiffs are such a party.

The district court reached the opposite result by repeating mistakes the Supreme Court has denounced. It called the AIA jurisdictional on the strength of circuit decisions that assumed the label and never applied the clear-statement test. It recast a speech case as a tax case by treating the loss of tax-exempt status as the only injury—the very move *CIC Services* forbids. And it shut the courthouse door on the promise that Plaintiffs could sue later, in fora that open only if they first break the law and the IRS elects to respond. Each step is error.

What remains is a dismissal no party requested, an agreed resolution undone, and Plaintiffs left in the silence they sued to end. The AIA protects the collection of taxes. It was not written to trap willing parties or to shield a speech rule from judicial review. This Court should reverse.

## STATEMENT OF THE CASE

This appeal arises from an unusual posture: a suit the parties agreed to settle was dismissed on a jurisdictional ground no party raised. The facts that produced it—the speech Plaintiffs gave up, the relief the parties sought, and the order that denied it—are set out below.

### A.    Plaintiffs want to speak.

National Religious Broadcasters, Sand Springs Church, First Baptist Church Waskom, and Intercessors for America are Christian non-profits that exist to speak according to their faith. ROA.248–255. Each holds that the Bible speaks to every part of life, politics included, and that a believer who knows the right thing to do but stays silent commits a sin. ROA.258. So each wants to tell its people where candidates stand against the standards of Scripture, and to say so plainly. ROA.259.

The four would speak in different ways. NRB would pick a narrow set of issues—religious liberty, free speech, and the like—publish its own views beside each candidate's record and urge its members to vote accordingly. ROA.251. The pastors at Sand Springs and First Baptist would preach those comparisons from the pulpit near election day and welcome aligned candidates to address the congregation. ROA.252–254. Intercessors for America would return to the voter guides it has published for 50 years, now stating its own positions next to each candidate's. ROA.254.

5

## B.    The Johnson Amendment restricts Plaintiffs' speech.

But those messages are currently forbidden. Section 501(c)(3) exempts religious and charitable groups from income tax and lets donors deduct their gifts. 26 U.S.C. §§ 501(c)(3), 170(c)(2). But a 1954 rider—the Johnson Amendment—strips that status from any such group that "participate[s] in, or interven[es] in . . . any political campaign" for or against "any candidate for public office." 26 U.S.C. § 501(c)(3). Churches get no say in the matter. Section 508(c)(1) sweeps them into § 501(c)(3) automatically, so they bear the restriction whether they ask for it or not. ROA.244.

The penalty is not just lost status. The IRS may impose an excise tax on political expenditures, 26 U.S.C. § 4955; make an immediate assessment, *id.* § 6852; and sue to enjoin a "flagrant" violator and freeze its funds, *id.* § 7409. ROA.259. None of the Plaintiffs have crossed the line. Each has censored itself to stay clear of it. ROA.250; ROA.257. One example shows the bite. NRB has pressed Congress to keep AM radio in cars; some Members back its position, and some do not. ROA.257. Carmakers may praise or pan those Members at will. ROA.257–258. NRB may not. So it stays quiet, as do the other Plaintiffs. ROA.250; ROA.257. Plaintiffs suffer this harm continuously.

Enforcement is uneven. Hundreds of § 501(c)(3) newspapers endorse candidates, yet the IRS has never punished even one. ROA.259. The IRS has recognized the right of college papers owned by § 501(c)(3)

6

schools to do the same. Rev. Rul. 72-513; ROA.244. But it sanctioned Cornerstone Chapel for a Johnson Amendment violation, counting against the church that it had handed out Intercessors for America's voter guide. ROA.257. And it has revoked a church's exemption for running a newspaper ad against a candidate. *Branch Ministries v. Rossotti*, 211 F.3d 137 (D.C. Cir. 2000). The IRS pursues disfavored conservative and religious speakers while letting others speak freely. ROA.245.

### C.    Plaintiffs sue to speak.

Plaintiffs sued in 2024 and amended their complaint the next February. ROA.19; ROA.243. They claimed the Johnson Amendment, on its face and as applied, violates the First Amendment, the Fifth Amendment, and the Religious Freedom Restoration Act, and they asked for a declaration that the Johnson Amendment is unconstitutional and an injunction against its enforcement. ROA.288–299.

The Government's stance shifted over the life of the case. It first moved to dismiss the original complaint—on standing, jurisdiction, and the merits—and, after the amended complaint, answered and denied the claims, asking that Plaintiffs take nothing. ROA.1134; ROA.105–153; ROA.396–397. Under the new administration, it reversed course on the relief. ROA.1134. The Government and Plaintiffs jointly asked the court to enter a consent judgment. ROA.408–414. Both sides agreed the court had jurisdiction under 28 U.S.C. § 1331 and power to enjoin under

7

the Constitution and the Judiciary Act of 1789. ROA.408–409. And both asked for a narrow injunction: one barring enforcement against the two churches for speech to their own congregations, in worship services, on politics seen through the lens of faith. ROA.412; ROA.417–418.

That judgment would not have ended Plaintiffs' exposure. By its terms the judgment reached only the churches' in-service speech—not NRB's published comparisons, not Intercessors for America's voter guides, and not the churches' speech outside worship. ROA.1052. The Government said as much, acknowledging that the complaint "involves a broader universe of speech . . . within the scope of the Johnson Amendment." ROA.1052. It also kept the position that Plaintiffs may not hold their exemption if they intervene in campaigns. ROA.1053. Yet it conceded "there is no doubt that Plaintiffs seek to engage in speech that is contrary to" the Amendment and that enforcement "would result in . . . the loss of Plaintiffs' tax exempt status." ROA.1052.

Americans United for Separation of Church and State pushed the other way. It sought to intervene as a defendant and argued that Plaintiffs lacked standing and that the Anti-Injunction Act barred the suit. ROA.508–541; ROA.1134. The court denied intervention but let it appear as amicus. ROA.1134. The court heard argument and took post-argument briefing, and the Government answered the amicus, defending the Plaintiffs' standing and the court's power to enter the judgment. ROA.1134; ROA.1048–1071.

8

### D.    The district court dismisses the suit.

No party asked the court to dismiss for want of jurisdiction. The court did so on its own. In an order entered March 31, 2026, it held that the Anti-Injunction Act and the Declaratory Judgment Act's tax exception are jurisdictional, that jurisdiction turns on the complaint and not on the parties' consent, and that neither the Government's waiver nor its joinder could supply it. ROA.1134–1136.

Reading the suit through *Bob Jones University v. Simon*, 416 U.S. 725 (1974), the court treated it as one to restrain the assessment or collection of a tax: because the Johnson Amendment is a condition of tax-exempt status, relief against it would "directly bear on the amount of tax that could be collected." ROA.1137. The court distinguished *CIC Services*, finding the speech burden not "separate and apart from" a tax. ROA.1138. The court considered the equitable exception of *Enochs v. Williams Packing & Navigation Co.*, 370 U.S. 1 (1962), weighing both prongs and finding neither met. ROA.1139–1140. And it rejected Plaintiffs' argument under *South Carolina v. Regan*, 465 U.S. 367 (1984), that they lack any other remedy, reasoning that a refund suit or a § 7428 suit could someday open. ROA.1140–1141. Dismissal followed. ROA.1141. Plaintiffs appealed. ROA.1143.

## SUMMARY OF THE ARGUMENT

This Court should reverse. Everyone who litigated this case below agreed on the result. Plaintiffs NRB, the churches, and Intercessors sued to speak; the Government answered, agreed on relief, and joined them in asking for a consent judgment. The district court refused—not on any ground a party pressed, but on a jurisdictional theory of its own: that the AIA stripped the court of power to act. That theory is wrong.

Start with standing. Plaintiffs want to speak for and against candidates, and they believe their faith commands it. But the Johnson Amendment forbids that speech on pain of penalties. So they refrain. That silence is the injury, and the fear behind it is reasonable: the Amendment is live, the IRS has pursued religious organizations that hold the very views Plaintiffs hold, and a law that restricts the class of § 501(c)(3) speakers to which Plaintiffs belong is presumed to threaten them. The Government has not disavowed enforcement. So Plaintiffs will not be safe until a judgment is entered. They have standing—the case is fit to decide.

Reversal then follows for either of two reasons, each enough on its own. First, the AIA is a claim-processing rule that the Government waived. Second, no matter the AIA's character, this suit clears it.

Take the first. The AIA bars no court from doing anything. It tells a *person* that one kind of suit "shall [not] be maintained." 26 U.S.C.

§ 7421(a). That is the language of claim processing. Three features confirm it. First, the AIA speaks to the litigant, not the court: it names "any person" as the actor and says nothing of judicial authority. Second, it sits in the tax code, among rules for taxpayers—not in Title 28, where Congress places its jurisdictional grants. And third, for more than a century the Supreme Court has carved equitable exceptions into the AIA and honored the Government's waiver of it. A jurisdictional bar allows neither. The Supreme Court now demands a clear statement before any rule counts as jurisdictional, and the AIA supplies none. It never mentions jurisdiction.

The district court thought *Matter of Westmoreland Coal Company*, 968 F.3d 526 (5th Cir. 2020), settled the question the other way. It did not. *Westmoreland* never asked whether the AIA is jurisdictional; it borrowed the label from *Hotze v. Burwell*, 784 F.3d 984 (5th Cir. 2015), which borrowed it from a 1962 case that ran no clear-statement test.

Those are drive-by jurisdictional rulings that lack precedential weight. *See Arbaugh v. Y&H Corp.*, 546 U.S. 500, 510–11 (2006); *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 91 (1998). Moreover, an intervening decision is what now binds this Court: *Boechler* applied the clear-statement test to a tax-code provision and held it nonjurisdictional. *Id*. at 208–10. That decision changed the mode of analysis, and the rule of orderliness lets a panel follow the change. This Court should recognize the AIA for what it is: a claim-processing rule.

11

A claim-processing rule can be waived and forfeited. The Government did both. It declined to raise the AIA, answered the complaint, agreed on relief, and joined the motion for judgment. No bar remains. Section 1331 supplies jurisdiction. The district court's own order proves the point—it worked through the *Williams Packing* equity test, though a court without jurisdiction would have nothing to weigh.

The DJA does not save the dismissal. This Court has read the DJA tax exception as jurisdictional because it runs to "any court" and limits the court's power to declare. *Rivero v. Fid. Invs., Inc.*, 1 F.4th 340, 345 (5th Cir. 2021). But that reasoning cuts for Plaintiffs on the AIA: the DJA exception speaks to the court, while the AIA speaks to the person—the very contrast that marks one as jurisdictional and the other as not. And *Rivero* covers only declarations. It leaves injunctive relief to the AIA, so the Government's waiver supports the injunction the parties jointly seek, whatever becomes of the declaration. And Plaintiffs preserve their disagreement with *Rivero* on whether the DJA exception is jurisdictional.

Now the second reason, which concerns the AIA's scope. No matter the AIA's character, this suit clears it—and the DJA exception with it. The AIA reaches only a suit to restrain the assessment or collection of a tax. This suit restrains neither. It challenges a speech restriction, and *CIC Services* supplies the test. All three of its markers are here: the

12

Johnson Amendment imposes costs apart from any tax; any tax lies several discretionary steps away, behind a violation Plaintiffs will never commit; and a non-tax sanction—the § 7409 injunction—backs the Amendment. The suit targets the upstream restriction, not a downstream tax.

Two further grounds defeat the bar on their own. First, the AIA does not reach a party Congress left no other way to sue. *Regan*, 465 U.S. at 378. *Westmoreland* adopts and applies that exception. 968 F.3d at 535. Plaintiffs have no avenue of their own: a refund suit and a § 7428 action each open only after Plaintiffs break the law and the IRS responds. Second, the AIA guards the revenue; it does not shield the IRS when it sorts speakers by viewpoint. *Bob Jones*, 416 U.S. at 740, draws that line, *Z Street v. Koskinen*, 791 F.3d 24 (D.C. Cir. 2015), applies it, and the Johnson Amendment crosses it.

The DJA exception adds nothing, because it runs no further than the AIA. The two are coextensive: what the AIA does not reach, the exception does not reach either. The district court had power to enter the judgment the parties sought. This Court should reverse.

13

## ARGUMENT

The court below dismissed this case for lack of subject-matter jurisdiction. Because that dismissal relied on undisputed facts alleged in the complaint, this Court accepts those facts as true and reviews the legal issue de novo. *El Paso CGP Co. v. United States*, 748 F.3d 225, 228 (5th Cir. 2014); *Williamson v. Tucker*, 645 F.2d 404, 412–13 (5th Cir. 1981). Plaintiffs have Article III standing. Federal courts have jurisdiction. The AIA is a claim-processing rule; the Government waived it; and this suit clears the AIA and DJA regardless. This Court should reverse.

## I.    Plaintiffs have Article III standing.

To establish standing, a plaintiff must show an injury-in-fact, causation, and redressability. *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 157 (2014). Plaintiffs meet that test. The Johnson Amendment chills Plaintiffs' speech, and an injunction would let them speak.

### A.    Plaintiffs are censored.

Start with injury. In this pre-enforcement suit, Plaintiffs need only show they intend to engage in speech "arguably proscribed" by statute, and a "threat of future enforcement" exists. *Id*. at 162, 164.

Plaintiffs want to speak for and against candidates for political office, and they believe their faith commands it. ROA.258–259. But the Johnson Amendment forbids that speech on pain of penalties and enforcement proceedings. ROA.256; ROA.259. It regulates nonprofit efforts to "participate in, or intervene in, . . . any political campaign" for

14

or against "any candidate for public office." 26 U.S.C. § 501(c)(3). As the Government admits, "there is no doubt that Plaintiffs seek to engage in speech . . . contrary to the . . . Johnson Amendment." ROA.1052.

So Plaintiffs keep silent. That self-censorship is the injury. Plaintiffs need not "first expose" themselves to enforcement proceedings to challenge a law deterring "the exercise of [their] constitutional rights." *Steffel v. Thompson*, 415 U.S. 452, 459 (1974). Particularly so here, where Plaintiffs suffer a chilling effect on their speech—itself "a constitutional harm." *Speech First, Inc. v. Fenves*, 979 F.3d 319, 330–31 (5th Cir. 2020). And where the speech at stake is political, the path is easier still: "[i]t is not hard to sustain [pre-enforcement] standing . . . in the highly sensitive area of . . . regulations governing . . . political speech." *Id.* at 331.

Plaintiffs' silence is reasonable. In pre-enforcement challenges to "non-moribund" statutes that "restrict expressive activity by the class to which the plaintiff belongs, courts will *assume* a credible threat of prosecution in the absence of compelling contrary evidence." *Speech First*, 979 F.3d at 335 (emphasis added). The Johnson Amendment is no dead letter: the IRS has subjected religious organizations sharing the Plaintiffs' views to investigation and adverse action. ROA.256–57; *see Branch Ministries*, 211 F.3d at 142–43. And it restricts the class of § 501(c)(3) speakers to which Plaintiffs belong. The threat is "latent in the existence of the statute." *Speech First*, 979 F.3d at 336.

15

Nor has the Government disavowed enforcement. Though the Government consents to judgment here, it maintains that Plaintiffs may not "intervene in political campaigns" without penalty. ROA.1053. The consent judgment does not cover all of Plaintiffs' desired speech. And unless that judgment is entered, the Government's disclaimed "intent to penalize" Plaintiffs even for speech covered by that judgment "is not compelling." *Turtle Island Foods, S.P.C. v. Strain*, 65 F.4th 211, 218 (5th Cir. 2023). "[N]othing binds" this or "a future" administration from deciding that all of Plaintiffs' desired speech violates the Johnson Amendment. *Id*. So Plaintiffs face "a substantial threat of enforcement." *Id*.

### B. The Johnson Amendment censors Plaintiffs; an injunction would let them speak.

Causation and redress follow. Potential enforcement of the Johnson Amendment caused Plaintiffs' silence, and an injunction against that enforcement would let them speak. *See Center for Individual Freedom v. Carmouche*, 449 F.3d 655, 661 (5th Cir. 2006); *Speech First*, 979 F.3d at 338. Plaintiffs are "not required to live under the specter of [punishment] for violating a potentially unconstitutional law with nothing more than a non-committal promise" as a shield. *Seals v. McBee*, 898 F.3d 587, 593 (5th Cir. 2018), *as revised* (Aug. 9, 2018). So Plaintiffs have Article III standing, and the only issue is whether the AIA bars their claims.

16

## II.    The AIA is a claim-processing rule, and the Government waived it.

The AIA is a claim-processing rule. It speaks to the litigant, not to the court. It sits in the tax code, not among jurisdictional statutes. And it yields to waiver and equity. Prior circuit cases assume the AIA is jurisdictional, but intervening Supreme Court precedent has changed the mode of analysis and empowers this Court to say what's right. Because the AIA is nonjurisdictional, the Government can waive and forfeit its application. The Government has done both. The DJA is also procedural, but *Rivero* controls, and the DJA does not bar *injunctive* relief. Federal courts can decide this case.

### A.    The AIA is a claim-processing rule.

The court below dismissed this case for lack of "subject-matter jurisdiction." ROA.1133–1141. The term "[j]urisdiction" has "too many[ ] meanings." *Steel Co.*, 523 U.S. at 90. Courts have long misused the term. But recently, the Supreme Court has worked to discipline its "profligate" use. *Arbaugh*, 546 U.S. at 510. The fix is a bright line. A bar is jurisdictional only if Congress "clearly" says it is; otherwise, courts "should treat the restriction as nonjurisdictional." *Id.* at 515–16.

Statutes that address a court's "*power* to adjudicate the case" are jurisdictional. *Steel*, 523 U.S. at 89. Statutes that address litigant rights and duties are "claim-processing rules," and nonjurisdictional. *Reed Elsevier, Inc. v. Muchnick*, 559 U.S. 154, 161–62 (2010). The AIA is a

17

claim-processing rule. *Hobby Lobby Stores, Inc. v. Sebelius*, 723 F.3d 1114, 1157—59 (10th Cir. 2013) (en banc) (Gorsuch, J., concurring); Erin M. Hawley, *The Equitable Anti-Injunction Act*, 90 Notre Dame L. Rev. 81 (2014).

### 1.     The AIA speaks to the litigant, not the court.

Statutory interpretation begins "with [the] text." *Groff v. DeJoy*, 600 U.S. 447, 468 (2023). The AIA provides that, but for listed exceptions, "no suit for the purpose of restraining the assessment or collection of any tax shall be maintained in any court by any person." 26 U.S.C. § 7421(a). It does not address the court. It does not mention the court's power or jurisdiction. It tells a *person* that a certain suit may not be maintained. That is claim-processing text—a guide for litigants on how and when to bring a claim, not a withdrawal of judicial authority. Because the AIA is directed at the taxpayer, not the court, it is not jurisdictional. *See Reed Elsevier*, 559 U.S. at 161 ("[J]urisdictional statutes 'speak to the power of the court rather than to the rights or obligations of the parties.'").

Start with the term "maintained." It lacks a statutory definition. So we look to its "ordinary meaning," *Kornman & Assocs., Inc. v. United States*, 527 F.3d 443, 451 (5th Cir. 2008). When the AIA was enacted in 1867, the term "maintain" meant to "hold, preserve[,] or keep in [a] particular state or condition. . . ." *Boutiller v. The Milwaukee*, 8 Minn. 97,

18

99 (1863) (citing *Webster's Unabridged Dictionary*). Courts routinely used this definition in the context of physical infrastructure—meaning to keep bridges, roads, or other structures in good repair. *E.g.*, *Titcomb v. Fitchburg R. Co.*, 12 Allen 254 (Mass. 1866) (keeping bridges in good repair); *State v. Inhabitants of Gorham*, 37 Me. 451 (1854) (same).

But in the legal context, the term had a special meaning, consistent with its ordinary one. As *Boutiller* notes, the term was "common at the bar." 8 Minn. at 105. It described a litigant's right to prosecute a claim—to begin or institute a legal action. *See id.*; *see also, e.g.*, *Cummins v. James*, 4 Ark. 616 (1842) (addressing condition for "plaintiff[ ] to maintain his action"); *Moore v. Lobbin*, 4 Cushm. 304 (Miss. 1853) (similar); *Dowell v. Brown*, 13 Smedes & M. 43 (Miss. 1849) (similar); *Lake v. Hastings*, 2 Cushm. 490 (Miss. 1852) (similar). This "context" suggests that Congress used "maintain" in the AIA as a "term[ ] of art" to address *litigants* bringing a legal claim. *United States v. Hansen*, 599 U.S. 762, 775 (2023).

Courts do not maintain suits; parties do. *See Breuer v. Jim's Concrete of Brevard, Inc.*, 538 U.S. 691, 695 (2003) ("'maintain' in reference to a legal action is often read as 'bring' or 'file'. . . [a lawsuit]"). So rightly understood, the AIA provides an exhaustion requirement—it requires litigants to pay a tax before challenging it. Such requirements are "quintessential claims-processing rules." *Henderson ex rel. Hender-*

19

*son v. Shinseki*, 562 U.S. 428, 435 (2011). The original AIA all but mirrors exhaustion text that the Supreme Court held nonjurisdictional in *Reed Elsevier*: "no civil action . . . shall be instituted." 17 U.S.C. § 411(a); *see Reed Elsevier*, 559 U.S. at 157, 166. "[N]o suit . . . shall be maintained" is a near-twin of "no civil action . . . shall be instituted." If the latter is nonjurisdictional, so is the AIA.

Congress made this explicit in 1966 when it amended the AIA to include the text, "by any person. . . ." 1966 Federal Tax Lien Act (Pub. L. 89-719). The AIA uses passive voice. Its grammatical subject is "suit," and the verb phrase is "shall be maintained." In a passive construction, the party who performs the action appears in the *by*-agent phrase. Here that phrase is "by any person." So a litigant is the agent: the one who does the maintaining. The court, by contrast, appears only inside the prepositional phrase "in any court," which is a locative adjunct answering *where*, not an addressee answering *who is commanded*.

The trailing clause—"whether or not such person is the person against whom such tax was assessed"—reinforces this. It exists only to define which persons the bar reaches. A statute that withdrew a court's power would have no occasion to catalog the identities of would-be plaintiffs; that qualifier makes sense only if the operative restriction runs against persons. Reading it otherwise renders it surplusage. *See Duncan v. Walker*, 533 U.S. 167, 174 (2001) (canon against surplusage).

20

So while the text, "no suit . . . shall be maintained," independently suggests that the AIA addresses litigants, *see Reed Elsevier*, 559 U.S. at 160–66 (so interpreting similar language), the 1966 Amendment drives it home. The AIA's command runs to "any person"—not federal courts.

### 2.    The AIA sits away from jurisdictional grants.

What the text shows, "context" confirms. *Boechler*, 596 U.S. at 206. To interpret a statute, courts read each word in "context"—considering a provision's "place in the overall statutory scheme." *West Virginia v. EPA*, 597 U.S. 697, 721 (2022). First, Congress put the AIA in Title 26, in a part on procedure for "Taxpayers and Third Parties." It was not put in Title 28—home to statutes that govern federal jurisdiction. The Supreme Court has twice treated such a divide as evidence that a limit is nonjurisdictional. *Reed Elsevier*, 559 U.S. at 164–65; *Arbaugh*, 546 U.S. at 515.

Second, Congress knows how to write a jurisdictional tax bar. It did so in the Tax Injunction Act, the AIA's cousin for state-tax disputes. *Cf. Boechler*, 596 U.S. at 206 (comparing similar "tax provisions" for indicia of jurisdictionality). The TIA says "*district courts* shall not enjoin, suspend[,] or restrain the assessment, levy or collection of any tax under State law." 28 U.S.C. § 1341 (emphasis added). It speaks to courts. It binds "[judicial] power." *Reed Elsevier*, 559 U.S. at 165 n.5. And it sits

in Title 28, among statutes that govern federal jurisdiction. The AIA does neither.

That suggests that the TIA and AIA work differently. Congress's choice to bind "courts" in the TIA—but not in the AIA—"accentuate[s] the lack of comparable clarity" in the AIA. *Boechler*, 596 U.S. at 206; *see Williams Packing*, 370 U.S. at 6; *cf. Gonzalez v. Thaler*, 565 U.S. 134, 143 (2012) (noting that "unambiguous jurisdictional terms" in a related statute suggest that Congress "would have spoken in clearer terms if it intended [the statute at issue] to have similar jurisdictional force"). Congress could have made the AIA jurisdictional. It chose not to do so, and no court should rewrite the AIA as though Congress made a different choice.

Third, consider the AIA's pedigree. Congress did not write the AIA as a freestanding command. It added the anti-injunction language in 1867 as an amendment to an existing exhaustion provision—§ 19 of the 1866 Act, which barred a refund suit "until appeal shall have been duly made to the commissioner." *Snyder v. Marks*, 109 U.S. 189, 191 (1883). The new clause, the Court explained, was "*in pari materia* with the" provision amended. *Id.* at 192. So the AIA was born as the back half of a pay-first, sue-later exhaustion rule. It became a standalone provision only when codifiers of the Revised Statutes split it off and renumbered it. *Id.* A command that began life in an exhaustion statute did not

22

morph into a limit on judicial power when revisers gave it its own section number.

### 3. The AIA yields to waiver and equity.

Now the clincher. A jurisdictional bar admits no waivers or judge-made exceptions. Courts have "no authority to create equitable exceptions to jurisdictional requirements." *Bowles v. Russell*, 551 U.S. 205, 214 (2007). Yet the AIA allows both—and has for over a century. That practice, "left undisturbed by Congress," reinforces rather than contradicts what the AIA's text and context independently suggest—that the AIA is nonjurisdictional. *Reed Elsevier*, 559 U.S. at 173; § II.A.1–2.

Start with equitable exceptions. Early on, the Court said "extraordinary and exceptional circumstances" could justify an injunction despite the AIA. *Bob Jones*, 416 U.S. at 743; *see Bailey v. George*, 259 U.S. 16, 20 (1922); *Dodge v. Osborn*, 240 U.S. 118, 122 (1916). It soon acted on that view. *Hill v. Wallace*, 259 U.S. 44, 62 (1922). The Court has since narrowed this exception—it now allows pre-enforcement suits where, on the most favorable view of the law and facts to the Government, the Government cannot prevail and equity jurisdiction otherwise exists. *Williams Packing*, 370 U.S. at 7. But narrowing the exception does not nix it. It remains an equitable exception. *See Bob Jones*, 416 U.S. at 742–45. And a jurisdictional bar allows none.

Next is waiver. The Supreme Court has accepted a Government waiver, more than once. In *Pollock v. Farmers' Loan & Trust Co.*, 157 U.S. 429, 554 (1895), the Court proceeded to judgment after the Government "explicitly waived" the AIA. The Court reached the merits again after a similar waiver in *Helvering v. Davis*, 301 U.S. 619, 639 (1937). And in *Sunshine Anthracite Coal Co. v. Adkins*, 310 U.S. 381 (1940), the Court decided a suit to enjoin collection of a federal tax on the merits after the Government "expressly waived . . . its defense under Section 3224 of the Revised Statutes"—the AIA's direct predecessor. *See* Br. for Appellee at 9, 1940 WL 71213, 310 U.S. 381 (No. 804). These waivers worked. And they are impossible under a jurisdictional rule.

*Boechler* drives the point home: jurisdictional rules "cannot be waived or forfeited, must be raised by courts sua sponte, *and . . .* do not allow for equitable exceptions." 596 U.S. at 202–03 (emphasis added). The AIA fails all three. Such a rule is not jurisdictional.

\* \* \*

The AIA is best read as a claim-processing rule. But Plaintiffs need only show that Congress provides no clear statement that the AIA is jurisdictional. So no matter whether a jurisdictional reading is "plausible" or "better" than the one Plaintiffs provide (it isn't), "better is not enough. To satisfy the clear-statement rule, the jurisdictional condition must be just that: clear." *Boechler*, 596 U.S. at 206. The AIA is not, and

24

the district court erred in treating the AIA as though it were jurisdictional.

### B.   *Westmoreland* does not control.

The district court did not engage any of this. It did not run the clear-statement test. It cited *Westmoreland* for the proposition that the AIA "divests courts of subject-matter jurisdiction," and treated the issue as closed. The issue is not closed. Neither *Westmoreland* nor *Hotze*, the decision it quotes, resolved whether the AIA is jurisdictional, and an intervening line of Supreme Court authority frees this Court to reach the right answer.

### 1.   The *Westmoreland* line assumed the AIA is jurisdictional; it never ran the clear-statement test.

*Westmoreland* states, in one sentence, that "[w]hen the AIA applies, it divests courts of subject matter jurisdiction," and cites only *Hotze. Westmoreland*, 968 F.3d at 533. It performed no clear-statement analysis. The rub there was whether Coal Act premiums were "taxes" and whether an exception applied—not whether the AIA is jurisdictional.

Same for *Hotze*. Its sole support for the proposition that "[f]ederal courts lack subject matter jurisdiction over suits to which the AIA applies" is *Williams Packing. Hotze*, 784 F.3d at 996. The dispute there, like the one in *Westmoreland*, was over a different issue—whether the

25

challenged exaction was a "tax." *Id*. The jurisdictional label was assumed on the way to the holding.

That passing assumption matters, because the Supreme Court has told courts they are not bound by these kinds of statements. It calls such unreasoned statements "drive-by jurisdictional rulings" and gives them "no precedential effect" on whether a rule is truly jurisdictional. *Arbaugh*, 546 U.S. at 511; *Steel Co.*, 523 U.S. at 91. *Hotze*'s root, *Williams Packing*, is itself such a ruling. That case and similar ones "employ the jurisdictional label with little or no analysis," and are "exactly the sort of drive-by jurisdictional rulings the Court tells us to" reject. *Hobby Lobby*, 723 F.3d at 1159 (Gorsuch, J., concurring). *Hotze* inherited that flaw. *Westmoreland* got it from *Hotze*. Neither control here. *Arbaugh*, 546 U.S. at 511.

Nor does *Rivero*—the latest link in that chain. It called the AIA "jurisdictional" in passing. 1 F.4th at 345–46. But the Court did not analyze the AIA's text; it cited *Westmoreland* and *Hotze* and moved on. *Id*. The AIA was "inapplicable" there. *Id*. *Rivero* used the AIA's supposed status to boost its real holding about the DJA. *Id*. So *Rivero* launders nothing. It invoked the *Westmoreland* line—and inherited its flaws.

These cases—*Hotze*, *Westmoreland*, and *Rivero*—are "textbook 'drive-by jurisdictional ruling[s],'" so they lack "precedential effect." *Wilkins v. United States*, 598 U.S. 152, 160 (2023); *e.g.*, *Villegas v. Noem*,

149 F.4th 554, 562–65 (5th Cir. 2025) (disregarding prior labeling of a statute as "jurisdictional" when "clear statement test" was not applied).

### 2. Intervening Supreme Court precedent changed the analysis, and the rule of orderliness lets this Court follow it.

In addition, the rule of orderliness—one panel may not overrule another, *Jacobs v. Nat'l Drug Intel. Ctr.*, 548 F.3d 375, 378 (5th Cir. 2008)—has a settled exception. A panel may, and should, depart from prior precedent when an intervening Supreme Court decision "unequivocally" changes the law. *Stokes v. Southwest Airlines*, 887 F.3d 199, 204 (5th Cir. 2018). That happens "when the Supreme Court disavows the mode of analysis on which [the Court's] precedent relied," or shifts the "focus" of the governing test. *Id.*; accord *In re. Bonvillian Marine Serv., Inc. v. Pellegrin*, 19 F.4th 787, 792 (5th Cir. 2021). That's true here.

*Bonvillian* points the way. There, a prior case had "largely assumed" that a filing limit was jurisdictional—by citing an earlier panel's "unsupported assumption" about the rule. *Id.* at 793. This Court held that the Supreme Court's rulings "on the jurisdictional significance of statutory procedural rules 'fundamentally changes' the analysis," because those rulings make "a clear congressional statement" the "essential hallmark" of a jurisdictional rule. *Id.* at 792–93. Following Supreme Court rather than circuit precedent, the *Bonvillian* panel held the limit nonjurisdictional. *Id.* at 793–94.

27

Swap the parties and the result follows. *Hotze* and *Westmoreland* assumed the AIA is jurisdictional by citing an older panel's assumption, which traced to *Williams Packing*'s 1962 use of the word. The Supreme Court's clear-statement line—*Steel Co.*, *Arbaugh*, *Reed Elsevier*, and more—did to the AIA what it did to the filing limit in *Bonvillian*. It replaced a presumption of jurisdictionality with a demand for a clear statement, and it made drive-by labels nonprecedential. The mode of analysis changed. Under *Bonvillian* and *Stokes*, this Court should apply the new mode and hold the AIA for what it is—a claim-processing rule.

*Boechler* seals it. The Supreme Court decided that case in 2022—after *Hotze*, *Westmoreland*, and *Rivero*—and there applied the clear-statement test to a tax-code provision and held it nonjurisdictional. *Boechler*, 596 U.S. at 203, 206–09. The rule of orderliness does not require that the intervening decision construe the same statute; "[t]he overriding consideration is the similarity of the issues decided." *Bonvillian*, 19 F.4th at 792. *Boechler* decides the very kind of issue presented here—whether a tax-code bar is jurisdictional or claim-processing—and decides it by the method *Hotze*, *Westmoreland*, and *Rivero* skipped. That allows this Panel to correctly decide what the *Westmoreland* line overlooked.

## C.    The Government has waived the AIA.

The district court held that it lacked power to enter the consent judgment because the AIA is jurisdictional and "cannot be waived or created by litigation conduct." ROA.1134–1135. Strip away that premise, and the ground gives way.

The AIA is a claim-processing rule. Such a rule is forfeited if the party who holds it does not press it and waived if that party gives it up. *Fort Bend Cnty. v. Davis*, 587 U.S. 541, 548–49 (2019). The Government did both. It declined to raise the AIA as a bar, answered the complaint, agreed on relief, and joined the motion for a consent judgment. ROA.373–397; ROA.408–414; ROA.1054–1055.

The district court therefore had authority to take up the parties' joint request and to decide, on its own terms, whether to enter the proposed judgment. The court's own order proves that. Having declared the AIA jurisdictional, it then worked through the *Williams Packing* exception, weighing whether on these facts equity allowed the suit to proceed. ROA.1139–1140. A court that lacked jurisdiction would have nothing to weigh. *Boechler*, 596 U.S. at 203. Applying that test admits what the rest of the order denies—the AIA is nonjurisdictional.

The district court's order faults the Government for citing "no authority" that its "own consent . . . creates jurisdiction." ROA.1136. But that wasn't the point. Waiver of a claim-processing rule does not create

29

jurisdiction; § 1331 supplies it. The Government simply gave up its non-jurisdictional defense. The decisions the district court's order marshals against consent all concerned genuine subject-matter jurisdiction, which no party may confer. ROA.1135–1136 (citing *Ins. Corp. of Ir. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702 (1982); *People's Bank v. Calhoun*, 102 U.S. 256, 260–61 (1880); and *Ex parte McCardle*, 74 U.S. (7 Wall.) 506, 514 (1868)). The order failed at the outset.

The order's treatment of *Leiter Minerals* deepens the problem. To distinguish that case, the order admits—on this Court's authority—that the 1793 Anti-Injunction Act, 28 U.S.C. § 2283, "is not a jurisdictional statute, but goes only to the granting of a particular form of equitable relief." ROA.1136 (citing *Matter of Mooney Aircraft, Inc.*, 730 F.2d 367, 372 (5th Cir. 1984)). That is the very point Plaintiffs press about the AIA: it's a nonjurisdictional limit on a form of equitable relief. The two are statutory siblings. And the order's distinction—that § 2283 reflects "comity" toward state courts—cuts the wrong way. ROA.1136. A statute that guards another sovereign's courts is the stronger candidate for jurisdictional force, yet this Court treats it as merely remedial. *Compare, Arkansas v. Farm Credit Services of Central Arkansas,* 520 U.S. 821, 825–26 (1997) (the TIA is a "broad jurisdictional barrier") with *Regan* (creating an equitable exception to the AIA). The AIA guards only Congress's own creatures and is the weaker candidate still.

30

### D.     The DJA is procedural, but *Rivero* controls.

The district court also leaned on a second statute: the federal-tax exception to the Declaratory Judgment Act, 28 U.S.C. § 2201(a). And this Court has held that exception jurisdictional. *Rivero*, 1 F.4th at 344–45. *Rivero* squarely addressed the issue, applied the clear-statement test, and held that the exception "speak[s] to the power of the court." *Id.* at 344. That holding controls here. Three points follow.

First, *Rivero* does not bar injunctive relief. The parties asked the court below to enter an injunction against enforcing the Johnson Amendment as to certain speech. *Rivero* governs declaratory relief; it says nothing of injunctions, which fall under the AIA. So the Government's waiver of the AIA supports the injunction the consent judgment seeks, whatever becomes of the declaration. *See Great Lakes Dredge & Dock Co. v. Huffman*, 319 U.S. 293, 300 (1943) ("The [DJA] was not devised to deprive courts of their equity powers."). A dismissal of the whole case for want of jurisdiction cannot stand when the court has power to enter relief.

Second, *Rivero* bolsters the AIA argument. *Rivero* held the declaratory exception jurisdictional because that exception runs to "any court of the United States" and limits the court's power to declare. *Id.* The AIA does the opposite. It runs to "any person" and limits what a litigant may do. §II.A. *Rivero*'s own rule—jurisdictional statutes "speak to the

31

power of the court rather than to the rights or obligations of the parties," *id.*—shows the AIA is nonjurisdictional.

Third, Plaintiffs preserve their disagreement with *Rivero*. The DJA "is procedural only"—it "enlarged the range of remedies available in the federal courts but did not extend their jurisdiction." *Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 671 (1950). On that understanding, the tax exception withholds a remedy while jurisdiction over the case rests on § 1331—making the tax exception a claim-processing limit, not a jurisdictional bar.

## III. This suit clears the AIA and DJA regardless.

No matter the AIA or DJA's character, the dismissal below was still wrong, as Plaintiffs do not seek to restrict the assessment or collection of a tax, have no alternative remedy at law, and challenge an IRS action unrelated to the protection of tax revenue. This suit falls outside the scope of both the AIA and the DJA tax exceptions.

### A. Plaintiffs do not seek to restrict the assessment or collection of a tax.

The AIA bars only a "suit for the purpose of restraining the assessment or collection of [a] tax." 26 U.S.C. § 7421(a). Plaintiffs do not seek such relief. They want declaratory and injunctive relief against the Johnson Amendment, which restricts their speech. ROA.298. This suit targets a speech restriction, not a tax. And *CIC Services* shows why. Three aspects there showed that a suit targeting a tax-code rule was not

32

"a tax action in disguise": (1) the rule imposed "costs separate . . . from the statutory tax penalty"; (2) the rule and the "tax penalty [were] several steps removed"; and (3) the rule was "punishable" by more than "a tax." 593 U.S. at 220–22. Those same aspects show that Plaintiffs do not target a tax here.

### 1. The Johnson Amendment imposes costs separate and apart from any tax penalty.

The first *CIC Services* feature is present. Like the reporting rule in that case, the Johnson Amendment "is not a tax," and it imposes burdens whose amount "often" exceeds "any tax." 593 U.S. at 220. It imposes censorship, compliance costs, and viewpoint discrimination.

In *CIC Services*, the challenged Notice "levie[d] no tax." It instead compelled advisors to "collect and submit detailed information," at an estimated "hundreds of hours of labor and in excess of $60,000 per year." *Id.* Those compliance costs—not any tax—were the burden the suit sought to escape, and they could "well exceed, or even dwarf, the tax penalties for a violation." *Id.* The suit therefore "attempt[ed] to get out from under the (non-tax) burdens" of a tax-code obligation. *Id.*

The Johnson Amendment imposes burdens of the same character, and graver ones. It restricts speech, and its costs fall on Plaintiffs now—before any tax is possible. To comply, Plaintiffs must police their pulpits and publications and forgo the speech their faith commands. ROA.250–254. Each has censored itself rather than risk penalties.

ROA.257. That silence is a present, ongoing injury to their First Amendment rights, and it's separate from any tax: no excise schedule measures the value of a sermon left unpreached or the voter guidance withheld. As in *CIC Services*, "if the suit succeeds," Plaintiffs will avoid a "tax penalty," but that "is the suit's after-effect, not its substance." 593 U.S. at 220.

The district court held the opposite—that Plaintiffs "are not challenging a burden that arises 'separate and apart from' a tax" because "the Johnson Amendment exempts organizations from taxes if they do not participate or intervene in political" campaigns, and that this case "does not involve . . . costs with no proximate relation to tax collection." ROA.1134 (citation modified); ROA.1138. That inverts *CIC Services*. The burden Plaintiffs challenge—the suppression of protected religious and political speech—has no "proximate relation to tax collection"; Plaintiffs bear it whether or not a dollar of tax is ever assessed. The court's premise that the only cognizable burden is the loss of a tax exemption merely assumes the conclusion: that the Amendment is nothing but a tax. *CIC Services* forecloses that step. A regulatory mandate "that (1) is not a tax and (2) entails compliance costs whose amount is not tied to . . . any tax" is not transformed into a tax simply because a tax stands behind it. 593 U.S. at 220.

### 2. The Johnson Amendment and any tax penalty are several steps removed.

The second *CIC Services* feature is also present. Any tax that could reach Plaintiffs is the product of a "threefold contingency" showing that the "Anti-Injunction Act" does not apply. 593 U.S. at 220–21.

In *CIC Services*, before any tax could attach, (i) CIC had to withhold required information, (ii) the IRS had to "determine (often no small matter) that a violation . . . occurred," and (iii) the IRS had to make "the—entirely discretionary—decision to impose a tax penalty." *Id.* at 220. "If and only if all those things occur does tax liability attach." *Id.* Because of that contingency, CIC "st[ood] nowhere near the cusp of tax liability," and the link between the upstream duty and the downstream tax was "too attenuated" to treat the suit as one to restrain a tax. *Id.* at 221.

The chain here is at least as long and speculative. For any tax to reach Plaintiffs, (i) they must first violate the Johnson Amendment by intervening in a campaign; (ii) the IRS must determine that a violation occurred; and (iii) the IRS must exercise its considerable discretion to impose the § 4955 excise tax or to revoke exempt status—each itself discretionary. *See* 26 U.S.C. §§ 4955, 6852, 7409; ROA.259. Every link is contingent, and the first won't close: Plaintiffs have self-censored precisely to avoid violating the statute and represent that they will continue to comply unless relief is granted. ROA.250–55; ROA.257. So

35

Plaintiffs are at least as far from "the cusp of tax liability" as CIC was. *CIC Servs.*, 593 U.S. at 221. They have not taken the triggering act and disclaim any intent to do so. *See id.* at 220 (CIC "disclaims any intent" to violate law).

The district court collapsed this contingency by reasoning that "if the plaintiffs here gave up their § 501(c)(3) tax-exempt status, none of the harms they allege could occur," and by treating the case as governed by *Bob Jones*. ROA.1137. That misreads *Bob Jones*. *Bob Jones* was a suit to stop a specific, pending revocation: the Commissioner had already "instructed the District Director to commence" proceedings to revoke the university's exempt status. 416 U.S. at 727, 735. The suit's target was that imminent status determination—a tax consequence—arising from "conduct that was legal but disfavored for tax purposes." *CIC Servs.*, 593 U.S. at 225. Here there is no determination, no revocation, no audit, and no pending action of any kind. ROA.257. Plaintiffs do not ask the Court to undo a status determination; they ask it to lift a speech restriction.

The same gap defeats other decisions the district court's order invoked. The order itself acknowledged that "it is not obvious that the government will ever assess an income tax against plaintiffs or impose any other tax consequence under the Johnson Amendment." ROA.1140. That concession matters, because the decisions the order marshaled to support applying the AIA share a feature this case lacks: in each, the

36

taxpayer had *already completed* the act that fixed its tax consequence, or *already faced* a pending or threatened IRS action, and so stood at or past the cusp of liability that *CIC Services* found decisive. *See* 593 U.S. at 221.

*Crenshaw County* is the nearest of these, and it shows the difference. There, the IRS had directed a nonprofit religious school to adopt and publicly advertise a racially nondiscriminatory policy; when the school refused, the school sued "upon the threatened withdrawal of its tax-exempt status and advance assurance of deductibility of contributions." *Crenshaw Cnty. Priv. Sch. Found. v. Connally*, 474 F.2d 1185, 1187 (5th Cir. 1973). Revocation—and the resulting taxes—was thus imminent: once the rulings were withdrawn, the school "w[ould] be liable for taxes on any net income," and its donors could no longer deduct their contributions. *Id.* at 1188. The suit's object was to forestall that impending withdrawal.

But here, there is no demand, no refusal, no threatened withdrawal, and no determination of any kind; Plaintiffs challenge the restriction itself, not an impending revocation. As with *Bob Jones*, the challenge in *Crenshaw County* ran against a looming status determination, and the court's rationale—that enjoining the withdrawal would "result in an increase in taxes," *id.*—is the same effects-based reasoning *CIC Services* refined into an inquiry into the suit's objective aim.

37

The district court's order also invoked *Linn v. Chivatero*, but that decision, read in full, supports Plaintiffs. *Linn* held that the AIA did *not* bar a suit to recover records the IRS had seized, because the claim "pertains to [the plaintiff's] constitutional right . . . not his tax liability." 714 F.2d 1278, 1285 (5th Cir. 1983). The Court reached that result by asking what the Supreme Court would later call the suit's objective aim—whether its "primary purpose" was to recover property or instead "to restrain . . . the collection of information that would aid in the assessment of taxes." *Id.* at 1282; *accord CIC Servs.*, 593 U.S. at 217–18. Because the suit aimed to vindicate a constitutional right rather than challenge a tax, the AIA did not apply.

The same is true here: Plaintiffs' suit targets a speech restriction and seeks the freedom to speak; it does not "challenge the propriety of any tax that may be assessed against" them. *Linn*, 714 F.2d at 1283. Yet the district court drew the opposite lesson, reading *Linn* as a case where the agents' status "as tax officials [was] incidental to the underlying complaint" while Plaintiffs, by contrast, seek relief from "a condition for tax advantages." ROA.1138 (quoting *Linn*, 714 F.2d at 1282). But that conflates the suit's object with a possible downstream tax. *Linn* did not turn on whether a tax loomed in the background—an IRS investigation was underway there—but on what the suit was *for*. A possible future tax no more converts a challenge to a speech restriction into a tax

38

suit than the IRS's active investigation converted *Linn*'s Fourth Amendment claim into one.

Nor do the two passages the district court's order quoted from *Linn* bridge that gap. That a "decision to cast [a] lawsuit in constitutional terms does not mean that the Anti-Injunction Act is inapplicable," 714 F.2d at 1282, is correct but beside the point: Plaintiffs do not rest on the constitutional label, and *Linn* itself confirms that what governs is the suit's object—which here, as in *Linn*, is not the restraint of a tax.

*Linn*'s echo of *Kemlon*'s "may culminate" language similarly fails. *Kemlon* is distinguishable because it arose from a live enforcement proceeding. During an ongoing audit of the taxpayer's returns, the IRS sought to interview the taxpayer's customers to value its patents for a depreciation deduction, and the taxpayer sued to stop that information-gathering. The Court held the requested injunction "well within the scope of the Anti-Injunction Act," reasoning that the IRS's information-gathering was itself part of the assessment-and-collection process. *Kemlon Prods. & Dev. Co. v. United States*, 638 F.2d 1315, 1320–21 (5th Cir. 1981). The court below borrowed *Kemlon*'s further statement that the AIA reaches "activities which are intended to or may culminate in the assessment or collection of taxes." ROA.1138–39 (citing *Linn*, quoting *Kemlon*, 638 F.2d at 1320).

But that effects-based "may culminate" formulation is the approach *CIC Services* set aside in favor of an objective inquiry into the relief the suit requests. *See* 593 U.S. at 217–19. Brought before any audit and aimed at the restriction rather than at an assessment, this suit does not "culminate" in the collection *Kemlon* addressed.

### 3.    Violations of the Johnson Amendment are punishable by more than a tax penalty.

The third *CIC Services* feature completes the analysis. A tax is not the only sanction for violating the Johnson Amendment. Congress armed the IRS with a freestanding injunctive remedy under 26 U.S.C. § 7409, and that non-tax sanction—like the criminal penalties in *CIC Services*—shows that a suit against the prohibition is not "the same as one against the tax penalty." *CIC Servs.*, 593 U.S. at 219.

In *CIC Services*, the "fact that clinche[d] the case" was that a willful violation of the Notice was "punishable not only by a tax, but by separate . . . criminal penalties." *Id.* at 221. Because an injunction against the tax penalty "would leave both the reporting duty and the [non-tax] penalty untouched," only an injunction against the Notice could give CIC relief; the two injunctions were "not two sides of one coin." *Id.* at 222.

Section 7409 plays that same role here. It authorizes the IRS to sue to enjoin an exempt organization's flagrant political expenditures and to "ensure that the assets of such organization are preserved" for

exempt purposes. 26 U.S.C. § 7409; ROA.259. That is a coercive, non-tax sanction: it silences the organization and places its finances under judicial supervision, independent of any excise tax or loss of exemption. An injunction barring the § 4955 excise—or barring revocation of exempt status—would leave the § 7409 remedy "untouched," and Plaintiffs "would still have to accede to the [Johnson Amendment's] demands." *CIC Servs.*, 593 U.S. at 222. Only an injunction against the restriction itself lifts the chill on Plaintiffs' speech. The restriction and the tax are therefore "not two sides of one coin." *Id.*

The district court's order recognized § 7409 as a distinct enforcement tool, listing it alongside revocation and the § 4955 excise as ways the Johnson Amendment "could" be enforced. ROA.1137. Having acknowledged a non-tax enforcement mechanism, the court could not consistently hold—as it did—that this case "does not involve any penalty independent of tax status." ROA.1138. Section 7409 is precisely such a penalty.

* * *

In sum, the features here, "taken in combination," confirm that this suit "targets the upstream . . . mandate, not the downstream tax," so "the [AIA] imposes no bar." *CIC Servs.*, 593 U.S. at 219, 223. This case is thus nothing like the "run-of-the-mine" tax suits in which "the tax does not backstop the violation of another law that independently

prohibits or commands an action" and "there is no non-tax legal obliga-tion to restrain." *Id.* at 224. This suit targets a speech restriction, and the district court could have and should have issued the agreed-upon in-junction.

## B.    Plaintiffs have no alternative remedy.

Whatever the suit's aim, the AIA reaches only a plaintiff Congress left some other path to relief. *Regan* says so. *Westmoreland* too. Plain-tiffs have no such path. That is reason alone to reverse.

As the Supreme Court holds, the AIA's "purpose and the circum-stances of its enactment indicate that Congress did not intend the [AIA] to apply to actions brought by aggrieved parties for whom it has not provided an alternative remedy." *Regan*, 465 U.S. at 378. Put the other way, the AIA "was intended to apply only when Congress has provided an alternative avenue for an aggrieved party to litigate its claims on its own behalf." *Id.* at 381. Where no such avenue exists, the AIA does not apply—whatever the suit's connection to a tax. That makes this an in-dependent ground for reversal: the Court need not agree that the suit does not target a tax, § III.A, to hold that the AIA does not reach Plain-tiffs, whom Congress left without a remedy.

This Court has already adopted that rule—in the very decision the district court invoked to dismiss this case. *Westmoreland* took up the *Regan* exception, read it broadly, and applied it to let a suit proceed.

"[W]hen no alternative avenue for federal court jurisdiction exists," the Court held, "the [AIA] will not bar a suit to restrain tax collection." *Westmoreland*, 968 F.3d at 535. It refused to confine the exception to suits contesting a tax's validity, explaining that this Court and others "view the exception more broadly" and that the language of *Regan* "does not limit the exception to validity challenges." *Id.* at 535–36. And it grounded the exception in a settled presumption: courts are reluctant "to read a statute as precluding all judicial review as opposed to merely channeling litigation into a specific forum." *Id.* at 535 (citing *Elgin v. Department of Treasury*, 567 U.S. 1, 9–10 (2012)). Finding no other avenue for the plaintiff, the Court held "the [Act] does not bar" the suit. *Id.* at 536.

Plaintiffs stand exactly where *Regan* and *Westmoreland* place the exception. They have no avenue to litigate their claims on their own behalf, because neither path the district court named is open to them.

First, a refund suit is not available. A refund suit requires a tax already paid. 26 U.S.C. § 7422. None has been assessed, and none has been paid. The district court conceded as much: a refund suit "could be brought *if* a tax were ultimately collected." ROA.1139 (emphasis added). That "if" is the whole problem. A tax will reach Plaintiffs only through the same threefold chain that defeats the AIA in the first place: they must speak, the IRS must find a violation, and the IRS must choose to assess a tax rather than sue under § 7409 or do nothing. *See CIC Servs.*,

43

593 U.S. at 220–21. A remedy that opens only at the end of that chain, and only if the IRS exercises its discretion one particular way, is not a remedy the Plaintiffs can use. It relies on events outside their control.

Second, a § 7428 declaratory suit is unavailable. That statute opens only upon "a determination by the Secretary" about an organization's "continuing qualification" under § 501(c)(3). 26 U.S.C. § 7428(a). The district court said as much, recognizing that § 7428 would supply a forum "if the IRS were to make any determination" about the plaintiffs' status. ROA.1139. But the IRS has made none. There is no determination, no adverse ruling, and no controversy about Plaintiffs' continuing qualification. Every element the statute requires is missing. So § 7428, like a refund suit, is not a present avenue; it is one more door that opens only after Plaintiffs break the law and the IRS responds.

Both "remedies" thus share a single condition: Plaintiffs must first violate the Johnson Amendment and surrender the very speech they sue to protect. A path that demands the sacrifice of the right at issue is no alternative avenue to vindicate that right. *Cf.* § I.

*Regan* itself relied on similar logic: South Carolina had no refund suit because the tax fell on its bondholders, not the State, so the State could not litigate its own claim. 465 U.S. at 380. And South Carolina faced no pending audit, no notice, and no proceeding of any kind—just a statute it had no way to test. The exception does not turn on a pending proceeding; it turns on the absence of an avenue. Plaintiffs here are a

44

step further removed even than South Carolina: no tax falls on anyone, because they have triggered none. If the State in *Regan* lacked an available remedy, so do Plaintiffs.

The D.C. Circuit confirms the principle on facts close to these. In *Z Street*, a nonprofit alleged that the IRS subjected its exemption application to a slower, viewpoint-based review in violation of the First Amendment. *Z Street*, 791 F.3d at 26. The Commissioner argued that the group had only to wait 32 days and sue under § 7428. *Id.* at 27, 31. The court held the AIA was no bar anyway. It assumed, without deciding, that the suit might carry some downstream "implication[s]" for assessment and collection, because an earlier exemption would mean earlier deductions and so less tax. *Id.* at 31. But it had "no need to decide" that scope question, because *Regan* resolved the case: the group "ha[d] no other remedy for its alleged injury." *Id.* The statutory paths the Commissioner offered—§ 7428, § 6213, and § 7422—each reached only a different question, the group's tax status or liability, not the discriminatory delay it actually challenged. *Id.* So the group was "unable to utilize any statutory procedure to contest the constitutionality" of the wrong it brought. *Id.* (quoting *Regan*, 465 U.S. at 380).

Plaintiffs are in the same position. A refund suit and a § 7428 action each reach only liability or status. Neither reaches Plaintiffs' claim—that the Johnson Amendment unconstitutionally silences their speech. As in *Z Street*, a statutory forum aimed at a different wrong is

no remedy for the wrong Plaintiffs bring. And the present nature of the harm sharpens the point. The *Z Street* plaintiff sued over a delay it was "now suffering," *id.* at 32; Plaintiffs sue over a silence they endure now. Each suffers a present injury that the tax code gives no way to challenge.

The district court's order leaned on *Bob Jones*, which described a refund suit as "a full, albeit delayed, opportunity to litigate" a § 501(c)(3) organization's rights. 416 U.S. at 746; ROA.1140–1141. But *Bob Jones* differs in the way *Z Street* showed: the plaintiff there "sought to litigate [its] tax status," with the "obvious purpose" of restoring assurance that donations would be deductible. *Z Street*, 791 F.3d at 30 (quoting *Alexander v. "Americans United" Inc.*, 416 U.S. 752, 760–61 (1974)). A refund suit answered that claim because the claim was about the tax.

In stark contrast, Plaintiffs here do not sue to fix their status or shore up deductions. They sue to speak. And the opportunity in *Bob Jones* was real for another reason absent here: the IRS had already moved to revoke, so the tax was coming and the refund suit lay one step ahead. Here the tax is not coming. It waits behind a violation that Plaintiffs will not commit and a discretionary choice the IRS may not make. An opportunity that may never arrive is not the opportunity *Bob Jones* described.

The court's final answer was that Congress "can withhold an inferior court's statutory jurisdiction to decide even Article III cases and controversies." ROA.1141 (citing *Bob Jones*, 416 U.S. at 746). True, but beside the point. Plaintiffs do not say Congress is forced to give them a forum. They say Congress, in the AIA, did not take their forum away. That is what *Regan* holds and what *Westmoreland* applies. And the court's worry that Plaintiffs' position raises "policy-laden considerations" for Congress, ROA.1141, mistakes their point for a plea to rewrite the AIA. It's the opposite. *Regan* and *Westmoreland* already tell this Court how to read the AIA, and a faithful reading leaves this suit untouched.

## C.    Plaintiffs challenge IRS action unrelated to the protection of tax revenues.

A final, independent ground remains. The AIA protects the assessment and collection of revenue. It doesn't protect the IRS's use of the tax code to punish disfavored views. The Johnson Amendment crosses that line as applied. ROA.259–286.

In *Bob Jones*, the university said the AIA did not apply because the IRS was not guarding revenue but regulating admissions—so the case did not "involve taxes." 416 U.S. at 740. The Court rejected that argument on its facts, but its reasoning matters. The IRS's stand against racial discrimination, the Court held, was "a good-faith effort to enforce the technical requirements of the tax laws," so the Court could not "say

that its position has no legal basis or is unrelated to the protection of the revenues." *Id*. "The [AIA] is therefore applicable." *Id*. That logic carries its converse: an IRS position that has no legal basis, or that is unrelated to the protection of the revenues, does not enjoy AIA protection.

Viewpoint discrimination is not a legitimate tax purpose. It raises no revenue and enforces no technical requirement of the code. A claim that the IRS sorts speakers by their politics challenges a practice the AIA was never written to shield, whatever constitutional label the claim wears. Taken as true—as they must be here, *El Paso*, 748 F.3d at 228— the complaint's allegations describe just such a practice. The IRS allows some § 501(c)(3) organizations to endorse and oppose candidates without consequence, while pursuing others for the same speech, sorting them by viewpoint. ROA.259–286. Favored speakers go untouched; disfavored religious organizations draw investigation and adverse action. ROA.259–286. Enforcement of that kind is not "a good-faith effort to enforce the technical requirements of the tax law," has no "legal basis," and is "unrelated to the protection of the revenues." *Bob Jones*, 416 U.S. at 740.

This suit aims, in part, to stop the IRS' viewpoint discrimination. In *Z Street*, a nonprofit alleged the IRS subjected pro-Israel applicants to slower, viewpoint-based review. The court held the AIA to be no bar. 791 F.3d at 32. It relied on the rule that "in administering the tax code, the IRS may not discriminate on the basis of viewpoint," *id.* at 30—a

48

rule the Supreme Court grounds in the command that the tax laws not "discriminate invidiously" so as "to aim at the suppression of dangerous ideas." *Id.* (quoting *Regan v. Tax'n with Representation of Wash.*, 461 U.S. 540, 548 (1983)). The AIA does not shield the IRS from suits targeting its discrimination against disfavored viewpoints.

## D.    The DJA and AIA are coextensive.

The district court rested its dismissal on a second statute: the federal-tax exception to the DJA, which withholds declaratory relief "with respect to Federal taxes." 28 U.S.C. § 2201(a); ROA.1139. The court said this exception is "at least as broad" as the AIA. ROA.1139. But "at least as broad" doesn't mean "broader." The two are coextensive.

The exception and the AIA march together. Courts have long read the two as "coterminous," the exception barring no more than the AIA. *Z Street*, 791 F.3d at 26; *e.g.*, *In re Leckie Smokeless Coal Co.*, 99 F.3d 573, 583 (4th Cir. 1996); *Tomlinson v. Smith*, 128 F.2d 808, 811 (7th Cir. 1942); *Perlowin v. Sassi*, 711 F.2d 910, 911 (9th Cir. 1983); *Green Sol. Retail, Inc. v. United States*, 855 F.3d 1111, 1115 (10th Cir. 2017). This Court has assumed that: *Westmoreland* "assume[d] without deciding that the two statutes are coterminous and limit[ed] [its] discussion to the AIA." 968 F.3d at 533 n.7. The dismissal below proceeds from this premise, treating "the AIA's and DJA's tax-suit provisions" as a single bar. This is common ground, not contested terrain.

49

The overlap is by design. Congress added the federal-tax exception to the DJA in 1935, one year after the Act itself, to close an obvious escape hatch: a litigant forbidden to *enjoin* a tax could otherwise have asked a court to *declare* the tax unlawful and won by relabeling the remedy what § 7421(a) denies in substance. The exception was written to make the declaratory remedy track the AIA, not to open a second, wider front against the same suits. That is why the courts ask a single question—does the AIA reach *this* suit?—and let the answer dispose of both provisions. *E.g.*, *Westmoreland*, 968 F.3d at 533 n.7. The two share an object and a coverage, and they rise and fall together on *reach*.

Two lessons follow, and both concern scope alone. First, the declaratory exception adds nothing the AIA does not already supply, so the DJA is not a broader bar to sidestep Plaintiffs' showing that the AIA does not reach this suit. § III.A-C. Whatever defines the AIA's reach defines the exception's; a suit the AIA does not touch, the exception does not touch either. Second, because the exception governs only declarations and runs no further than the AIA, it leaves injunctive relief entirely to the AIA—which is why the Government's waiver of the AIA, not the declaratory exception, controls the request for injunctive relief. None of this turns on whether either provision is jurisdictional. Coextensiveness fixes how far the bars extend; it says nothing about the courts' power.

51

Because the AIA does not reach this suit, § III.A-C, the declaratory exception—which extends no further—does not bar it either.

## CONCLUSION

The district court had everything it needed to decide this case: jurisdiction under § 1331, parties who agreed on the relief, and the power to grant it. The AIA took none of that away. The AIA is a claim-processing rule the Government waived, the provision does not reach a suit that challenges a speech restriction rather than a tax, and its restriction does not apply when it leaves Plaintiffs no other avenue for relief. The dismissal should be undone, and the Plaintiffs' silence with it.

Accordingly, this Court should reverse the judgment of dismissal and remand with instructions for the district court to consider the parties' joint motion for the consent judgment.

Dated: July 7, 2026

Respectfully submitted,

*s/Michael P. Farris*

Michael P. Farris
Sarah Siu
NATIONAL RELIGIOUS BROADCASTERS
800 Maryland Ave, N.E.
Washington, D.C. 20002
(571) 359-6000
mfarris@nrb.org
ssiu@nrb.org

James A. Campbell
John J. Bursch
David A. Cortman
ALLIANCE DEFENDING FREEDOM
440 First Street NW, Suite 600
Washington, DC 20001

52

(616) 450-4235
jbursch@ADFlegal.org

Jacob P. Warner
ALLIANCE DEFENDING FREEDOM
15100 N. 90th Street
Scottsdale, AZ 85260
(480) 444-0020
jwarner@ADFlegal.org

Rita M. Peters
CITIZENS FOR SELF-GOVERNANCE
7586 Stoney Lick Road
Mount Crawford, VA 22841
540-830-1229
rpeters@selfgovern.com

*Counsel for Appellants*

## CERTIFICATE OF SERVICE

I hereby certify that on July 7, 2026, I electronically filed the foregoing brief with the Clerk of the Court for the United States Court of Appeals for the Fifth Circuit using the appellate CM/ECF system. I certify that all participants in the case are registered CM/ECF users, and that service will be accomplished by the CM/ECF system.

*s/ Michael P. Farris*
Michael P. Farris
*Counsel for Appellants*

# CERTIFICATE OF COMPLIANCE

This brief complies with the word limit of Fed. R. App. P. 32(a)(7)(B) and Circuit Rule 32 because this brief contains 11,941 words, excluding parts of the brief exempted by Fed. R. App. P. 32(f).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in Word 365 using a proportionally spaced typeface, 14-point Century Schoolbook.

Dated: July 7, 2026

*s/ Michael P. Farris*
Michael P. Farris
*Counsel for Appellants*