# 26-40237

**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

---

**NATIONAL RELIGIOUS BROADCASTERS; SAND SPRINGS CHURCH; FIRST BAPTIST CHURCH WASKOM; INTERCESSORS FOR AMERICA,**

**Plaintiffs-Appellants**

**v.**

**SCOTT BESSENT, ACTING COMMISSIONER OF THE INTERNAL REVENUE SERVICE; INTERNAL REVENUE SERVICE,**

**Defendants-Appellees**

---

**ON APPEAL FROM THE JUDGMENT OF THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF TEXAS**

**CASE NO. 6:24-CV-311**

---

## BRIEF FOR THE APPELLEES

---


**BRETT A. SHUMATE**
***Assistant Attorney General***
**JOSHUA WU**
***Deputy Assistant Attorney General***

**FRANCESCA UGOLINI** **(202) 514-3361**
**MARIE E. WICKS** **(202) 307-0461**
***Attorneys, Tax Litigation Branch***
***Civil Division, U.S. Department of Justice***
***Post Office Box 502, Washington, D.C. 20044***

## STATEMENT REGARDING ORAL ARGUMENT

Counsel for the Government agree that oral argument may be helpful to the Court in this case.

# TABLE OF CONTENTS

**Page**

Statement regarding oral argument .......... i
Table of contents .......... ii
Table of authorities .......... iv
Statement of jurisdiction .......... 1
Statement of the issue .......... 2
Statement of the case .......... 3

A. Proceedings in the District Court .......... 3

1. Initial proceedings .......... 3

2. The amended complaint .......... 4

3. The proposed consent judgment .......... 8

B. The District Court's decision .......... 13

Summary of argument .......... 17
Argument .......... 22
I. .......... 22

The District Court had jurisdiction to consider and enter the proposed consent judgment .......... 22

Standard of review .......... 22

A. Overview of the Anti-Injunction Act and the Declaratory Judgment Act .......... 22

B. The AIA does not bar consideration of the parties' proposed consent judgment .......... 28

1. The church plaintiffs' claim addressed in the consent judgment satisfies the *Williams Packing* test .......... 29

2. The District Court's treatment of the *Williams Packing* test reached the wrong result ..... 35

C. The tax exception to the Declaratory Judgment Act likewise does not bar entry of the proposed consent judgment..... 37

II. ..... 38

The District Court correctly dismissed the remainder of Plaintiffs' claims..... 38

A. The District Court correctly dismissed Plaintiffs' claims that are not encompassed by the proposed consent judgment..... 40

B. The District Court correctly held that the Anti-Injunction Act is jurisdictional..... 45

1. The text, purpose, and context of the AIA establish that it is jurisdictional..... 46

2. Plaintiffs' arguments to the contrary fall short ..... 54

Conclusion..... 65

Certificate of service..... 66

Certificate of compliance..... 67

## TABLE OF AUTHORITIES

**Cases:** **Page(s)**

*Alexander v. Americans United, Inc.*,
416 U.S. 752 (1974) ....................24-26, 41, 44
*Ankenbrandt v. Richards*,
504 U.S. 689 (1992) ....................61
*Arbaugh v. Y&H Corp.*,
546 U.S. 500 (2006) ....................46
*Arkansas v. Farm Credit Servs. of Cent. Arkansas*,
520 U.S. 821 (1997) ....................61
*Belya v. Kapral*,
59 F.4th 570 (2d Cir. 2023) ....................34
*Bob Jones Univ. v. Simon*,
416 U.S. 725 (1974) ....................14, 17, 23, 25, 38, 41-42, 44, 51, 55, 60, 63
*Boechler, P.C. v. Commissioner*,
596 U.S. 199 (2022) ....................47, 64
*Boutiller v. The Milwaukee*,
8 Minn. 97 (1863)....................56
*Cammarano v. United States*,
358 U.S. 498 (1959)....................42
*Cheatham v. United States*,
92 U.S. 85 (1875) ....................50
*CIC Servs., LLC v. IRS*,
593 U.S. 209 (2021)....................13, 15, 25-26, 40-44, 52
*Cohen v. United States*,
650 F.3d 717 (D.C. Cir. 2011)....................38
*Crenshaw Cnty. Priv. Sch. Found. v. Connally*,
474 F.2d 1185 (5th Cir. 1973) ....................15
*Daniels Health Scis., LLC v. Vascular Health Scis., LLC*,
710 F.3d 579 (5th Cir. 2013) ....................35
*Direct Mktg. Ass'n v. Brohl*,
575 U.S. 1 (2015) ....................59
*Enochs v. Williams Packing & Nav. Co.*,
370 U.S. 1 (1962) ....................12, 16, 18-19, 21, 23, 26-30, 34-35, 37, 50-51, 60, 63

**Cases (cont'd):** **Page(s)**

*Fowler v. Rhode Island*,
345 U.S. 67 (1953) .......... 31
*Garrick v. Moody Bible Inst.*,
95 F.4th 1104 (7th Cir. 2024).......... 34
*Gonzalez v. Thaler*,
565 U.S. 134 (2012) .......... 48, 56-57
*Great Lakes Dredge & Dock Co. v. Huffman*,
319 U.S. 293 (1943) .......... 51
*Helvering v. Davis*,
301 U.S. 619 (1937) .......... 61-62
*Henderson ex rel. Henderson v. Shinseki*,
562 U.S. 428 (2011) .......... 46-48, 54, 60, 63
*Hibbs v. Winn*,
542 U.S. 88 (2004) .......... 59
*Hosanna-Tabor Evangelical Lutheran Church & Sch. v. E.E.O.C.*,
565 U.S. 171 (2012) .......... 33
*Hotze v. Burwell,*
784 F.3d 984 (5th Cir. 2015) .......... 24, 53
*Ins. Corp. of Ir. v. Compagnie des Bauxites de Guinee*,
456 U.S. 694 (1982) .......... 14
*Jefferson Cnty., Ala. v. Acker*,
527 U.S. 423 (1999).......... 59
*John R. Sand & Gravel Co. v. United States*,
552 U.S. 130 (2008) .......... 47
*Jones v. Wolf*,
443 U.S. 595 (1979) .......... 32
*Klein v. Oved*,
No. 23-14105, 2024 WL 1092324
(11th Cir. Mar. 13, 2024).......... 34
*Kontrick v. Ryan*,
540 U.S. 443 (2004) .......... 46, 48, 55
*Lewis v. Walley*,
168 F.4th 327 (5th Cir. 2026).......... 45
*Linn v. Chivatero*,
714 F.2d 1278 (5th Cir. 1983) .......... 16

**Cases (cont'd):** **Page(s)**

*Loc. No. 93, Int'l Ass'n of Firefighters, AFL-CIO C.L.C. v. City of Cleveland*, 478 U.S. 501 (1986) .......... 29
*Lutheran Church—Missouri Synod v. Christian*, 178 F.4th 193 (5th Cir. 2026) .......... 32
*Markham v. Allen*, 326 U.S. 490 (1946) .......... 61
*McCabe v. Alexander*, 526 F.2d 963 (5th Cir. 1976) .......... 16, 38
*McRaney v. N. Am. Mission Bd. of the S. Baptist Convention, Inc.*, 157 F.4th 627 (5th Cir. 2025), *cert. denied*, 146 S. Ct. 1674 (2026) .......... 30-36
*Merit Mgmt. Grp., LP v. FTI Consulting, Inc.*, 583 U.S. 366 (2018) .......... 50
*Miller v. Standard Nut Margarine Co.*, 284 U.S. 498 (1932) .......... 51, 62
*Miller-El v. Cockrell*, 537 U.S. 322 (2003) .......... 57
*Nat'l Infusion Ctr. Ass'n v. Kennedy*, __ F.4th __, No. 25-50661, 2026 WL 2517285 (5th Cir. Aug. 26, 2026) .......... 54
*National Federation of Independent Business v. Sebelius*, 567 U.S. 519 (2012) .......... 52, 62
*Norcave Properties LLC v. IRS*, _ F.4th _, 2026 WL 2452258 (5th Cir. 2026) .......... 24, 26, 38, 40, 46, 53
*O'Connell v. United States Conf. of Cath. Bishops*, 134 F.4th 1243 (D.C. Cir. 2025), *cert. denied*, 224 L. Ed. 2d 857 (May 26, 2026) .......... 34
*Ortega v. Off. of the Comptroller of the Currency*, 155 F.4th 394 (5th Cir. 2025) .......... 22
*Our Lady of Guadalupe Sch. v. Morrissey-Berru*, 591 U.S. 732 (2020) .......... 32-33
*Pac. R.R. v. Ketchum*, 101 U.S. 289 (1879) .......... 29

**Cases (cont'd):** **Page(s)**

*People's Bank v. Calhoun*,
102 U.S. 256 (1880) .......... 15
*Pollock v. Farmers' Loan & Trust Co.*,
157 U.S. 429 (1895) .......... 61-62
*Pope v. United States*,
323 U.S. 1 (1944) .......... 15
*Reed Elsevier, Inc. v. Muchnick*,
559 U.S. 154 (2010) .......... 47, 57-58, 60, 63
*Regan v. Taxation with Representation*,
461 U.S. 540 (1983) .......... 41
*Riley v. Bondi*,
606 U.S. 259 (2025) .......... 46
*Rivero v. Fid. Invs., Inc.*,
1 F.4th 340 (5th Cir. 2021) .......... 14, 22, 24, 37-38, 53
*Rollins v. Home Depot USA*,
8 F.4th 393 (5th Cir. 2021) .......... 46
*Rudisill v. McDonough*,
601 U.S. 294 (2024) .......... 49
*Seven-Sky v. Holder*,
661 F.3d 1 (D.C. Cir. 2011) .......... 62
*Smallwood v. Gallardo*,
275 U.S. 56 (1927) .......... 56
*Smith v. Sch. Bd. of Concordia Par.*,
906 F.3d 327 (5th Cir. 2018) .......... 29
*South Carolina v. Regan,*
465 U.S. 367 (1984) .......... 11, 27-28, 45
*State R.R. Tax Cases*,
92 U.S. 575 (1875) .......... 50
*Sunshine Anthracite Coal Co. v. Adkins*,
310 U.S. 381 (1940) .......... 61-62
*Tucker v. Faith Bible Chapel Int'l*,
36 F.4th 1021 (10th Cir. 2022) .......... 34
*Union Pac. R. Co. v. Bhd. of Locomotive Eng'rs & Trainmen Gen. Comm. of Adjustment, Cent. Region*,
558 U.S. 67 (2009) .......... 47

**Cases (cont'd): Page(s)**

*United States v. A. S. Kreider Co.*,
313 U.S. 443 (1941) ........ 23
*United States v. Clintwood Elkhorn Min. Co.*,
553 U.S. 1 (2008) ........ 23
*United States v. Holmes*,
614 F.2d 985 (5th Cir. 1980) ........ 32
*United States v. Kwai Fun Wong*,
575 U.S. 402 (2015) ........ 47
*Watson v. Jones*,
80 U.S. 679 (1872) ........ 32
*Matter of Westmoreland Coal Co.*,
968 F.3d 526 (5th Cir. 2020) ........ 14, 24, 53
*Whole Woman's Health v. Smith*,
896 F.3d 362 (5th Cir. 2018) ........ 31
*Z Street v. Koskinen,*
791 F.3d 24 (D.C. Cir. 2015) ........ 45

**United States Constitution:**

Article III ........ 4, 17
First Amendment ........ 3-4, 7, 13, 17, 26, 39, 41-42
Fifth Amendment ........ 7-8, 39
Seventh Amendment ........ 26

**Statutes: Page(s)**

17 U.S.C. § 411(a) ........ 57

Internal Revenue Code (26 U.S.C.):

§ 501(c)(3) ........ 1-3, 14-15, 25, 30, 40-41, 43
§ 6015(e) ........ 22, 49
§ 6212(a), (c) ........ 22
§ 6213(a) ........ 22, 49-50
§ 6232(c) ........ 22, 49
§ 6330(e)(1) ........ 22, 49
§ 6331(i)… ........ 22

**Statutes (cont'd):** **Page(s)**

Internal Revenue Code (cont'd):

§ 6672(c) .......... 22
§ 6694(c) .......... 22
§ 6694(c)(1) .......... 49
§ 7402(a) .......... 58
§ 7402(f) .......... 58
§ 7409 .......... 42-43
§ 7409(a)(1) .......... 43
§ 7409(a)(2)(B)(i) .......... 43
§ 7409(b) .......... 43
§ 7421(a) (Anti-Injunction Act) .......... 1-3, 11-16, 18-29, 37-38, 40-42, 45-64
§ 7422 .......... 23, 50
§ 7426 .......... 55
§ 7426(a), (b)(1) .......... 22, 49
§ 7428 .......... 17, 21, 25, 37, 44
§ 7428(a) .......... 17, 36, 44
§ 7429(b) .......... 22
§ 7429(b)(2)(A) .......... 49
§ 7436 .......... 22
§ 7442 .......... 59

28 U.S.C.:

§ 1291 .......... 2
§ 1340 .......... 58
§ 2201 (Declaratory Judgment Act) .......... 1, 4, 37
§ 2201(a) (Declaratory Judgment Act, including tax exception) .......... 1-4, 13-14, 16, 18, 20, 24-25, 37-38, 40, 53
§ 2202 (Declaratory Judgment Act) .......... 1
§ 2253(c)(1) .......... 56

Administrative Procedure Act .......... 5, 7
Religious Freedom Restoration Act .......... 7, 39

**Statutes (cont'd):** **Page(s)**

Removal Clarification Act of 2011, Pub. L. No. 112-51,
125 Stat. 545 .......... 59
Tax Injunction Act .......... 59
Tax Lien Act .......... 55

**Miscellaneous:**

Brief for Private Respondents on the Anti-Injunction Act, *Department of Health and Human Services v. Fla.*, No. 11-398, 2012 WL 379585 (U.S. Feb. 6, 2012) .......... 52

Brief for State Respondents on the Anti-Injunction Act, *United States Department of Health and Human Services v. State of Fla.*, No. 11-398, 2012 WL 392549 (U.S. Feb. 6, 2012) .......... 52

Federal Rules of Appellate Procedure:

Rule 4(a)(1)(B) .......... 2
Rule 12(b)(1) .......... 32

H.R. Rep. 100-391(II), 1628-29, *reprinted in* 1987 U.S.C.C.A.N. 2313-378 .......... 43

Letter Brief by Appellant, *Rivero v. Fidelity Invs., Inc.*, No. 20-40371, 2021 WL 301948 (5th Cir. Jan. 19, 2021) .......... 53

Letter Brief by Appellee, *Rivero v. Fidelity Invs., Inc.*, No. 20-40371, 2021 WL 301952 (5th Cir. Jan. 19, 2021) .......... 53

## STATEMENT OF JURISDICTION

In August 2024, plaintiffs National Religious Broadcasters, Sand Springs Church, First Baptist Church Waskom, and Intercessors for America (collectively "Plaintiffs") brought suit against the United States seeking declaratory and injunctive relief under the Declaratory Judgment Act, 28 U.S.C. §§ 2201–02, regarding the scope and application of a federal tax statute, 26 U.S.C. § 501(c)(3). ROA.19-ROA.71; ROA.22; *see* ROA.246.

On March 31, 2026, the District Court dismissed Plaintiffs' suit for lack of jurisdiction. It held that all claims were barred by the Anti-Injunction Act, which states that "no suit for the purpose of restraining the assessment or collection of any tax shall be maintained in any court by any person, whether or not such person is the person against whom such tax was assessed." 26 U.S.C. § 7421(a). It further held that the claims were barred by the federal tax exception to the Declaratory Judgment Act. As discussed *infra*, the District Court's ruling was correct as to all but one of Plaintiffs' claims.

On April 22, 2026, Plaintiffs noticed their appeal. ROA.1143-ROA.1145. Plaintiffs' notice was timely under Fed. R. App. P. 4(a)(1)(B). Jurisdiction in this Court exists under 28 U.S.C. § 1291.

## STATEMENT OF THE ISSUE

Plaintiffs brought this suit broadly challenging a provision of Section 501(c)(3) of the Internal Revenue Code (I.R.C.) that conditions tax-exempt status for certain organizations on refraining from participating or intervening in any political campaigns on behalf of or in opposition to any candidate for public office. The parties eventually reached an agreement with respect to a narrow claim regarding speech by the church plaintiffs in the context of their religious services. The parties jointly asked the District Court to enter a proposed consent judgment resolving that claim and dismissing with prejudice the remaining claims. The District Court refused to enter the consent judgment, ruling that it lacked jurisdiction over all of Plaintiffs' claims due to the Anti-Injunction Act ("AIA") and the federal tax exception to the Declaratory Judgment Act ("DJA").

As explained below, the Government agrees that all but one of Plaintiffs' claims were properly dismissed under the AIA and DJA.[1] But the District Court failed to focus on the much narrower claim covered by the proposed consent judgment, which, as explained below, falls within a recognized exception to the AIA. The issue presented is whether the District Court had jurisdiction to consider the parties' proposed consent judgment addressing that single claim.

## STATEMENT OF THE CASE

### A. Proceedings in the District Court

#### 1. Initial proceedings

Plaintiffs—two churches and two non-profit groups—sued the United States, raising a First Amendment challenge to the so-called Johnson Amendment in I.R.C. § 501(c)(3). ROA.19-ROA.71. Section 501(c)(3) describes the types of organizations eligible for federal income tax exemption, and the last portion of the statute (proposed by then-Senator Lyndon B. Johnson in 1954) states that the organization must "not participate in, or intervene in (including the publishing or

[1] For ease of reference, "DJA" in this brief refers to the tax exception to the Declaratory Judgment Act, rather than the act itself.

distributing of statements), any political campaign on behalf of (or in opposition to) any candidate for public office."

Plaintiffs asserted that "[t]his case arises under the First Amendment, and Plaintiffs' central claim is that their right to speak freely about political candidates and issues are being improperly chilled by the Johnson Amendment, as written and enforced by the IRS." ROA.25. Plaintiffs alleged that none of them "have heretofore violated the Johnson Amendment, but all have engaged in self-censorship to avoid doing so and incurring the commensurate penalties provided in the [Internal Revenue Code]." ROA.25.

The United States initially moved to dismiss the case, arguing lack of Article III standing, lack of jurisdiction because the suit is "with respect to federal taxes" and thus barred by the tax exception to the DJA, and failure to state a claim for which relief may be granted. ROA.105-ROA.154.

### 2. The amended complaint

Plaintiffs, in response, moved in early 2025 for leave to file an amended complaint in order to "clarif[y]" certain issues regarding the DJA and standing, to allege that the United States had waived its

sovereign immunity through the Administrative Procedure Act ("APA"), and to seek an injunction against the enforcement of the Johnson Amendment. ROA.163-ROA.240. The motion to amend stated that the "Parties likewise agree that it would best serve the interests of justice and orderly administration of this litigation to treat the Defendants' pending motion to dismiss the original Complaint as moot and allow Defendants to file a new responsive pleading to the Amended Complaint." ROA.164. The court granted the motion to amend and dismissed the Government's motion to dismiss as moot. ROA.241-ROA.242.

The amended complaint made various allegations and several requests for relief. According to Plaintiffs, "the Christian faith as taught in the Holy Bible speaks to every area of life"; they expressed concern that "Plaintiffs are in jeopardy of punishment if they forthrightly say that a candidate's positions are unbiblical; or that another candidate's positions are consonant with biblical teaching." ROA.245. Plaintiffs alleged that "they only seek a declaratory judgment and injunctive relief that they may use their regular means of

communication to expound their views concerning political candidates who seek to represent them." ROA.246.

Plaintiffs described the types of speech and conduct they would engage in but for their fear of violating the Johnson Amendment. National Religious Broadcasters alleged that it would publish the views of various candidates for office and compare those views to its own views; urge members to vote in line with the organization's recommendations; invite political candidates to speak at its annual conventions; and take such actions close in time to the applicable election. ROA.250-ROA.251 (¶37). Intercessors for America would publish voter guides making clear statements about its "preferred view" of issues and candidates. ROA.254-ROA.255 (¶40).

The two church plaintiffs alleged that their pastors would "deliver one or more sermons at the regular Sunday services of the church in which [the pastors] would discuss political issues and the stands taken by the major candidates nationally and in the church's general area in light of the principles, teachings, and dictates of the Bible." ROA.252-ROA.254 (¶¶38-39). This would include "identify[ing] a specific and narrow set of issues that are of special importance to the people of

[their] church considering their biblically-grounded faith," as well as "compar[ing] the views of each of the relevant candidates and/or the major political parties" and "making it clear which candidates/parties views align with those of the church and which do not." *Id.*

The church plaintiffs also would invite "[c]andidates for state and local offices … to appear at the church's Sunday morning worship service in close proximity to the relevant election," and "[t]he congregation would be told the name of the candidate, what office they seek, that the church is confident that their views align with those of the church." *Id.*

Plaintiffs further alleged that the IRS has enforced the Johnson Amendment in a disparate manner, alleging that it "routinely allows favored organizations to openly and notoriously violate the Johnson Amendment," including various newspapers and churches that have hosted Democratic candidates as speakers. ROA.259.

Count I asserted a First Amendment freedom of speech claim, Count II asserted a Fifth Amendment void-for-vagueness due-process claim, Count III asserted a First Amendment Free Exercise claim, Count IV asserted a claim under the Religious Freedom Restoration Act

(RFRA), and Count V raised a Fifth Amendment Equal Protection claim. ROA.288, ROA.290, ROA.291, ROA.293, ROA.296. Plaintiffs' prayer for relief sought a "declaratory judgment that the Johnson Amendment is unconstitutional as alleged above," "injunctive relief against [the Government] prohibiting them from enforcing the Johnson Amendment," as well as reasonable attorney's fees and "[s]uch other and further relief as the Court may deem just and appropriate." ROA.298-ROA.299.

In May 2025, the United States answered the amended complaint and denied many of the allegations. ROA.373-ROA.397.

### 3. The proposed consent judgment

On July 7, 2025, the parties jointly requested entry of a consent judgment that would resolve one of the church plaintiffs' claims and dismiss all other claims with prejudice. ROA.408-ROA.418. Specifically, the proposed consent judgment acknowledged that "Plaintiff Churches (Sand Springs Church and First Baptist Church Waskom) claim that their religious beliefs compel them to take a position on electoral politics, and that the Johnson Amendment imposes an impermissible burden on their ability to do so." ROA.415. It further

acknowledged that "the IRS generally has not enforced the Johnson Amendment against houses of worship for speech concerning electoral politics in the context of worship services." ROA.416.

The proposed consent judgment recognized that "[w]hen a house of worship in good faith speaks to its congregation, through its customary channels of communication on matters of faith in connection with religious services, concerning electoral politics viewed through the lens of religious faith, it neither 'participate[s]' nor 'intervene[s]' in a 'political campaign,' within the ordinary meaning of those words." ROA.415-ROA.416. It further stated that "communications from a house of worship to its congregation in connection with religious services through its usual channels of communication on matters of faith do not run afoul of the Johnson Amendment as properly interpreted," and that "[t]his interpretation of the Johnson Amendment is in keeping with the IRS's treatment of the Johnson Amendment in practice." ROA.416.

For these reasons, the proposed consent judgment concluded that "the Johnson Amendment does not reach speech by a house of worship to its congregation, in connection with religious services through its

customary channels of communication on matters of faith, concerning electoral politics viewed through the lens of religious faith." The consent judgment accordingly would permanently enjoin the United States "from enforcing the Johnson Amendment against" the church plaintiffs (Sand Springs Church and First Baptist Church Waskom) "based on speech by a house of worship to its congregation in connection with religious services through its customary channels of communication on matters of faith, concerning electoral politics viewed through the lens of religious faith." ROA.417-ROA.418.

The parties agreed to dismiss all remaining claims with prejudice. ROA.418.

Three days later, Americans United for Separation of Church and State sought to intervene or be allowed to file an amicus brief opposing the entry of the consent judgment. ROA.420-ROA.437. The court allowed Americans United permission to file an amicus curiae brief and to participate in oral argument. ROA.470. Both Plaintiffs and the United States opposed Americans United's motion to intervene but consented to its participation as an amicus. ROA.424; ROA.471-ROA.483; ROA.489-ROA.504. Numerous other amici filed briefs, both

in support of and in opposition to the proposed consent judgment. ROA.13-ROA.14.

Two amici, including Americans United, argued that Plaintiffs' suit was barred by the AIA. ROA.508-ROA.541; ROA.602-ROA.632. In response, Plaintiffs argued that the AIA does not apply because the purpose of their suit is not "to restrain the assessment or collection" of taxes within the meaning of I.R.C. § 7421(a). They also relied on *South Carolina v. Regan,* 465 U.S. 367 (1984), which held that the AIA does not apply when the plaintiff has no alternative means to bring its tax claim. Plaintiffs argued that they have no alternative remedy because they did not want to violate the Johnson Amendment and risk losing their tax-exempt status just to bring their claims. ROA.1023-ROA.1026.

In its response to these amici (ROA.1048-ROA.1071), the Government made clear that it was not conceding the viability of any claims other than the church plaintiffs' claims addressed by the proposed consent judgment. ROA.1054 n.5. The Government asserted that "[t]o the extent Plaintiffs' claims seek different or broader relief, they would be dismissed upon entry of the Proposed Consent

Judgment." ROA.1054 n.5. "In an abundance of caution," the Government emphasized, "Defendants make express their position that the Anti-Injunction Act bars Plaintiffs' claims to the extent they seek relief broader or different than that allowed by the Proposed Consent Judgment." ROA.1054 n.5. The Government "preserve[d] all other arguments and defenses against Plaintiffs' claims in the event the Court declines to enter the Proposed Consent Judgment." ROA.1054 n.5.

The Government provided multiple reasons why the District Court had jurisdiction to enter the proposed consent judgment. ROA.1051-ROA.1058. Among those was an exception to the AIA recognized in *Enochs v. Williams Packing & Nav. Co.*, 370 U.S. 1, 7 (1962). ROA.1056. As discussed in more detail *infra*, the *Williams Packing* exception applies where the Government has no likelihood of prevailing on the merits, and equity jurisdiction otherwise exists. *Id.* As to the first prong, the Government argued that it could not prevail as to the narrow claim redressed by the proposed consent judgment because the Government agreed with Plaintiffs that the Johnson Amendment,

properly interpreted, does not encompass the speech described in the consent judgment. ROA.1056.

Regarding the second prong, the Government explained that equity jurisdiction existed because "it is well-settled that a chilling of First Amendment rights constitutes irreparable harm warranting equitable relief." ROA.1056-ROA.1057 (citing cases).

The District Court held a substantive hearing and gave the parties "leave to file supplemental briefs . . . addressing any matters that [the court] raised at the hearing" that the parties "were unable to adequately address." ROA.1210. The parties and amicus submitted supplemental letter briefs. ROA.1106-ROA.1109; ROA.1110-ROA.1112; ROA.1113-ROA.1117.

**B. The District Court's decision**

The District Court denied entry of the proposed consent judgment and dismissed the case for lack of jurisdiction. ROA.1133-ROA.1141. It concluded that its jurisdiction to enter the proposed relief was barred by the AIA and the DJA. ROA.1139. It reasoned that "Plaintiffs are not challenging a burden that arises 'separate and apart from' a tax." ROA.1134 (quoting *CIC Servs., LLC v. IRS*, 593 U.S. 209, 220-22

(2021)). Rather, "[t]he Johnson Amendment exempts organizations from taxes if they do not participate or intervene in political campaigns. If credited, then, plaintiffs' claims would restrain the assessment or collection of a tax based on certain activity." ROA.1134 (citing *Bob Jones Univ. v. Simon*, 416 U.S. 725, 738-39 (1974) (holding that a suit to prevent the loss of § 501(c)(3) status is a suit to enjoin taxation).

The court rejected the Government's argument that the AIA does not limit a federal court's jurisdiction if the Government agrees to an injunction as part of a settlement, because "a court's jurisdiction is determined from the operative complaint" and "cannot be waived or created by litigation conduct." ROA.1134-ROA.1135. In support of this reasoning, the District Court relied on Fifth Circuit precedent holding that the AIA and DJA's tax-suit provisions are jurisdictional. ROA.1135 (citing *Rivero v. Fid. Invs., Inc.*, 1 F.4th 340, 346 (5th Cir. 2021); *Matter of Westmoreland Coal Co.*, 968 F.3d 526, 533 (5th Cir. 2020)). The court also relied on Supreme Court precedent stating that the consent of the parties cannot confer jurisdiction on the court. ROA.1135 (citing *Ins. Corp. of Ir. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702

(1982); *People's Bank v. Calhoun*, 102 U.S. 256, 260-61 (1880); *Pope v. United States*, 323 U.S. 1, 12 (1944)).

The court then looked to the amended complaint and noted that "plaintiffs seek a declaration 'that the Johnson Amendment is unconstitutional' and an injunction against defendants 'prohibiting them from enforcing the Johnson Amendment,' which "is a condition of tax-exempt status under § 501(c)(3)" and "would thus directly bear on the amount of tax that could be collected." ROA.1137. This, the court reasoned, "is the same dynamic as in *Bob Jones University*, which held the AIA's jurisdictional bar applicable." ROA.1137 (citing *Crenshaw Cnty. Priv. Sch. Found. v. Connally*, 474 F.2d 1185, 1188 (5th Cir. 1973) (holding that the AIA applied because, without tax-exempt status, the plaintiff "will be liable for taxes on any net income realized by it and contributors to it will not be permitted to deduct from their gross income the amount of their contributions. Either event will result in an increase in taxes.").

The court distinguished the Supreme Court's decision in *CIC Services,* 593 U.S. 209, where the Court held that the AIA did not bar the plaintiff's challenge to a tax-shelter reporting requirement that was

enforced via a civil tax penalty. The District Court stated that "this case does not involve any penalty independent of tax status" and "does not involve reporting costs with no proximate relation to tax collection." ROA.1138. The District Court also explained that the Fifth Circuit has "interpreted the [AIA] broadly," applying it "not only to assessment and collection of taxes," but also "to 'activities which are intended to or may culminate in the assessment or collection of taxes.'" ROA.1138-ROA.1139 (quoting *Linn v. Chivatero*, 714 F.2d 1278, 1282 (5th Cir. 1983)). Moreover, the court pointed out that "the DJA's bar is 'at least as broad' as the AIA's bar." ROA.1139 (quoting *McCabe v. Alexander*, 526 F.2d 963, 965 (5th Cir. 1976)).

Acknowledging that "the parties appeal to a 'narrow, judicially created exception' to the AIA," the District Court likewise found that the plaintiffs' claims failed to satisfy the "stringent" test under *Williams Packing*. ROA.1139-ROA.1140. The court stated that "[g]iven the open-textured nature of the legal provisions at issue here and the wide array of potential facts discussed in the complaint, the court is not prepared to find plaintiffs' contentions so undebatable as to foreclose the possibility of any government success." ROA.1140.

The court likewise found unpersuasive Plaintiffs' contention that they had no alternative remedy, noting that Plaintiffs could file a declaratory judgment action under I.R.C. § 7428 if the IRS were to threaten to revoke Plaintiffs' tax-exempt status. ROA.1140. The court concluded, "[E]ven as the law stood in *Bob Jones University*, [i.e., where a post-revocation tax-refund suit was the alternative remedy] it was not a case in which an aggrieved party ha[d] no access at all to judicial review." ROA.1141. The court observed that such access "was . . . expanded by Congress's addition of § 7428(a)'s procedure for pre-tax declaratory relief." ROA.1141. And "Congress can withhold an inferior court's statutory jurisdiction to decide even Article III cases and controversies." ROA.1141 (citing *Bob Jones Univ.*, 416 U.S. at 746).

## SUMMARY OF ARGUMENT

This appeal presents a narrow issue for this Court to resolve: whether the District Court had jurisdiction to consider the parties' proposed consent judgment. Notwithstanding the breadth of their opening brief, appellants have indicated that they still want this case resolved on the basis of the proposed consent judgment, as does the Government. *See* Opening Br. 52 ("Accordingly, this Court should

reverse the judgment of dismissal and remand with instructions for the district court to consider the parties' joint motion for the consent judgment.").

As explained below, the District Court had jurisdiction to consider the proposed consent judgment because the single claim addressed therein falls within the *Williams Packing* exception to the AIA. Nor is the narrow injunction set forth in the proposed consent judgment precluded by the DJA. But for any claims beyond the proposed consent judgment, the District Court correctly held that it lacked jurisdiction because the AIA and DJA bar those claims.

1. The limited claim addressed in the consent judgment comes within the *Williams Packing* exception to the AIA. The *Williams Packing* exception applies when the Government has no likelihood of prevailing on the merits, and equity jurisdiction otherwise exists. Both prongs are satisfied with respect to the narrow claim covered by the consent judgment.

The proposed consent judgment would enjoin the Government from enforcing the Johnson Amendment against the two church plaintiffs with respect to a narrow category of speech: "speech by a

house of worship to its congregation, in connection with religious services through its customary channels of communication on matters of faith, concerning electoral politics viewed through the lens of religious faith." ROA.418. As the consent judgment recognizes, the Johnson Amendment does not reach this type of speech.

Any IRS enforcement action under the Johnson Amendment against such speech would run headlong into the church autonomy doctrine, which prevents civil courts from adjudicating ecclesiastical matters. As construed by this Court, the church autonomy doctrine broadly covers a church's internal communications regarding matters of faith and sermons delivered during religious services. Accordingly, the Government could not prevail in enforcing the Johnson Amendment against the worship-service speech described in the consent judgment.

Moreover, equity jurisdiction exists with respect to the church plaintiffs' claim regarding such speech because, under this Court's precedent, abridgment of the church autonomy doctrine causes irreparable harm and is subject to immediate interlocutory appeal.

Because the church plaintiffs' claim addressed in the proposed consent judgment satisfies the *Williams Packing* exception to the AIA,

the District Court had jurisdiction to consider and enter the consent judgment resolving that claims. And because the consent judgment provides an injunction against the Government, and not a declaratory judgment, it is not barred by the tax exception of the DJA.

2. Because appellants have asked this Court to "reverse the judgment of dismissal and remand with instructions for the district court to consider the parties' joint motion for the consent judgment" (Br. 52), this Court need not address their broader arguments, *i.e.,* that the AIA is not jurisdictional and that none of Plaintiffs' claims are barred by the AIA or DJA.

If this Court reaches those broader claims, however, it should affirm the District Court. First, the District Court was correct in holding that Plaintiffs' remaining claims are barred by the AIA. Contrary to Plaintiffs' contention, those claims do not fall outside of the AIA under the framework of *CIC Services,* because, unlike *CIC Services,* this case does not involve an independent legal obligation (such as tax reporting) that is separately enforced by a tax penalty. Rather, this case involves a condition for maintaining tax-exempt status. As courts, including the Supreme Court, have repeatedly held, tax-exempt

organizations seeking to challenge those conditions have legal remedies for doing so, *i.e.,* a tax refund suit or a suit seeking a determination of tax-exempt status under I.R.C. § 7428.

Moreover, Plaintiffs' remaining claims do not satisfy the *Williams Packi*ng exception because they do not present a question upon which the Government could not possibly prevail, and they do not implicate the church autonomy doctrine.

The District Court also correctly treated the AIA as a jurisdictional bar. In the proceedings below, Plaintiffs likewise treated the AIA as jurisdictional, and their new argument that it is merely a claim-processing rule was not raised below. That argument is therefore waived. In any event, this Court repeatedly has held that the AIA is jurisdictional, and it reaffirmed that ruling in a published opinion issued during the briefing of this appeal.

## ARGUMENT

## I.

### The District Court had jurisdiction to consider and enter the proposed consent judgment

### Standard of review

This Court reviews questions of subject-matter jurisdiction de novo. *Rivero v. Fid. Invs., Inc.*, 1 F.4th 340, 343 (5th Cir. 2021). This Court also reviews de novo matters of statutory interpretation. *Ortega v. Off. of the Comptroller of the Currency*, 155 F.4th 394, 402 (5th Cir. 2025).

### A. Overview of the Anti-Injunction Act and the Declaratory Judgment Act

Enacted in the wake of the Civil War, the Anti-Injunction Act (AIA) is one of the oldest statutes in the Internal Revenue Code. Its language has remained largely unchanged since its enactment almost 160 years ago. The AIA is codified at I.R.C. § 7421(a) and states:

> **(a) Tax.** -- Except as provided in sections 6015(e), 6212(a) and (c), 6213(a), 6232(c), 6330(e)(1), 6331(i), 6672(c), 6694(c), 7426(a) and (b)(1), 7429(b), and 7436, no suit for the purpose of restraining the assessment or collection of any tax shall be maintained in any court by any

> person, whether or not such person is the person against whom such tax was assessed.[2]

A central pillar of efficient federal tax administration, the AIA safeguards "the Government's need to assess and collect taxes as expeditiously as possible with a minimum of pre-enforcement judicial interference, 'and to require that the legal right to the disputed sums be determined in a suit for refund.'" *Bob Jones Univ. v. Simon*, 416 U.S. 725, 736 (1974) (quoting *Williams Packing*, 370 U.S. at 7); *see* I.R.C. § 7422; *United States v. A. S. Kreider Co.*, 313 U.S. 443, 447 (1941); *see also United States v. Clintwood Elkhorn Min. Co.*, 553 U.S. 1, 10 (2008) ("This is so even though the Anti–Injunction Act's prohibitions impose upon the wronged taxpayer requirements at least as onerous as those mandated by the refund scheme—the taxpayer must succumb to an unconstitutional tax, and seek recourse only after it has been unlawfully exacted.").

The Declaratory Judgment Act (DJA) further states that "[i]n a case of actual controversy within its jurisdiction, *except with respect to*

---

[2] As originally enacted in 1867, the Anti-Injunction Act read, "And no suit for the purpose of restraining the assessment or collection of tax shall be maintained in any court." Pub. L. No. 39-169, 14 Stat. 471, 475 (1867).

*Federal taxes* ... any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration." 28 U.S.C. § 2201(a) (emphasis added). The Supreme Court has held that "the federal tax exception to the Declaratory Judgment Act is at least as broad as the prohibition of the Anti-Injunction Act." *Alexander v. Americans United, Inc.,* 416 U.S. 752, 759 n.10 (1974).

This Court recently reiterated, "[b]oth provisions [*i.e.,* the AIA and DJA] deny the subject matter jurisdiction of federal courts" over cases within their reach. *Norcave Properties LLC v. IRS*, _ F.4th _, 2026 WL 2452258, *2 (5th Cir. 2026); *see Westmoreland Coal,* 968 F.3d at 533 ("When the AIA applies, it divests courts of subject-matter jurisdiction.") (citing *Hotze v. Burwell,* 784 F.3d 984, 996 (5th Cir. 2015)); *cf. Rivero,* 1 F.4th at 345 ("The AIA's jurisdictional condition only buttresses our conclusion that the DJA's federal-tax exception is likewise a jurisdictional condition that divests subject-matter jurisdiction if it applies.").

In the specific context of tax-exempt organizations seeking to challenge the conditions of their tax-exempt status, the Supreme Court

has held that the AIA and DJA apply, even when the tax-exempt organizations may have to wait for the IRS to assess tax before being able to bring a tax refund suit to present their challenge. *See Bob Jones*, 416 U.S. 725 (AIA barred university's lawsuit seeking to enjoin the IRS from revoking its tax-exempt status due to university's racially discriminatory admission policy); *Americans United, Inc.*, 416 U.S. 752 (AIA barred non-profit's lawsuit seeking to enjoin the IRS from revoking its tax-exempt status due to lobbying activities that violated § 501(c)(3)).

In the wake of those decisions, Congress enacted I.R.C. § 7428, which now allows a tax-exempt organization to bring a declaratory judgment suit seeking to obtain or retain its tax-exempt status, if certain statutory conditions are met. However, *Bob Jones* and *Americans United* remain applicable—even where § 7428 has not come into play—to bar pre-enforcement suits by tax-exempt organizations to restrain the assessment or collection of tax. *See CIC Servs.*, 593 U.S. at 224-25 (Court's opinion) & 227-29 (Kavanaugh, J., concurring).

Moreover, the AIA and DJA apply even if the plaintiff's challenge is a constitutional one. *See, e.g., Bob Jones*, 416 U.S. at 736 &

*Americans United*, 416 U.S. at 756 (asserting First Amendment in support of the organizations' activities and policies); *Norcave Props.,* 2026 WL 2452258, at *1 (asserting Seventh Amendment right to a jury trial). As the Supreme Court reaffirmed in *CIC Services*, 593 U.S. at 225, the AIA "draws no distinction between regulatory and revenue-raising tax rules. It applies whenever a suit calls for enjoining the IRS's assessment and collection of taxes—of whatever kind."

The Supreme Court has recognized two exceptions to the AIA. The first exception stems from *Williams Packing*, 370 U.S. 1, which involved a corporate taxpayer that provided trawlers to Mississippi and Louisiana gulf coast shrimpers and fishermen. The corporation sought an injunction against the IRS's collection of employment taxes, arguing that the fishermen were not the corporation's employees. *See Williams Packing*, 370 U.S. at 2-4. The corporation argued that it would face financial ruin if forced to bring a tax refund suit. *Id.* at 5.

The Court rejected the corporation's equitable arguments, but it did define a narrow type of claim that would not fall within the AIA's bar. The Court reasoned, "if it is clear that under no circumstances could the Government ultimately prevail, the central purpose of the Act

is inapplicable." *Id.* at 7. In that situation, "the attempted collection may be enjoined if equity jurisdiction otherwise exists." *Id.* The *Williams Packing* exception thus contains these two elements. *See South Carolina*, 465 U.S. at 374 (framing the *Williams Packing* exception as considering whether the taxpayer "(1) was certain to succeed on the merits, and (2) could demonstrate that collection would cause him irreparable harm"). This test is based on the Court's understanding that "[t]o require more than good faith on the part of the Government would unduly interfere with a collateral objective of the Act—protection of the collector from litigation pending a suit for refund." *Williams Packing*, 370 U.S. at 7-8.

The second exception stems from *South Carolina v. Regan*, 465 U.S. 367, in which the State of South Carolina sought to challenge a Code provision that narrowed the type of state bonds eligible for tax-exemption. South Carolina argued that the AIA should not bar its suit, because it had no other way to challenge the statute; it would have to rely on a bondholder to bring a tax refund suit. *Id.* at 380.

The Court held that South Carolina's predicament existed outside the ecosystem of "*Williams Packing* and its progeny," because in the

*Williams Packing* line of cases, "the plaintiff had the option of paying the tax and bringing a suit for refund." *Id.* at 374. That option was not available to South Carolina because it would "incur no tax liability" and "the State will be unable to utilize any statutory procedure to contest the constitutionality of [the tax provision at issue]." *Id.* at 379-80. The Court reasoned that the *Williams Packing* cases "make clear that the Court in *Williams Packing* and its progeny did not intend to decide whether the Act would apply to an aggrieved party who could not bring a suit for a refund." *Id.* at 374-75.

**B. The AIA does not bar consideration of the parties' proposed consent judgment**

The District Court correctly dismissed most of Plaintiffs' claims under the AIA, as discussed *infra*, Part II. However, the court failed to separately consider that the amended complaint contains one claim by the church plaintiffs that falls within the *Williams Packing* exception. This claim, which would be resolved by the proposed consent judgment, falls outside the AIA, which means that the District Court had jurisdiction to consider and enter the consent judgment with respect to that claim.

It is well established that "a consent decree must spring from and serve to resolve a dispute within the court's subject-matter jurisdiction." *Loc. No. 93, Int'l Ass'n of Firefighters, AFL-CIO C.L.C. v. City of Cleveland*, 478 U.S. 501, 525 (1986). "Furthermore, . . . the consent decree must 'com[e] within the general scope of the case made by the pleadings,' and must further the objectives of the law upon which the complaint was based." *Id.* (citations omitted) (quoting *Pac. R.R. v. Ketchum*, 101 U.S. 289, 297 (1879)). Because "the parties' consent animates the legal force of a consent decree," a court "is not necessarily barred from entering a consent decree merely because the decree provides broader relief than the court could have awarded after a trial." *Id.* (citations omitted); *see Smith v. Sch. Bd. of Concordia Par.*, 906 F.3d 327, 334-35 (5th Cir. 2018).

### 1. The church plaintiffs' claim addressed in the consent judgment satisfies the *Williams Packing* test

The *Williams Packing* test pushes the claim addressed in the proposed consent judgment outside the jurisdiction-limiting gates of the AIA. That test is satisfied "if it is clear that under no circumstances

could the Government ultimately prevail," and "equity jurisdiction otherwise exists." *Williams Packing,* 370 U.S. at 7.

a. In the District Court, the Government agreed that the Johnson Amendment does not reach the speech covered by the proposed consent judgment because "[w]hen a house of worship in good faith speaks to its congregation, through its customary channels of communication on matters of faith in connection with religious services, concerning electoral politics viewed through the lens of religious faith, it neither 'participate[s]' nor 'intervene[s]' in a 'political campaign,' within the ordinary meaning of those words." ROA.415-ROA.416. *See* I.R.C. § 501(c)(3). Because the plain terms of the Johnson Amendment do not reach such speech, the church plaintiffs would certainly prevail on the merits in litigation based on enforcement of the Johnson Amendment against this narrowly defined category of speech. ROA.416-ROA.417.

Moreover, IRS enforcement of the Johnson Amendment against such speech would be constrained by the "church autonomy doctrine," as interpreted in this circuit. *See generally* ROA.243-ROA.300. In general, the church autonomy doctrine provides that "[c]ivil courts cannot adjudicate ecclesiastical matters." *McRaney v. N. Am. Mission*

*Bd. of the S. Baptist Convention, Inc.*, 157 F.4th 627, 633 (5th Cir. 2025), *cert. denied*, 146 S. Ct. 1674 (2026). The doctrine stems from a robust history that pre-dates America's founding. *See id.* at 633-35.

In *McRaney,* this Court held that the "church autonomy doctrine prohibits far more than civil judges telling religious institutions what to believe or how to worship." *Id.* at 636. As relevant here, it "forbids" courts from deciding "religious questions," which includes a prohibition on civil courts' authority "to approve, disapprove, classify, regulate, or in any manner control sermons delivered at religious meetings." *Id.* at 638-39 (quoting *Fowler v. Rhode Island*, 345 U.S. 67, 70 (1953)).

Also, "the church autonomy doctrine protects a church's internal communications relating to church governance or matters of faith or doctrine." *Id.* at 640; *see, e.g.*, *Whole Woman's Health v. Smith*, 896 F.3d 362, 364, 373 (5th Cir. 2018) (quashing a third-party subpoena against the Texas Conference of Catholic Bishops, which sought discovery on communications with state officials regarding Texas's fetal remains law, because such discovery would undercut the organization's "ability to conduct frank internal dialogue" and essentially "force [it] to turn over *to a public policy opponent* its internal communications").

As interpreted by this Court, the church autonomy doctrine offers "total" protection that operates as "a constitutional immunity from suit" regarding matters it encompasses. *McRaney*, 157 F.4th at 641. It also "can be raised at any stage of litigation." *Id.* The doctrine is jurisdictional, but not "in the narrow Rule 12(b)(1) sense," which would "mean[ ] the court lacks jurisdiction over the case as a whole." *Id.* at 645. Rather, the doctrine "produces a judgment on the merits with prejudice" and "is therefore more protective than a jurisdictional bar." *Id.* at 641.[3]

---

[3] To be sure, the church autonomy doctrine "does not grant 'religious institutions . . . a general immunity from secular laws.'" *McRaney*, 157 F.4th at 635-36 (quoting *Our Lady of Guadalupe Sch. v. Morrissey-Berru*, 591 U.S. 732, 746 (2020)) (alteration in original); *see also United States v. Holmes*, 614 F.2d 985, 989 (5th Cir. 1980) ("Requiring plaintiff to comply with a properly narrowed summons in order to show its entitlement to tax exempt status results in only an incidental burden upon his free exercise of religion."). For example, the Supreme Court has held that the doctrine does not foreclose the application of "neutral principles of law" to church property disputes, *see Jones v. Wolf*, 443 U.S. 595, 600-01 (1979); *see also Lutheran Church—Missouri Synod v. Christian*, 178 F.4th 193, 201 (5th Cir. 2026) ("Church autonomy is not violated when a court can apply neutral principles to disputes involving church property."). And importantly, the church autonomy doctrine applies to civil, not criminal, cases. *See Watson v. Jones*, 80 U.S. 679, 732 (1872); *McRaney*, 157 F.4th at 633.

Here, the amended complaint details the church plaintiffs' desire to have their pastors deliver sermons during religious services that discuss political issues and candidates through the lens of their religious beliefs. *See* ROA.252-ROA.254 (¶¶38-39). This speech would be protected by the church autonomy doctrine as construed by this Court. In *McRaney*, this Court recounted the facts of three cases in which the church autonomy doctrine barred defamation suits brought by individuals who were criticized in religious sermons. *See* 157 F.4th at 639. This Court explained that adjudicating those cases would have required the courts to separate out defamatory statements from statements of religious belief or interpretation of religious texts. *Id.* And "that was precisely the problem: Civil courts cannot apply civil rules to religious organizations when doing so necessarily implicates questions of faith, scripture, and religious doctrine." *Id.*; *see also Our Lady of Guadalupe Sch. v. Morrissey-Berru*, 591 U.S. 732, 746 (2020) ("Among other things, the Religion Clauses protect the right of churches and other religious institutions to decide matters 'of faith and doctrine' without government intrusion." (quoting *Hosanna-Tabor Evangelical Lutheran Church & Sch. v. E.E.O.C.*, 565 U.S. 171, 186 (2012))).

Based on this precedent, the Government could not prevail in a tax-enforcement action premised on the type of speech described in the consent judgment: "speech by a house of worship to its congregation in connection with religious services through its customary channels of communication on matters of faith, concerning electoral politics viewed through the lens of religious faith." ROA.418. Deciding whether such speech violates the Johnson Amendment, such that a church should lose its tax-exempt status, would require picking apart the religious and political elements of a sermon, which contravenes the church autonomy doctrine.

b. The second prong of the *Williams Packing* test is also met, *i.e.,* equity jurisdiction exists. In *McRaney*, this Court held that "[a]bridgment of the church autonomy immunity imposes irreparable injury on the religious organization," and "denial [of the protection] is subject to an immediate interlocutory appeal."[4] 157 F.4th at 641. For

---

[4] This Court's view of the church autonomy doctrine as providing "immunit[y] from suit that must be resolved at the earliest conceivable point in litigation" appears to differ from that of many of its sister circuits. *McRaney*, 157 F.4th at 644; *see O'Connell v. United States Conf. of Cath. Bishops*, 134 F.4th 1243, 1257–58 (D.C. Cir. 2025), *cert. denied*, 224 L. Ed. 2d 857 (May 26, 2026) ("The church autonomy

(continued…)

such injury there is "no adequate remedy at law." ROA.1139 (District Court's opinion quoting *Daniels Health Scis., LLC v. Vascular Health Scis., LLC*, 710 F.3d 579, 585 (5th Cir. 2013)). The potential injury here, *i.e.,* facing a tax-enforcement action based on the content of a sermon during a religious service, "cannot be made whole by a take-nothing judgment months or years later." *McRaney*, 157 F.4th at 645. As this Court explained, the "intrusion" itself is an "immediate" and "irreparable" injury. *Id.* at 644.

The *Williams Packing* exception therefore applies to the church plaintiffs' claim regarding the worship-service speech described in the proposed consent judgment.

### 2. The District Court's treatment of the *Williams Packing* test reached the wrong result

The District Court rejected the parties' arguments that the *Williams Packing* test permitted consideration and entry of the consent

---

doctrine, however, does not confer immunity from trial such that immediate review is warranted."); *Garrick v. Moody Bible Inst.*, 95 F.4th 1104, 1116 (7th Cir. 2024); *Tucker v. Faith Bible Chapel Int'l*, 36 F.4th 1021, 1040 (10th Cir. 2022); *Klein v. Oved*, No. 23-14105, 2024 WL 1092324, at *1 (11th Cir. Mar. 13, 2024); *see also Belya v. Kapral*, 59 F.4th 570, 578 (2d Cir. 2023) (Park, J., dissenting from denial of rehearing en banc) ("Denial of a church autonomy defense should be an appealable collateral order . . . .").

judgment. ROA.1139-ROA.1140. It acknowledged that the first prong of the test "requires a 'certainty' that the government would collect a tax doomed to be refunded," and concluded: "Given the open-textured nature of the legal provisions at issue here and the wide array of potential facts discussed in the complaint, the court is not prepared to find plaintiffs' contentions so undebatable as to foreclose any possibility of government success." ROA.1140. With respect to the second, irreparable-harm prong, the court reasoned that the avenues of a tax refund suit and declaratory relief under I.R.C. § 7428(a) render that prong unsatisfied. ROA.1140.

In fairness to the District Court, the Government only had argued that it could not prevail on the claim redressed by the proposed consent judgment because it agreed with Plaintiffs that the Johnson Amendment, properly interpreted, does not encompass the speech described in the consent judgment. ROA.1056. And though Plaintiffs raised the church autonomy doctrine at intervals, *see, e.g.*, ROA.1033-ROA.1034 & ROA.1152, it did not resonate as a primary argument raised by the parties. But as indicated above, the doctrine "can be raised at any stage of the litigation," *McRaney*, 157 F.4th at 641, and

this Court can apply it here for purposes of applying the *Williams Packing* test, even though it was not pressed before the District Court.

### C. The tax exception to the Declaratory Judgment Act likewise does not bar entry of the proposed consent judgment

For substantially the same reasons that the AIA does not prohibit entry of the proposed consent judgment, the DJA poses no impediment. The Declaratory Judgment Act, located at 28 U.S.C. § 2201, states:

> In a case of actual controversy within its jurisdiction, *except with respect to Federal taxes* other than actions brought under [I.R.C.] section 7428[,] . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

28 U.S.C. § 2201(a) (emphasis added). This Court recognizes that the tax exception to the Declaratory Judgment Act "prohibits courts from providing declaratory relief with respect to federal taxes; that prohibition is jurisdictional." *Rivero*, 1 F.4th at 346.

Regarding the DJA's scope, this Court has reiterated the Supreme Court's observation that "the federal tax exception to the [DJA] is at

least as broad as the Anti-Injunction Act." *Id.* at 345 (quoting *McCabe v. Alexander*, 526 F.2d 963, 965 (5th Cir. 1976) (alteration in original); *Bob Jones*, 416 U.S. at 732 n.7). Notably, the language of the DJA is broader than the AIA's prohibition of suits "for the purpose of restraining the assessment or collection" of taxes. I.R.C. § 7421(a). Some courts have nevertheless considered the AIA and the DJA to be coterminous. *See Cohen v. United States*, 650 F.3d 717, 730-31 (D.C. Cir. 2011) (en banc). This Court, however, continues to respect the differences between the two statutes and accept the notion that the DJA is "more sweeping" than the AIA. *Norcave Props.*, 2026 WL 2452258, at *7 & n.18 (citing *Rivero*, 1 F.4th at 345). Here, the Court does not need to consider the scope of the DJA relative to the AIA, because the proposed consent judgment contains an injunction, not declaratory relief. ROA.417-ROA.418.

**II.**

**The District Court correctly dismissed the remainder of Plaintiffs' claims**

As mentioned above, appellants ask this Court to reverse and remand for the District Court to consider the parties' proposed consent judgment. (Br. 52.) Because the analysis set forth above provides a

sufficient basis to do so, this Court need not reach Plaintiffs' broader arguments that are not directly redressed by the terms of the proposed consent judgment.

These broader arguments include, but are not limited to, the arguments and claims by the non-church Plaintiffs and the claims by all Plaintiffs invoking the First Amendment freedom of speech (*see* ROA.288), Fifth Amendment due process (*see* ROA.290), Fifth Amendment equal protection (*see* ROA. 296), and the Religious Freedom Restoration Act (*see* ROA.293), with respect to speech and conduct beyond that described in the proposed consent judgment (*e.g.,* publishing voter guides, hosting candidates at conventions, etc.). These arguments likewise include Plaintiffs' broader request for "[i]njunctive relief against the Defendants prohibiting them from enforcing the Johnson Amendment" outside the scope of the proposed consent judgment. ROA.298. But if this Court does reach Plaintiffs' broader claims and arguments, then it should affirm the District Court.[5]

---

[5] The District Court did not decide whether Plaintiffs had standing because it dismissed for lack of subject-matter jurisdiction. ROA.1141. The Government does not dispute that Plaintiffs have standing.

### A. The District Court correctly dismissed Plaintiffs' claims that are not encompassed by the proposed consent judgment

Plaintiffs' amended complaint asks for a declaratory judgment on the claims referenced above and an injunction "to prohibit the continued application of the Johnson Amendment insofar as it operates to prohibit political speech," among other things. ROA.298 (¶165).

In determining whether a suit's "purpose" is to restrain the assessment or collection of tax, courts "inquire not into a taxpayer's subjective motive, but into the action's objective aim—essentially, the relief the suit requests." *CIC Servs.*, 593 U.S. at 217; *accord Norcave Props.*, 2026 WL 2452258, at *1-2. That inquiry entails looking at "the claims brought and injuries alleged," and "most especially," "the relief requested—the thing sought to be enjoined." *CIC Servs.*, 593 U.S. at 218 (internal quotations omitted). Here, Plaintiffs seek to strike down and enjoin a portion of a federal tax statute, § 501(c)(3). The District Court correctly held that these claims are barred by the AIA and DJA.

Plaintiffs attempt (Br. 32-42) to equate their claims to the reporting requirement challenge that the Supreme Court permitted to proceed in *CIC Services*. *See* 593 U.S. at 220-22. But, as the District

Court correctly reasoned, Plaintiffs' claims differ from the plaintiffs in *CIC Services* because those plaintiffs "challenged an information-reporting regime that imposed costs 'separate and apart from' any potential tax liability that might accrue based on the information." ROA.1138 (quoting *CIC Servs.*, 593 U.S. at 220-22). Moreover, the reporting requirement was "enforced by a freestanding criminal penalty for failure to report." ROA.1138 (quoting *CIC Servs.*, 593 U.S. at 220-22).

Here, on the contrary, the Johnson Amendment is not an independent legal obligation. Rather, it is a condition on a tax subsidy that is closer to *Bob Jones* and its progeny than *CIC Services*. *See CIC Servs.*, 593 U.S. at 225 (citing *Bob Jones* and *Americans United* as demonstrating that "[t]he Anti-Injunction Act, we said then and say again now, draws no distinction between regulatory and revenue-raising tax rules"); *see also Regan v. Taxation with Representation*, 461 U.S. 540, 546 (1983) (describing tax-exemption under § 501(c)(3) as a government subsidy and rejecting First Amendment challenge to the statute's prohibition on substantial lobbying because "Congress is not

required by the First Amendment to subsidize lobbying" (citing *Cammarano v. United States*, 358 U.S. 498, 513 (1959))).

Plaintiffs emphasize that they are not seeking to restrain any downstream tax but rather they are challenging the restriction on their speech. (Br. 41.) But the Supreme Court specifically rejected this type of distinction in *CIC Services*. It recognized that some taxes raise revenue while others are regulatory, "that is, a tax designed mainly to influence private conduct, rather than to raise revenue." 593 U.S. at 224. The Court stated that it had "long since 'abandoned the view that brightline distinctions exist between regulatory and revenue-raising taxes,'" "[a]nd for just as long, we have rejected the view that regulatory tax cases have a special pass from the Anti-Injunction Act." *Id.* (quoting *Bob Jones*, 416 U.S. at 743 n.17.) The Court stated emphatically that "whatever the taxpayer's subjective reason … [i]f the dispute is about a tax rule—as it is in the run-of-the-mine suits the Government raises—the sole recourse is to pay the tax and seek a refund." *Id.*

Nor is the Johnson Amendment "enforced by a freestanding criminal penalty" adjacent to the resulting tax. ROA.1138; *see CIC Servs.,* 593 U.S. at 225. Plaintiffs contend (Br. 40-41) that I.R.C. § 7409

"plays the same role" as the criminal penalties in *CIC Services*, but that is not the case. Section 7409 authorizes the government to bring an injunction action against a tax-exempt organization when the Commissioner determines that the organization "has flagrantly participated in, or intervened in (including the publication or distribution of statements), any political campaign on behalf of (or in opposition to) any candidate for public office." I.R.C. § 7409(a)(2)(B)(i). This statute remedies a discrete issue apart from revocation of exemption "to ensure that the assets of such organization are preserved for charitable or other purposes specified in section 501(c)(3)." I.R.C. § 7409(a)(1); *see generally* H.R. Rep. 100-391(II), 1628-29, *reprinted in* 1987 U.S.C.C.A.N. 2313-378, 2313–1209 (describing concerns that an organization that ceases to qualify for tax-exempt status may continue to misuse contributions of donors).

Moreover, the relief provided for in § 7409 is neither a tax nor a penalty; if granted by the court, it would enjoin § 501(c)(3) organizations from making future (i.e., post-injunction) political expenditures from their tax-subsidized charitable assets. I.R.C. § 7409(b) (flush paragraph). Such an extraordinary civil remedy is a far cry from the

criminal penalties at issue in *CIC Services*, in which "any '[w]illful failure' to comply with the Notice's reporting rules [could] lead to as much as a year in prison." *CIC Servs.*, 593 U.S. at 221.

Plaintiffs also assert (Br. 42-46) that they have no alternative remedy, but these arguments were directly and correctly addressed by the District Court. ROA.1140-ROA.1141. Plaintiffs' wider claims (not otherwise insulated by the church autonomy doctrine, *see supra* Part I) have the alternative remedy of a refund suit. That was the case for the tax-exempt organizations in *Bob Jones* and *Americans United*, and that remains the case today. *See CIC Servs.*, 593 U.S. at 224-25. Likewise, for pre-tax declaratory relief, § 7428 provides an alternative remedy. That these remedies require an adverse action by the IRS does not disqualify them as alternative legal remedies. As the District Court correctly reasoned, "even as the law stood in *Bob Jones University*, it was 'not a case in which an aggrieved party has no access at all to judicial review[,]' [which access] was then expanded by Congress's addition of § 7428(a)'s procedure for pre-tax declaratory relief." ROA.1141 (quoting *Bob Jones*, 416 U.S. at 746).

Plaintiffs' further argument that this case is like *Z Street v. Koskinen,* 791 F.3d 24 (D.C. Cir. 2015), also misses the mark. (Br. 45-46.) In *Z Street*, the plaintiff had applied for tax-exemption and alleged that the IRS was subjecting its application to heightened scrutiny and delay based on the organization's viewpoint. The court reasoned that this claim fell within the *South Carolina v. Regan* exception because there was no other avenue to adjudicate the organization's claim of unconstitutional delay. *Id.* at 31. Here, Plaintiffs do not allege that the IRS has taken any action against them, so there is no IRS action or inaction to review that is similar to *Z Street*.

**B. The District Court correctly held that the Anti-Injunction Act is jurisdictional**

Plaintiffs also argue that the AIA is not jurisdictional and that it is instead a waivable claim-processing rule. (Br. 17-31.) They did not raise this argument below, despite having the opportunity to do so. The District Court allowed the parties to file supplemental briefs following the motion hearing, and Plaintiffs filed one, but they never argued that the AIA was not jurisdictional. ROA.1106-ROA.1109. It is well established that appellants may not raise new arguments on appeal, and this issue is therefore waived. *See Lewis v. Walley*, 168 F.4th 327,

331 (5th Cir. 2026) ("A party forfeits an argument by failing to raise it in the first instance in the district court—thus raising it for the first time on appeal.") (quoting *Rollins v. Home Depot USA*, 8 F.4th 393, 397 (5th Cir. 2021)).

In all events, the District Court properly held that the AIA is a jurisdictional bar. ROA.1134-ROA.1135. And its jurisdictional nature is watertight in this Court. *See generally Norcave Props.*, 2026 WL 2452258.

### 1. The text, purpose, and context of the AIA establish that it is jurisdictional

The label "jurisdictional" refers to "a court's adjudicatory authority." *Kontrick v. Ryan*, 540 U.S. 443, 455 (2004). In making such a determination, courts "look to see if there is any 'clear' indication that Congress wanted the rule to be 'jurisdictional.'" *Henderson ex rel. Henderson v. Shinseki*, 562 U.S. 428, 436 (2011) (quoting *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 515-16 (2006)).

Granted, magic words are not required. *See Riley v. Bondi*, 606 U.S. 259, 274 (2025) (quoting *Henderson*, 562 U.S. at 436). Rather, "the 'traditional tools of statutory construction must plainly show that Congress imbued a procedural bar with jurisdictional consequences.'"

*Boechler, P.C. v. Commissioner*, 596 U.S. 199, 203 (2022) (quoting *United States v. Kwai Fun Wong*, 575 U.S. 402, 410 (2015)).

In addition, "context, including th[e] Court's interpretation of similar provisions in many years past, is relevant to whether a statute ranks a requirement as jurisdictional." *Reed Elsevier, Inc. v. Muchnick*, 559 U.S. 154, 168 (2010). "When a long line of [Supreme Court] decisions left undisturbed by Congress has treated a similar requirement as 'jurisdictional,'" it is "presume[d] that Congress intended to follow that course." *Henderson*, 562 U.S. at 436 (quoting *Union Pac. R. Co. v. Bhd. of Locomotive Eng'rs & Trainmen Gen. Comm. of Adjustment, Cent. Region*, 558 U.S. 67, 82 (2009)) (citing *John R. Sand & Gravel Co. v. United States*, 552 U.S. 130, 133-34 (2008)). Here, the AIA's text, purpose, and context all support the conclusion that it is a jurisdictional bar.

1. The text states, "Except as provided in [I.R.C. sections providing for causes of action not relevant here], no suit for the purpose of restraining the assessment or collection of any tax shall be maintained in any court by any person, whether or not such person is the person against whom such tax was assessed." I.R.C. § 7421(a). The

AIA's plain text uses jurisdictional language, using such sweeping, mandatory words as "no suit," "shall be maintained," "any court," and "any tax." *See Gonzalez v. Thaler*, 565 U.S. 134, 141-42 (2012); *see also infra*, pp. 56-57 (discussing *Gonzalez*). Such language speaks both to the litigant and to the court regarding its authority to hear such a suit. *See, e.g.*, *Henderson*, 562 U.S. at 435 ("We have urged that a rule should not be referred to as jurisdictional unless it governs a court's adjudicatory capacity . . . .").

The AIA lacks any reference to procedures or deadlines that might suggest a rule "seek[ing] to promote the orderly progress of litigation by requiring that the parties take certain procedural steps at certain specified times." *Henderson*, 562 U.S. at 435. Rather, by setting forth a category of suit that may not be "maintained in any court," I.R.C. § 7421(a), the AIA is a "prescription[] delineating the classes of cases (subject-matter jurisdiction) . . . falling within a court's adjudicatory authority." *Kontrick*, 540 U.S. at 455. As such, it bears the hallmarks of a jurisdictional rule.

Indeed, the itemized statutory exceptions set forth in § 7421(a) are largely jurisdictional in nature, further supporting the text's

jurisdictional character. *See, e.g.*, I.R.C. § 6015(e) (providing that an individual requesting relief from joint-and-several liability on a joint return may petition the Tax Court which "shall have jurisdiction," and referring to the court's authority to enjoin collection action "[n]otwithstanding the provisions of section 7421(a)"); § 6213(a) (provides both the taxpayer's cause of action and the Tax Court's deficiency jurisdiction, as well as authority to enjoin assessments during the proceeding "[n]otwithstanding the provisions of section 7421(a)"); § 6232(c) (speaks to the court's jurisdiction and injunction authority "[n]otwithstanding section 7421(a)"); § 6330(e)(1) (same); § 6694(c)(1) (same); § 7426(a), (b)(1) (authorizing actions for wrongful levy and providing "[t]he district court shall have jurisdiction to grant only" certain relief); § 7429(b)(2)(A) ("the district courts of the United States shall have exclusive jurisdiction over any civil action for a determination under this subsection").

Moreover, § 7421(a) contains the section heading, "Prohibition of suits to restrain assessment or collection," which further supports a reading that Congress intended an absolute bar against suits to restrain the assessment or collection of any tax. *See Rudisill v.*

*McDonough*, 601 U.S. 294, 309 (2024) ("Section headings supply cues as to what Congress intended . . . .") (cleaned up) (quoting *Merit Mgmt. Grp., LP v. FTI Consulting, Inc.*, 583 U.S. 366, 380 (2018)).

2. The mandatory, sweeping language of the AIA promotes its purpose to enable the United States "to assess and collect taxes alleged to be due without judicial intervention, and to require that the legal right to the disputed sums be determined in a suit for refund." *Williams Packing*, 370 U.S. at 7. The AIA, therefore, secures the system of federal tax administration. In enacting the AIA, Congress "sense[d] . . . the evils to be feared if courts of justice could, *in any case*, interfere with the process of collecting the taxes on which the government depends for its continued existence." *State R.R. Tax Cases*, 92 U.S. 575, 613 (1875) (emphasis in original); *see also Cheatham v. United States*, 92 U.S. 85, 89 (1875). The AIA's bar on the "maint[enance]" of such a suit, therefore, protects the machinery of tax administration and keeps it running smoothly through the channels Congress intended, including those of a refund suit after payment or petitioning the Tax Court upon receipt of a notice of deficiency. *See generally* I.R.C. §§ 7422, 6213(a). Otherwise, "to permit even the

maintenance of a suit in which an injunction could issue only after the taxpayer's nonliability had been conclusively established might 'in every practical sense operate to suspend collection of the . . . taxes until the litigation is ended.'" *Williams Packing*, 370 U.S. at 8 (quoting *Great Lakes Dredge & Dock Co. v. Huffman*, 319 U.S. 293, 299 (1943)) (alteration in original).

3. The jurisdictional nature of the AIA has resounded in the Supreme Court's decisions since at least 1962.[6] *See Williams Packing*, 370 U.S. at 5 ("The object of § 7421(a) is to withdraw jurisdiction from the state and federal courts to entertain suits seeking injunctions prohibiting the collection of federal taxes."). This view has endured

---

[6] Its jurisdictional origins start even earlier. Indeed, "[d]uring the first half century of the Act's existence, the Court gave it literal force, without regard to the character of the tax, the nature of the pre-enforcement challenge to it, or the status of the plaintiff." *Bob Jones*, 416 U.S. at 742 (citing cases). Some drift from this approach occurred in the early twentieth century, most notably culminating in *Miller v. Standard Nut Margarine Co.*, 284 U.S. 498 (1932), which "effectively repealed the Act" because it reduced the AIA to mere equity doctrine. *Bob Jones*, 416 U.S. at 744. *Williams Packing*'s unanimous opinion rejecting *Standard Nut* and confirming the AIA as a jurisdictional bar "was meant to be the capstone to judicial construction of the Act." *Id.* at 742.

despite the Court's more recent tightening of the definition of "jurisdictional."

The most notable example is in *National Federation of Independent Business v. Sebelius*, in which the Court faced the AIA as a potential hurdle to its examination of the constitutionality of the Affordable Care Act's individual mandate. 567 U.S. 519, 543 (2012). The Court was asked by the challengers to reject the jurisdictional characterization, but it did not do so. *See* Brief for Private Respondents on the Anti-Injunction Act, *Department of Health and Human Services v. Fla.*, No. 11-398, 2012 WL 379585 (U.S. Feb. 6, 2012); Brief for State Respondents on the Anti-Injunction Act, *United States Department of Health and Human Services v. State of Fla.*, No. 11-398, 2012 WL 392549 (U.S. Feb. 6, 2012). Rather, in its opinion upholding the individual mandate, the Court explained, "Before turning to the merits, *we need to be sure we have the authority to do so*." 567 U.S. at 543 (emphasis added). The Court then analyzed why the AIA did not apply to the individual mandate's exaction, which Congress labeled a "penalty" rather than a "tax." *Id.*; *see also CIC Servs.,* 593 U.S. at 216 ("If CIC's suit is not for th[e] purpose [of restraining the assessment or

collection of any tax], it can go forward. *If the suit is for that purpose, it must be dismissed*.") (emphasis added).

Consistent with the Supreme Court, this Court likewise has maintained that the AIA operates as a jurisdictional bar. As recently as August 2026, this Court in *Norcave Properties* affirmed the District Court's decision "[i]dentifying a lack of subject matter jurisdiction in light of the AIA's and DJA's jurisdiction stripping." *Norcave Props.*, 2026 WL 2452258, at *1; *see also Westmoreland Coal*, 968 F.3d at 533 ("When the AIA applies, it divests courts of subject-matter jurisdiction.") (citing *Hotze*, 784 F.3d at 996); *cf. Rivero*, 1 F.4th at 345 ("The AIA's jurisdictional condition only buttresses our conclusion that the DJA's federal-tax exception is likewise a jurisdictional condition that divests subject-matter jurisdiction if it applies.").[7]

[7] Plaintiffs erroneously contend (Br. 26) that *Rivero* was a "drive-by jurisdictional ruling." On the contrary, this Court in *Rivero* ordered that the parties submit supplemental briefing on the very question of whether the AIA is jurisdictional before rendering its decision. *See* Letter Brief by Appellant, *Rivero v. Fidelity Invs., Inc.*, No. 20-40371, 2021 WL 301948 (5th Cir. Jan. 19, 2021); Letter Brief by Appellee, *Rivero v. Fidelity Invs., Inc.*, No. 20-40371, 2021 WL 301952 (5th Cir. Jan. 19, 2021).

And this Court has applied the exceptions to the AIA while viewing it through a jurisdictional lens. Also in August 2026, in *National Infusion Center Association v. Kennedy*, this Court held that the *South Carolina* exception applied to permit the drug company's suit challenging the constitutionality of the Inflation Reduction Act's Drug Pricing Program, reasoning that "[w]ith respect to the IRA's excise tax, a postpayment refund suit is not an alternative remedy because no taxpayer subject to the tax could afford such a suit if the suit proceeded as the Plaintiffs contend it could. Therefore, the AIA does not bar the Plaintiffs' claim, so we have jurisdiction to consider that claim." *Nat'l Infusion Ctr. Ass'n v. Kennedy*, __ F.4th __, No. 25-50661, 2026 WL 2517285, at *10 (5th Cir. Aug. 26, 2026).

**2. Plaintiffs' arguments to the contrary fall short**

Plaintiffs' arguments to the contrary (Br. 17-25) fall short. First off, aside from its being overtaken by the factors weighing heavily in favor of the AIA's jurisdictional nature, Plaintiffs contention that the AIA is a claim-processing rule makes little sense on the text alone. Claim-processing rules "seek to promote the orderly progress of litigation by requiring that the parties take certain procedural steps at

certain specified times." *Henderson*, 562 U.S. at 435. Unlike the provisions that the Court has found are claim-processing rules, such as deadlines or exhaustion requirements, the AIA's plain text mentions no procedural steps or timing requirements. Rather, it speaks to the court's adjudicatory capacity to hear cases for the purpose of restraining the assessment or collection of tax, which is quintessentially jurisdictional. *See, e.g.*, *Kontrick*, 540 U.S. at 455 ("jurisdictional" includes "prescriptions delineating the classes of cases . . . falling within a court's adjudicatory authority").

1. Plaintiffs first contend (Br. 18-21) that the AIA "speaks to the litigant, not the court." But this is not entirely so. In fact, the statute speaks as much to the court as to the litigant. "[N]o suit for the purpose of restraining the assessment or collection of any tax *shall be maintained in any court* by any person . . " clearly speaks to the court's authority to "maintain" such a suit. *See* I.R.C. § 7421(a) (emphasis added). Indeed, the portion of the statute beginning with "by any person" was not part of the statute as originally passed; that portion was enacted in 1966 in the Tax Lien Act, which gave an exclusive right of action under I.R.C. § 7426 to third parties who were not themselves

liable for the tax but with property liens competing with the federal tax liens. *See Bob Jones*, 416 U.S. at 731 n.6 (discussing legislation).

In an effort to restrict the meaning of "maintain" to only the commencement of a suit, Plaintiffs describe one historical definition of "maintain": "to begin or institute a legal action." Br. 18 (quoting *Boutiller v. The Milwaukee*, 8 Minn. 97, 105 (1863)). But Plaintiffs' cited source includes another: "There is no expression more common at the bar among the legal profession, than . . . using the word 'maintain' as synonymous with the existence of a cause of action." *Boutiller*, 8 Minn. at 105. Thus, the language "no suit . . . shall be maintained in any court by any person" informs the court as well as litigants that such lawsuits cannot be adjudicated and ought to be dismissed. *See also Smallwood v. Gallardo*, 275 U.S. 56, 60 (1927) (interpreting language similar to the AIA as applying to already-commenced cases and requiring dismissal).

That the AIA is drafted in passive voice does not maim its jurisdictional character. The Supreme Court has observed that a statute drafted in the passive voice offered "'clear' jurisdictional language" even under the recent years' more "discipline[d]"

jurisdictional lens. *Gonzalez*, 565 U.S. at 141-42. In considering 28 U.S.C. § 2253(c)(1), which states, "Unless a circuit justice or judge issues a certificate of appealability, *an appeal may not be taken* to the court of appeals . . . ," the Court observed that the "plain terms . . . establish that 'until a COA has been issued *federal courts of appeals lack jurisdiction* to rule on the merits of appeals from habeas petitioners.'" *Id.* at 142 (quoting *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003)) (emphasis added).

In addition, Plaintiffs mistakenly rely on *Reed Elsevier*'s treatment of the statute at issue there (Br. 20) to support Plaintiffs' argument that the language of the AIA paints a claim-processing rule. There, the Court examined 17 U.S.C. § 411(a), which states, "no civil action for infringement of the copyright in any United States work shall be instituted until preregistration or registration of the copyright claim has been made in accordance with this title." *Reed Elsevier*, 559 U.S. at 157-58. This provision was "part of the Act's remedial scheme" and "establishes a condition—copyright registration—that plaintiffs ordinarily must satisfy before filing an infringement claim and invoking the Act's remedial provisions." *Id.* at 158.

Contrary to the provision at issue in *Reed Elsevier*, the AIA contains no procedural hurdles that must be overcome before one may sue to restrain the assessment or collection of tax. Rather, it emphatically and unequivocally provides that "[e]xcept as provided" by Congress in specific avenues of relief based on specific claims in the Internal Revenue Code, "no suit for the purpose of restraining the assessment or collection of any tax shall be maintained in any court by any person, whether or not such person is the person against whom such tax was assessed." I.R.C. § 7421(a). There is no mention of some action that must be done first, such as registering one's copyright before filing a copyright infringement suit. *See Reed Elsevier*, 559 U.S. at 157-58. Rather, § 7421(a) is a substantive prohibition on judicial review over a category of cases—exemplary of a jurisdictional bar.

2. Plaintiffs also argue erroneously (Br. 21-23) that the positioning of the AIA in the Tax Code deactivates its jurisdictional role. Quite the contrary, as Title 26 contains multiple jurisdictional limitations. Section 7402(a), for example, delineates specific jurisdictional grants to the district courts, which "shall have jurisdiction" over certain actions including quiet title and suits for

damages. I.R.C. § 7402(a). This is in addition to 28 U.S.C. § 1340, which § 7402(f) refers to as the "general jurisdiction" grant over actions arising under internal revenue laws. Moreover, the entire sphere of the Tax Court's jurisdiction is set forth in the Tax Code. *See* I.R.C. § 7442 ("The Tax Court and its divisions shall have such jurisdiction as is conferred on them by this title [26].").

Plaintiffs' argument that the AIA is a non-jurisdictional claim-processing rule because it differs in language from the Tax Injunction Act (TIA) bends logic, because Congress "modeled" the TIA on the AIA. *Direct Mktg. Ass'n v. Brohl*, 575 U.S. 1, 8 (2015); *see Hibbs v. Winn*, 542 U.S. 88, 102-03 (2004) ("In composing the TIA's text, Congress drew particularly on an 1867 measure, sometimes called the Anti–Injunction Act (AIA) . . . ."); *Jefferson Cnty., Ala. v. Acker*, 527 U.S. 423, 434 (1999) ("The federal statute Congress had in plain view [when passing the TIA] was an 1867 measure depriving courts of jurisdiction over suits brought 'for the purpose of restraining the assessment or collection' of any federal tax." (quoting I.R.C. § 7421(a))), *superseded by statute on other grounds by* Removal Clarification Act of 2011, Pub. L. No. 112-51, 125 Stat. 545. And Plaintiffs concede that the TIA is a jurisdictional

bar. That a derivative statute is jurisdictional when the original is not defies logic.

3. Plaintiffs' so-called "clincher" argument that the "AIA yields to waiver and equity" (Br. 23-25) overstates and likewise falls short. Like the Supreme Court during the early 1900s, Plaintiffs have "seized upon the[] dicta" of early cases (*Bob Jones*, 416 U.S. at 743) suggesting that "extraordinary and exceptional circumstances" might warrant an injunction despite the AIA's limitations (Br. 23), but as the Supreme Court later reasoned, such "departure[s] from a literal reading of the Act produced a prompt correction in course." *Bob Jones*, 416 U.S. at 743. The Court in the unanimous *Williams Packing* opinion placed a "capstone" on judicial interpretation of the AIA, crystallizing its status as a jurisdictional bar to suits falling within its ambit. *Id.* at 742 (citing *Williams Packing*, 370 U.S. 1).

In this regard, the *Williams Packing* exception, to which Plaintiffs refer (Br. 23, 29), is better construed as limiting the *scope* of the AIA, rather than its jurisdictional character. In both *Williams Packing* and *South Carolina*, the Court interpreted the AIA by considering its text, purpose, and context: the fact that the Court

conducted such an analysis does not insinuate that a statutory bar is nonjurisdictional. *See Reed Elsevier*, 559 U.S. at 168; *Henderson*, 562 U.S. at 436. On multiple occasions, the Court has viewed certain jurisdictional statutes as allowing exceptions not expressly set forth in the statute. *See e.g., Arkansas v. Farm Credit Servs. of Cent. Arkansas*, 520 U.S. 821, 823 (1997) ("The [TIA], on its face, yields no exception to the jurisdictional bar save where the state remedy is wanting, but at least one other exception is established by our cases . . . ."); *Ankenbrandt v. Richards*, 504 U.S. 689, 700 (1992) (acknowledging a domestic relations exception to statutory diversity jurisdiction); *Markham v. Allen*, 326 U.S. 490, 494 (1946) (exception to federal court's lack of jurisdiction over probate matters).

Plaintiffs' citation (Br. 24) of three historical cases in which the Government waived the AIA does not negate the substantial indicators that Congress has long considered the AIA's bar to be jurisdictional. *See Pollock v. Farmers' Loan & Trust Co.*, 157 U.S. 429 (1895); *Helvering v. Davis*, 301 U.S. 619 (1937); *Sunshine Anthracite Coal Co. v. Adkins*, 310 U.S. 381 (1940). *Pollock* suggests that the Court did not view the AIA to fit due to the factual framework: there, the Court

concluded that "[u]nder these circumstances," it could consider the merits of the stockholders' constitutional challenge regarding the imposition of income tax on their corporation. *Pollock*, 157 U.S. at 554. The Court expressed, "so far as it was within the power of the government to do so, the question of jurisdiction . . . was explicitly waived on the argument," though the requested relief was against "the defendant company, and not in respect of the assessment and collection themselves." *Id.*

Notably, the Government's waiver of the AIA in *Helvering* and *Sunshine Anthracite Coal* occurred in the wake of *Miller v. Standard Nut Margarine Co.*, 284 U.S. 498 (1932), in which the Court had dramatically relaxed the AIA not to bar suits involving "extraordinary and exceptional circumstances." *See Standard Nut*, 284 U.S. at 509. As a later Circuit Court decision reasoned, "*Helvering* may well be an anomaly predating more stringent jurisdictional limitations," *Seven-Sky v. Holder*, 661 F.3d 1, 13 (D.C. Cir. 2011), *abrogated on other grounds by NFIB v. Sebelius*, 567 U.S. 519 (2012), and the same might be said for *Sunshine Anthracite Coal*. To the extent that these waivers were any more than anomalies, the Supreme Court subsequently confirmed that

the AIA's "explicit language" forbids reading the statute as merely echoing principles of equity jurisprudence. *Bob Jones*, 416 U.S. at 745; *Williams Packing*, 370 U.S. at 7.

Plaintiffs suggest (Br. 25-28) that this Court can simply cast off its long history of precedent holding that the AIA is jurisdictional by labeling binding case law as "drive-by jurisdictional rulings," beginning with the "root" *Williams Packing*. But *Williams Packing* was by no means a "drive-by jurisdictional ruling." On the contrary, the Court conducted a thorough analysis of "the proper construction" of the AIA in reaching its conclusion. *See Williams Packing*, 370 U.S. at 5-8. The Court drew a comparison to the TIA, and analyzed the "manifest purpose" of the AIA, which is "to permit the United States to assess and collect taxes alleged to be due without judicial intervention, and to require that the legal right to the disputed sums be determined in a suit for refund." *Id.* at 7. Such considerations of meaning, purpose, and context illustrate a far more thoughtful analysis than simply adhering the "jurisdictional" label to the statute in passing. *See Reed Elsevier*, 559 U.S. at 168 (considering historical context); *Henderson*, 562 U.S. at

440 (considering, *inter alia*, the overarching system in which the statute plays a role in finding that the time limit was nonjurisdictional).

Last, this Court should reject Plaintiffs' rule-of-orderliness argument (Br. 28) based on the Supreme Court's decision in *Boechler*, 596 U.S. 199. That case involved whether the filing deadline for a certain type of Tax Court proceeding was jurisdictional or not, and, consistent with many of the Court's decisions involving filing deadlines, the Court held that it was a claims-processing rule. *Id.* at 203-04. That case had nothing to do with, and no bearing whatsoever on, the case law regarding the AIA.

## CONCLUSION

The judgment of the District Court should be reversed and remanded only as it pertained to entry of the proposed consent judgment. The judgment of the District Court as to Plaintiffs' claims beyond those described in the proposed consent judgment should be affirmed.

Respectfully submitted,

BRETT A. SHUMATE
*Assistant Attorney General*
JOSHUA WU
*Deputy Assistant Attorney General*

/s/ *Marie E. Wicks*

FRANCESCA UGOLINI (202) 514-3361
MARIE E. WICKS (202) 307-0461
*Attorneys, Tax Litigation Branch*
*Civil Division, U.S. Department of Justice*
*Post Office Box 502, Washington, D.C. 20044*

SEPTEMBER 21, 2026

## CERTIFICATE OF SERVICE

It is hereby certified on September 21, 2026, that this brief was filed with the Clerk of the United States Court of Appeals for the Fifth Circuit by using the CM/ECF system. It is further certified that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

/s/ *Marie E. Wicks*
MARIE E. WICKS
*Attorney*

## CERTIFICATE OF COMPLIANCE

### Certificate of Compliance With Type-Volume Limit, Typeface Requirements, and Type-Style Requirements

1. This document complies with the word limit of Fed. R. App. P. 32(a)(7)(B) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f):

[X] this document contains 12,414 words, **or**

[ ] this brief uses a monospaced typeface and contains _____ lines of text.

2. This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

[X] this document has been prepared in a proportionally spaced typeface using Word for Microsoft 365 in Century Schoolbook 14, **or**

[ ] this brief has been prepared in a monospaced typeface using ______________________ with ________________.

3. All required privacy redactions have been made in accordance with Local Rule 25.2.13. The document has been scanned for viruses with the most recent version of a commercial virus scanning program and is free of viruses. The electronic and paper submissions are identical as required by Local Rule 25.2.1.

(s) /s/ *Marie E. Wicks*

Attorney for Commissioner of the Internal Revenue Service; Internal Revenue Service

Dated: September 21, 2026