No. 26-40237

**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

NATIONAL RELIGIOUS BROADCASTERS; SAND SPRINGS CHURCH; FIRST BAPTIST CHURCH WASKOM; INTERCESSORS FOR AMERICA,

*Plaintiffs-Appellants,*

v.

SCOTT BESSENT, ACTING COMMISSIONER OF THE INTERNAL REVENUE SERVICE; INTERNAL REVENUE SERVICE,

*Defendants-Appellees.*

On Appeal from the United States District Court
for the Eastern District of Texas
Case No. 6:24-CV-311

# BRIEF OF THE FREEDOM FROM RELIGION FOUNDATION IN SUPPORT OF APPELLEES AND AFFIRMANCE

**PATRICK C. ELLIOTT**
*Counsel of Record*
**FREEDOM FROM RELIGION FOUNDATION, INC.**
PO Box 750
Madison, WI 53701-0750
(608) 256-8900
patrick@ffrf.org

## CERTIFICATE OF INTERESTED PERSONS

The undersigned counsel of record certifies that the following listed person and entity as described in the fourth sentence of Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this Court may evaluate possible disqualification or recusal.

**Amicus Curiae**

Freedom From Religion Foundation

**Attorney for *Amicus Curiae***

Patrick C. Elliott
Attorney for Amicus Curiae
Freedom From Religion Foundation
PO Box 750
Madison, WI 53701-0750
608-256-8900
patrick@ffrf.org

## TABLE OF CONTENTS

**Page**

Certificate of Interested Persons ....... i

Table of Authorities ....... iii

Corporate Disclosure Statement ....... 1

Interest of Amicus ....... 1

Summary of Argument ....... 2

Argument ....... 4

I. The Plaintiffs lack Article III standing since their own allegations establish the unlikelihood that the Johnson Amendment will be enforced against them. ....... 5

A. The long and speculative chain of events necessary for enforcement of the Johnson Amendment against Plaintiffs is insufficient to establish injury in fact. ....... 6

B. Decades of nonenforcement, combined with the Defendant's disavowment to enforce the law, establish compelling evidence that the Plaintiffs are not under a substantial threat of enforcement of the Johnson Amendment. ....... 7

1. There is a long and substantial history of nonenforcement of the Johnson Amendment. ....... 9

2. The Government has implicitly and explicitly disavowed any intention of enforcing the Johnson Amendment against the Plaintiffs. ....... 14

II. This case lacks adversity necessary to establish an Article III Case or Controversy because the parties agree on the inapplicability of the Johnson Amendment. ....... 15

III. This case is not ripe ....... 19

Conclusion ....... 21

Certificate of Compliance ....... 22

Certificate of Service ....... 23

## TABLE OF AUTHORITIES

***Cases*** **_Page(s)_**

*Abbott Labs. v. Gardner*,
387 U.S. 136 (1967)....................19

*Abbott v. Pastides*,
900 F.3d 160 (4th Cir. 2018)....................8

*Aetna Life Ins. Co. of Hartford, Conn. v. Haworth*,
300 U.S. 227 (1937)....................16

*Arizonans for Off. Eng. v. Arizona*,
520 U.S. 43 (1997)....................5

*Baker v. Blue Valley*,
979 F.3d 866 (10th Cir. 2020)....................9

*Choice Inc. of Texas v. Greenstein,*
691 F.3d 710 (5th Cir. 2012)....................20

*CIC Services, LLC v. IRS,*
593 U.S. 209 (2021)....................20

*Clapper v. Amnesty Inter. USA*,
568 U.S. 398 (2013)....................6

*DaimlerChrysler Corp. v. Cuno*,
126 U.S. 1854 (2006)....................4

*Flast v. Cohen*,
392 U.S. 83 (1968)....................16

*Food & Drug Admin. v. Alliance for Hippocratic Med.*,
602 U.S. 367 (2024)....................4, 5

*Greenberg v. Lehocky*,
81 F.4th 376 (3rd Cir. 2023)....................9

*Hollingsworth v. Perry*,
570 U.S. 693 (2013)....................................................................5, 16

*Lopez v. Candaele*,
630 F.3d 775 (9th Cir. 2020) ....................................................................9

*Lujan v. Defs. of Wildlife*,
504 U.S. 555 (1992)....................................................................6

*Moore v. Charlotte-Mecklenburg Bd. of Educ.*,
402 U.S. 47 (1971)....................................................................15, 16, 18

*Muskrat v. United States*,
219 U.S. 346 (1911)....................................................................4, 15

*Nat'l Org. for Women, Inc. v. Scheidler*,
510 U.S. 249 (1994)....................................................................5

*Nat'l Press Photographers Ass'n v. McCraw*,
90 F.4th 770 (5th Cir. 2024) ....................................................................5, 7

*Nat'l Shooting Sports Found. v. Att'y Gen. of N.J.*,
80 F.4th 215 (3d Cir. Aug. 17, 2023)....................................................................8

*Pool v. City of Houston*,
87 F.4th 733 (5th Cir. 2023) ....................................................................16, 18

*Speech First, Inc. v. Fenves*,
979 F.3d 319 (5th Cir. 2020) ....................................................................7, 8, 12

*Texas v. United States*,
523 U.S. 296 (1998)....................................................................4, 19

*Trump v. California*,
609 U.S. ___, 2026 WL 2473573 (U.S. Aug. 24, 2026)....................................19

*Trump v. New York*,
592 U.S. 125 (2020)....................................................................4, 19

*United Pub. Workers of Am. v. Mitchell*,
330 U.S. 75 (1947) .......................................................... 17, 18

*Wilson v. State Bar of Ga.*,
132 F.3d 1422 (11th Cir. 1998) .......................................................... 8

*Younger v. Harris*,
401 U.S. 37 (1971) .......................................................... 6

**Other Authorities**

*2006 Political Activities Compliance Initiative*,
https://www.irs.gov/pub/irs-tege/2006paci_report_5-30-07.pdf .......................... 9

26 U.S.C. § 7611 .......................................................... 10

26 U.S.C. § 7422(a) .......................................................... 13

Exec. Order No. 13798, 82 FR 21675 (May 4, 2017) .......................................... 14

Gary Hamrick, *The Continuing Fight for Freedom*, Decision: The Evangelical Voice For Today (June 1, 2026), https://bit.ly/46FGpx0 .......................... 13

*Participation in ADF Pulpit Freedom Sunday more than quadruples over last year*, Alliance Defending Freedom (Sep. 30, 2011), https://bit.ly/47bqNkW .............. 10

RieAnna J. Frank, *Legal fight over churches endorsing candidates renewed as midterms near*, USA Today: Politics (July 27, 2026 at 8:33 ET), https://bit.ly/4jk6FUT .......................................................... 9

*Tax Guide for Churches & Religious Organizations*, IRS, https://www.irs.gov/pub/irs-pdf/p1828.pdf .......................................... 11

Tom Gjelten, *The Johnson Amendment In 5 Questions And Answers*, NPR: Wisconsin Public Radio (Feb. 3, 2017, at 3:11 ET), https://bit.ly/3TkBApy ...... 10

*Trump is wrong. Pulpit freedom already exists*. THE WASHINGTON POST (Aug. 5, 2016) https://bit.ly/46K4m6k .......................................................... 10

## CORPORATE DISCLOSURE STATEMENT

The Freedom From Religion Foundation, Inc. ("FFRF") is a nationally recognized 501(c)(3) nonprofit corporation. FFRF has no parent corporation and issues no stock.

## INTEREST OF AMICUS[1]

The Freedom From Religion Foundation ("FFRF") is the largest national association of freethinkers, representing atheists, agnostics, and others who form their opinions about religion based on reason, rather than faith, tradition, or authority. Founded nationally in 1978 as a 501(c) (3) nonprofit, FFRF has more than 40,000 members, including members in every state and the District of Columbia. FFRF's primary purposes are to educate about nontheism and to preserve the cherished constitutional principle of separation between religion and government.

FFRF's interest stems from its concern that parties to this case have sought to usurp the Internal Revenue Code and fundamental Article III principles in order to favor particular religious organizations. Courts must not stray from longstanding jurisdictional principles to afford leniency to religiously-affiliated litigants while using the same principles to deny access to other civil rights litigants.

---

[1]All parties have consented to the filing of this brief. No party's counsel in this case authored this brief in whole or in part. No party or party's counsel contributed any money intended to fund preparing or submitting this brief. No person, other than Amicus, its members, or its counsel contributed money that was intended to fund preparing or submitting this brief.

## SUMMARY OF ARGUMENT

Article III of the Constitution limits federal courts power to only adjudicate actual cases and controversies. In this pre-enforcement challenge, the parties ask the Court to disregard Article III limitations and issue an advisory opinion about the Johnson Amendment's inapplicability to the actions of the Plaintiffs-Appellants. Article III prohibits the Court from adjudicating this case for three reasons: (1) the Plaintiffs lack standing, (2) no adversity exists between the parties, and (3) the Plaintiffs' claims are not ripe.

First, the Plaintiffs lack standing to challenge the Johnson Amendment. In order to demonstrate standing in a pre-enforcement challenge, the Plaintiffs must establish that there is a substantial threat of future enforcement of the law they are challenging. The Plaintiffs here have failed to do so. In fact, they have established the opposite: that there is no reasonable threat of enforcement of the Johnson Amendment. Not only is there a long history of nonenforcement of the Johnson Amendment, but Congress has enacted special IRS procedures that protect churches from enforcement. Even more explicitly, the government disavowed any intention of enforcing the Johnson Amendment against the Plaintiffs in Executive Order 13798, and the Defendants themselves outwardly agreed that the Johnson Amendment does not apply to the Plaintiffs. All the Plaintiffs offer to support their argument are speculations that the Johnson Amendment could be enforced against

them if a long chain of unlikely events occur. Yet, speculation is insufficient to confer standing. The Court must not ignore the extensive and compelling evidence demonstrating that there is no reasonable threat that the Johnson Amendment will be enforced against the Plaintiffs.

Adjudicating this case now would erode the separation of powers embedded in Article III's case-or-controversy requirement. It would empower plaintiffs to utilize the courts as a backup route when they lose in the legislature, regardless of whether a controversy or genuine adversity between the parties exists or whether the plaintiff has demonstrated a realistic threat of enforcement. By adjudicating this case, the Court would open its doors to plaintiffs claiming their rights could hypothetically be violated, an approach prohibited by Article III jurisprudence.

Second, Article III requires that there must be genuine adversity or a controversy between the parties. Yet, no such adversity exists in this case. Rather, the Plaintiffs themselves stated that both parties agree that the Johnson Amendment is inapplicable to the Plaintiffs, explicitly denying the existence of any controversy requiring adjudication. Further, the Plaintiffs here have not violated the Johnson Amendment nor has the Amendment been enforced against them. The lack of both adversity between the parties and enforcement of the Johnson Amendment leaves the Court without jurisdiction over this case. However, the Plaintiffs ask this Court to ignore its lack of jurisdiction and order an advisory opinion based on broad claims

protected by the First Amendment.

Third, the Plaintiffs' claims are not ripe for review. As Plaintiffs' own brief recognizes, their claims are dependent on a chain of speculative events. The Court must not disregard Article III limitations and must dismiss this case for lack of jurisdiction.

## ARGUMENT

In order to have a justiciable case or controversy, (1) the plaintiffs bringing the lawsuit must have standing to sue, (2) there must be adversity between the parties, and (3) the claims must be ripe for review. *DaimlerChrysler Corp. v. Cuno*, 126 U.S. 1854, 1862 (2006) ("[A] core component of the case-or-controversy requirement is that a litigant has standing to invoke the authority of a federal court."); *Muskrat v. United States*, 219 U.S. 346, 357 (1911) ("The term [case] implies the existence of present or possible adverse parties, whose contentions are submitted to the court for adjudication."); *Trump v. New York*, 592 U.S. 125, 131 (2020) (*per curiam*) (A case is ripe if it is not "dependent on 'contingent future events that may not occur as anticipated, or indeed may not occur at all.'" (quoting *Texas v. United States*, 523 U.S. 296, 300 (1998)).

Standing is a "bedrock constitutional requirement that applies to all manners of important disputes." *Food & Drug Admin. v. Alliance for Hippocratic Med.*, 602 U.S. 367, 378 (2024). As a bedrock principle, "Article III demands that an actual

controversy persist throughout all stages of litigation." *Hollingsworth v. Perry*, 570 U.S. 693, 704 (2013); *see Nat'l Org. for Women, Inc. v. Scheidler*, 510 U.S. 249, 255 (1994) ("Standing remains open to review at all stages of litigation."). This remains true on appellate review, where appellants must establish all Article III standing requirements just like they had to in courts of first instance. *Arizonans for Off. Eng. v. Arizona*, 520 U.S. 43, 64 (1997).

## I. The Plaintiffs lack Article III standing since their own allegations establish the unlikelihood that the Johnson Amendment will be enforced against them.

Despite the government's agreement that the Johnson Amendment is not enforceable against the Plaintiffs, the Plaintiffs still incorrectly insist they have standing. ROA.249-56. To establish standing, a plaintiff must demonstrate: (i) that she has suffered or will likely suffer an injury in fact, (ii) that the injury likely was caused or will be caused by the defendant, and (iii) that the injury likely would be redressed by the requested judicial relief. *Alliance for Hippocratic Med.*, 602 U.S. at 380. For a pre-enforcement free speech case, a plaintiff has suffered an injury in fact if he or she: (1) has an intention to engage in a course of conduct arguably affected with a constitutional interest, (2) his or her intended future conduct is arguably proscribed by the policy in question, and (3) the threat of future enforcement of the challenged policy is substantial. *Nat'l Press Photographers Ass'n v. McCraw*, 90 F.4th 770, 782 (5th Cir. 2024).

### A. The long and speculative chain of events necessary for enforcement of the Johnson Amendment against Plaintiffs is insufficient to establish injury in fact.

To establish standing, a plaintiff must demonstrate an injury that is "concrete and particularized" and "actual or imminent," not conjectural or hypothetical. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). Standing is not conferred on plaintiffs who only possess "imaginary or speculative" fears that a law will be enforced against them. *Younger v. Harris*, 401 U.S. 37, 42 (1971). And further, a "highly attenuated chain of possibilities" fails to satisfy the immediacy requirement necessary for a plaintiff to have standing. *Clapper v. Amnesty Inter. USA*, 568 U.S. 398, 410 (2013).

No actual injury exists in this case. The Plaintiffs themselves label the chain of events necessary for enforcement of the Johnson Amendment to occur as "long and speculative." Opening Br. of Appellants 35. Specifically, the Plaintiffs state: "For any tax to reach Plaintiffs, (i) they must first violate the Johnson Amendment by intervening in a campaign; (ii) the IRS must determine that a violation occurred; and (iii) the IRS must exercise its considerable discretion to impose the § 4955 excise tax or to revoke exempt status–each itself discretionary." *Id.* The Plaintiffs emphasize the discretion afforded to the IRS when determining whether to enforce the Johnson Amendment. Since the IRS is afforded discretion over whether to enforce the Johnson Amendment, and the government has explicitly disavowed any intention of doing so, this "speculation" becomes confirmation that no such future

enforcement will occur.

### B. Decades of nonenforcement, combined with the Defendant's disavowment to enforce the law, establish compelling evidence that the Plaintiffs are not under a substantial threat of enforcement of the Johnson Amendment.

To determine whether there is a substantial threat of future enforcement, courts often look to whether the law has been previously enforced and if the government has disavowed any intention of enforcing that law against the Plaintiffs. *Nat'l Press Photographers Ass'n*, 90 F.4th at 782. The State "disavow[ing] any intention of invoking the law against plaintiffs" is a strong indication against future enforcement. *Id.* 783–84.

This Court has also stated that "when dealing with pre-enforcement challenges to recently enacted (or, at least, non-moribund) statutes," the court can assume a credible threat of enforcement when a party is subject to the law, and there is no compelling contrary evidence that the law will not be enforced. *Speech First, Inc. v. Fenves*, 979 F.3d 319, 331–35 (5th Cir. 2020). *Speech First, Inc.* involved a pre-enforcement challenge to recently enacted policies prohibiting harassment at a public university. *Id.* These policies regulated activities ranging from technology use and housing to general speech in academic and professional settings. *Id.* In that case, Speech First provided the University's public log of bias incidents and showed that the policies had been utilized when responding to hundreds of complaints. *Id.* The Court held that this extensive history of enforcement contributed to a substantial

threat of future enforcement. *Id.* at 337. While there were University officials who disavowed their intention to enforce the policies, the Court found this disavowment insufficient because the policies prohibited language considered "rude," "uncivil," or "offensive" and could be enforced all across the university. *Id*. Since the party bringing the suit was subject to the policies, and there was an extensive history of enforcement along with insufficient disavowment to enforce the policies, this Court found that there was a substantial threat of future enforcement.

Although this Court has not yet addressed situations where there is a reliable and direct disavowment from the government to enforce a law, other circuits have held that such a disavowment inherently weighs against a credible threat of prosecution. *See Nat'l Shooting Sports Found. v. Att'y Gen. of N.J.*, 80 F.4th 215, 221 (3d Cir. Aug. 17, 2023) (holding that there is no standing where the attorney general disavowed prosecuting participation in lawful commerce, which is all the plaintiff had said it wanted to do); *Abbott v. Pastides*, 900 F.3d 160, 177 (4th Cir. 2018) (holding that there is no standing where plaintiffs received written notice that neither investigation nor sanction was forthcoming); *Wilson v. State Bar of Ga.*, 132 F.3d 1422, 1428–29 (11th Cir. 1998) (finding no standing where the state bar had repeatedly and consistently taken the position that the rule did not bar planned conduct). Other circuits have explicitly held that, although not dispositive, "the lack of any relevant prior enforcement combined with the Defendant's disavowment of

enforcement undercuts the threat of prosecution." *Greenberg v. Lehocky*, 81 F.4th 376, 387 (3rd Cir. 2023); see also, *Baker v. Blue Valley*, 979 F.3d 866, 876 n.4 (10th Cir. 2020) ("Even if pre-enforcement case law applies, a government defendant's credible disavowal of enforcement intent may defeat pre-enforcement standing."); *Lopez v. Candaele*, 630 F.3d 775, 788 (9th Cir. 2020) ("We have held that plaintiffs did not demonstrate the necessary injury in fact where the enforcing authority expressly interpreted the challenged law as not applying to the plaintiffs' activities.").

**1. There is a long and substantial history of nonenforcement of the Johnson Amendment.**

The Johnson Amendment has historically been unenforced, particularly with regard to churches. RieAnna J. Frank, *Legal fight over churches endorsing candidates renewed as midterms near*, USA Today: Politics (July 27, 2026 at 8:33 ET), https://bit.ly/4jk6FUT, (stating that "though it's been around for more than 70 years, the Johnson Amendment…has rarely been enforced"). In a study done in 2004 and 2006, the IRS evaluated its enforcement of the Johnson Amendment and found that it did not revoke tax-exempt status for any churches. 2006 Political Activities Compliance Initiative), https://www.irs.gov/pub/irs-tege/2006paci_report_5-30-07.pdf. In fact, the IRS did not even propose a revocation for any churches, making any enforcement against organizations like the Plaintiffs rare if not unheard of. Id.

This remains the case despite a multitude of intentional Johnson Amendment violations by religious organizations. Since 2008, Alliance Defending Freedom (ADF) has facilitated their yearly "Pulpit Freedom Sunday," a day where participating pastors preach from their pulpits about the moral qualifications of candidates seeking office. Tom Gjelten, *The Johnson Amendment In 5 Questions And Answers*, NPR: Wisconsin Public Radio (Feb. 3, 2017, at 3:11 ET), https://bit.ly/3TkBApy. ADF hoped that the IRS would enforce the Johnson Amendment against one of the hundreds of violators, conferring standing upon a plaintiff to challenge the Amendment's constitutionality. *Participation in ADF Pulpit Freedom Sunday more than quadruples over last year*, Alliance Defending Freedom (Sep. 30, 2011), https://bit.ly/47bqNkW. However, the IRS continued its trend of nonenforcement, leaving ADF without a viable plaintiff and further contributing to the history of nonenforcement of the Johnson Amendment. This nonenforcement has been and continues to be widely recognized, with the *Washington Post* recounting that "only one of the over 2,000 Christian clergy challenging the Johnson Amendment since 2008 has been audited, and none have been punished." *Trump is wrong. Pulpit freedom already exists*. THE WASHINGTON POST (Aug. 5, 2016) https://bit.ly/46K4m6k.

In addition to this history of nonenforcement, Congress has imposed special limitations on IRS enforcement actions against churches, making enforcement

against the Plaintiffs even more unlikely. 26 U.S.C. § 7611; *Tax Guide for Churches & Religious Organizations*, IRS, https://www.irs.gov/pub/irs-pdf/p1828.pdf. When conducting civil tax inquiries and examinations of churches, the IRS "may only initiate a church tax inquiry if an appropriate high-level Treasury Department official reasonably believes, based on a written statement of the facts and circumstances, that the organization: (a) may not qualify for the exemption or (b) may not be paying taxes on an unrelated business or other taxable activity." *Id.* This church-specific limitation adds additional hurdles the IRS must overcome to enforce the Johnson Amendment against the Plaintiffs. And further, this provision requires a high-level Treasury Department official to make the discretionary decision to begin an enforcement inquiry, adding another layer of unlikeliness that the Johnson Amendment will be enforced against Plaintiffs.

The record in this case also establishes compelling evidence that there is no substantial threat of enforcement of the Johnson Amendment. The Plaintiffs themselves have compiled a list of over two dozen examples of such nonenforcement against a variety of nonprofit organizations. ROA.260-284. In fact, both parties confirmed in the Joint Motion for Entry of Consent Judgment that "the IRS generally has not enforced the Johnson Amendment against houses of worship for speech concerning electoral politics in the context of worship services," ROA.410, the very speech Plaintiffs wish to engage in.

The facts of this case are distinctly different from those of *Speech First* where the Court found there was a future threat of enforcement of a University's policies regulating speech. That case challenged recently enacted university policies, distinctly different from the Johnson Amendment which was enacted over half a century ago. Further, despite the recency of those policies, the Plaintiffs in *Speech First* presented hundreds of examples of enforcement activity whereas here there is an extensive history of nonenforcement. Similarly, the Court in *Speech First* held that the University officials' disavowment to enforce the policy was insufficient evidence to contradict a threat of future enforcement because these officials were only a few of many who had the authority to invoke the policy. Rather than a University policy that could be applied by different officials and departments, the Johnson Amendment is a specific law that can only be enforced by the IRS, a department that has specifically disavowed any intention of enforcing the Amendment against these churches.

The Plaintiffs mention three instances they label as enforcements of the Johnson Amendment, yet two of these do not actually constitute enforcement. Regarding the Attorney General's settlement announcement in two cases brought by "conservative" organizations, the Plaintiffs only referenced the Attorney General's statement that "inappropriate criteria" had previously been used that led to additional review of nonprofit applications and the requesting of additional information.

ROA.284. However, neither additional review of nonprofit applications nor requesting additional information relating to applications constitute enforcement of the Johnson Amendment against already operating organizations, and the Plaintiffs assert no other alleged enforcement related to these settlements.

The Plaintiffs also referenced a letter where they claim the IRS denied status as a 501(c)(3) to an organization called "Christians Engaged." ROA.286. However, in the Amended Complaint the Plaintiffs themselves state that the denial was reversed, so this similarly does not constitute an enforcement action. *Id.*

The Plaintiffs lastly referenced an IRS investigation of Cornerstone Chapel in Leesburg, Virginia. ROA.285-286. There, a church had to pay a $197 excise tax but maintained its tax-exempt status. Gary Hamrick, *The Continuing Fight for Freedom*, Decision: The Evangelical Voice For Today (June 1, 2026), https://bit.ly/46FGpx0; ROA.876. This one small tax, not even accompanied with the loss of tax-exempt status, is insufficient to meet the Plaintiffs' burden to show that there is a "substantial" threat of future enforcement. Rather, that one instance of enforcement was an anomaly in a sea of nonenforcement.[2]

[2]If a party alleges an internal revenue tax has been erroneously or illegally assessed or collected, that party must first pay the tax before filing suit. See Civil Actions For Refund, 26 U.S.C. § 7422(a). No suit shall be maintained in any court of law for the recovery of that tax until a claim for refund or credit has been filed with the Secretary of the Treasury. *Id.*

### 2. The Government has implicitly and explicitly disavowed any intention of enforcing the Johnson Amendment against the Plaintiffs.

Not only is there a long and clear history of nonenforcement of the Johnson Amendment, but the government has both explicitly and implicitly disavowed any intent to enforce the law against the Plaintiffs. The government explicitly disavowed its intent to enforce the Johnson Amendment by issuing and referencing Executive Order 13798, which specifically directs the Secretary of Treasury not to enforce the Johnson Amendment against organizations like the Plaintiffs. *See* Exec. Order No. 13798, 82 FR 21675 (May 4, 2017). That order specifically states that:

> The Secretary of the Treasury shall ensure, to the extent permitted by law, that the Department of the Treasury does not take any adverse action against any individual, house of worship, or other religious organization on the basis that such individual or organization speaks or has spoken about moral or political issues from a religious perspective, where speech of similar character has, consistent with law, not ordinarily been treated as participation or intervention in a political campaign on behalf of (or in opposition to) a candidate for public office by the Department of the Treasury.

*Id.* The Order specifically defines "adverse action" to include "any tax or tax penalty; the delay or denial of tax-exempt status; and the disallowance of tax deductions for contributions made to entities exempted from taxation under section 501(c)(3) of title 26 of the United States Code." *Id.* Under an Executive Order declaring the government's disavowment to take any adverse action against organizations like the Plaintiffs, the Defendant has explicitly disavowed any potential intent to enforce the

Johnson Amendment.

In addition to the Executive Order, the Defendant implicitly confirmed this disavowment by filing a Joint Motion For Entry Of Consent Judgment and a Proposed Consent Judgment. In those documents, the parties state: "Communications from a house of worship to its congregation in connection with religious services through its usual channels of communication on matters of faith do not run afoul of the Johnson Amendment as properly interpreted." ROA.409-410, 415-416. Since these are the exact practices the Plaintiffs want to engage in, the government makes clear that they do not believe the Plaintiffs' desired activities violate the Johnson Amendment, and therefore, disavow any intent to enforce the law against them.

## II. This case lacks adversity necessary to establish an Article III Case or Controversy because the parties agree on the inapplicability of the Johnson Amendment.

Article III requires adversity between the parties. When the parties to a lawsuit agree on the constitutionality of a statute, and the defending party will not take adverse action based on said statute, there is no adversity and therefore no case or controversy. *See Moore v. Charlotte-Mecklenburg Bd. of Educ.*, 402 U.S. 47 (1971). Courts do not possess a general veto power to declare a law unconstitutional, nor do courts serve as an additional route to inquire as to the constitutionality of a law if a party loses in the legislature. *Muskrat*, 219 U.S. at 357–60 ("It was never the thought

that, by means of a friendly suit, a party beaten in the legislature could transfer to the court an inquiry as to the constitutionality of the legislative act.”).

The United States Supreme Court has made clear that Article III jurisdictional limits consequently prohibit courts from rendering advisory opinions. *Flast v. Cohen*, 392 U.S. 83, 95–96 (1968) (stating that there is “no justiciable controversy presented when the parties… are asking for an advisory opinion” and that “it is quite clear that the oldest and most consistent thread in federal law of justiciability is that the federal courts will not give an advisory opinion”). Advisory opinions, those advising what the law would be upon a hypothetical statement of facts, are distinguished from real and substantial controversies which must be definite and concrete, “touching the legal relations of parties having adverse legal interests.” *Aetna Life Ins. Co. of Hartford, Conn. v. Haworth*, 300 U.S. 227, 241 (1937). Advisory opinions are always prohibited since “plaintiffs must maintain a personal interest in the dispute” at all stages of litigation. *Hollingsworth*, 570 U.S. at 705.

In *Moore*, the Plaintiffs appealed from a lower-court judgment declaring a portion of a state anti-busing statute unconstitutional and enjoining its enforcement. *Moore*, 402 U.S. at 47. On appeal, both parties desired precisely the same result—a holding that the law was constitutional. *Id.* The court held that the case lacked a justiciable case or controversy within the meaning of Article III. *Id.* at 47–48. This Court similarly held in *Pool v. City of Houston* that no case or controversy exists

when the parties to a lawsuit agree that a legislative act is unconstitutional. 87 F.4th 733 (5th Cir. 2023). In that case, both parties agreed that a city's voting registration provisions were unconstitutional, and the court dismissed the case for lack of a justiciable case or controversy, stating that "such faux disputes do not belong in federal court." *Id.* at 734 ("Where parties agree on a constitutional question, there is no adversity and hence no Article III case or controversy.").

A broad claim that a law violates a plaintiff's right is also insufficient to establish adversity when that law has not yet been enforced against the plaintiff. *See United Pub. Workers of Am. v. Mitchell*, 330 U.S. 75 (1947). In *United Public Workers of America,* appellants challenged the Hatch Act which declared it unlawful for federal employees to take "any active part in political management or political campaigns." *Id.* at 79. Many of the appellants had not violated the Hatch Act, but sought an injunction to prohibit the U.S. Civil Service Commission from enforcing the provisions regulating political activity along with a declaratory judgment that the provisions were unconstitutional. *Id.* at 81–84. The court held that the appellants who had not violated the Hatch Act were seeking an advisory opinion based on broad claims or rights protected by the First, Fifth, Ninth, and Tenth Amendments to the Constitution. *Id.* at 89. The court further reiterated that the power of courts to rule on a law's constitutionality arises only when the judicial authority is necessary to protect litigants from actual interference and that a "hypothetical threat is not

enough." *Id.*

No adversity exists in this case. The Plaintiffs themselves state in their brief that "everyone who litigated this case below agreed on the result." Opening Br. of Appellants 10. This declaration was further supported by the parties' proposed Joint Entry for Consent Judgment. ROA.408-418. Similar to *Moore* and *Pool*, the parties in this case both agree on the result. Here, the parties claim that the Johnson Amendment does not apply to the Plaintiffs. ROA.412. In fact, the parties went one step further and requested that the district court issue an advisory order that the Johnson Amendment does not apply to them. ROA.415-418. Yet, courts only have the power to issue judgments when they have jurisdiction over a case and are therefore prohibited from issuing such judgments when the parties agree on a law's inapplicability. The Plaintiffs here were not asking the district court to issue a permissible binding settlement, but rather an impermissible assertion that their interpretation of the inapplicability of the Johnson Amendment is correct.

Also analogous to *United Public Workers*, the Plaintiffs here have not violated the Johnson Amendment nor suffered any enforcement action by the IRS. ROA.243-315. Similar to that case, these Plaintiffs are seeking an advisory opinion upon broad claims protected by the First Amendment. The government has not interfered with the Plaintiffs' rights, and until any such interference arises, this case is the very hypothetical threat the court in *United Public Workers* identified as nonjusticiable.

Since the Plaintiffs' own statements confirm that no justiciable case or controversy exists, the Plaintiffs are requesting an impermissible advisory opinion, leaving the district court and this Court without Article III jurisdiction to adjudicate this case.

## III. This case is not ripe.

Similar to the standing problem, the parties have failed to demonstrate that this case is ripe for adjudication. Ripeness is related to the doctrine of standing. *Trump v. New York*, 592 U.S. at 13 (per curiam); *see also, Trump v. California*, 609 U.S. ___, 2026 WL 2473573, at *2 (U.S. Aug. 24, 2026) (per curiam). Ripeness prevents courts from issuing decisions in disputes that are "dependent on 'contingent future events that may not occur as anticipated, or indeed may not occur at all.'" *Trump,* 592 U.S. at 13 (quoting *Texas v. United States*, 523 U.S. 296, 300 (1998)). Ripeness involves an evaluation of "both the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration." *Walmart Inc. v. U.S. Dep't of Just.*, 21 F.4th 300, 311 (5th Cir. 2021) (quoting *Abbott Labs. v. Gardner*, 387 U.S. 136, 149 (1967)).

The Plaintiffs claims are not fit for a judicial decision as they are "riddled with contingencies and speculation that impede judicial review." *Trump,* 592 U.S. at 131. The Plaintiffs have effectively sunk their own boat. In order to save the case from the Anti-Injunction Act, they assert, "The Johnson Amendment and any tax penalty are several steps removed." Opening Br. Appellants 35. In comparing their claims

to *CIC Services, LLC v. IRS,* 593 U.S. 209 (2021), Plaintiffs say, "[t]he chain here is at least as long and speculative." Opening Br. Appellants 35. The Plaintiffs then point out the "considerable discretion" afforded to the IRS and the chain of events necessary for them to suffer a tax penalty. *Id.*

The Plaintiffs are correct in demonstrating that they may never suffer a penalty if they engage in the conduct they seek to undertake. This admission, however, means that they have failed to demonstrate their claims are ripe for adjudication. They also have not demonstrated an actual hardship in withholding a judicial determination. *See Choice Inc. of Texas v. Greenstein,* 691 F.3d 710, 715 (5th Cir. 2012). Rather, Plaintiffs repeatedly cite self-censorship. This censorship is disconnected from a concrete penalty that they are under an immediate threat of suffering.

The Plaintiffs here fail to establish the Article III bedrock principles of standing, adversity, and ripeness. These failures are demonstrated by the decades of nonenforcement, special protective procedures for churches, the Executive Order, and the assertions of the parties themselves. Rather than asking the district court to resolve a legitimate adversarial dispute, the Plaintiffs seek a favorable advisory opinion based on a hypothetical. This Court must refrain from entertaining suits premised on attenuated and hypothetical events that may never come to pass.

## CONCLUSION

Because no case or controversy exists, this Court should affirm the lower court's dismissal.

Dated: September 25, 2026


Respectfully Submitted,
_/s/ Patrick C. Elliott_
Patrick C. Elliott
Freedom From Religion Foundation
PO Box 750
Madison, WI 53701-0750
(608) 256-8900
patrick@ffrf.org

Counsel for Amicus Curiae

## CERTIFICATE OF COMPLIANCE

This amicus brief complies with the page limitation of Fed. R. App. P. 29(a)(5) and Circuit R. 29 because it consists of 4,802 words and does not exceed 6,500 words.

This amicus brief also complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word 365 in 14-Point Times New Roman font.

Dated: September 25, 2026

*/s/ Patrick C. Elliott*
Patrick C. Elliott
*Counsel for Amicus Curiae*

## CERTIFICATE OF SERVICE

I hereby certify that on September 25, 2026, the foregoing amicus brief was filed electronically with the Clerk of the Court for the United States Court of Appeals for the Fifth Circuit through the Court's CM/ECF system. I certify that all participants in the case who are registered CM/ECF users will be served by the appellate CM/ECF system.

Dated: September 25, 2026

*/s/ Patrick C. Elliott*
Patrick C. Elliott
*Counsel for Amicus Curiae*