No. 26-40237

# UNITED STATES COURT OF APPEALS FOR THE FIFTH CIRCUIT

NATIONAL RELIGIOUS BROADCASTERS; SAND SPRINGS CHURCH; FIRST BAPTIST CHURCH WASKOM; INTERCESSORS FOR AMERICA,

*Plaintiffs-Appellants,*

v.

SCOTT BESSENT, ACTING COMMISSIONER OF THE INTERNAL REVENUE SERVICE; INTERNAL REVENUE SERVICE,

*Defendants-Appellees.*

On Appeal from the United States District Court
for the Eastern District of Texas
Case No. 6:24-CV-311

# REPLY BRIEF OF APPELLANTS

James A. Campbell
John J. Bursch
David A. Cortman
ALLIANCE DEFENDING FREEDOM
440 First Street NW, Suite 600
Washington, DC 20001
(202) 393-8690
jcampbell@ADFlegal.org
jbursch@ADFlegal.org
dcortman@ADFlegal.org

Michael P. Farris
*Counsel of Record*
Sarah Siu
NATIONAL RELIGIOUS BROADCASTERS
800 Maryland Ave, N.E.
Washington, D.C. 20002
(571) 359-6000
mfarris@nrb.org
ssiu@nrb.org

Jacob P. Warner
ALLIANCE DEFENDING FREEDOM
15100 N. 90th Street
Scottsdale, AZ 85260
(480) 444-0020
jwarner@ADFlegal.org

Rita M. Peters
CITIZENS FOR SELF-GOVERNANCE
7586 Stoney Lick Road
Mount Crawford, VA 22841
(540) 830-1229
rpeters@selfgovern.com

David A. Kallman
Stephen P. Kallman
KALLMAN LEGAL GROUP, PLLC
ATTORNEY AT LAW
5600 W. Mount Hope Hwy.
Lansing, MI 48917
(517) 322-3207
dave@kallmanlegal.com
steve@kallmanlegal.com

*Counsel for Appellants*

## CERTIFICATE OF INTERESTED PERSONS

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this court may evaluate possible disqualification or recusal.

Plaintiffs-Appellants:

National Religious Broadcasters

Sand Springs Church

First Baptist Church Waskom

Intercessors for America

Defendants-Appellees:

Scott Bessent, Acting Commissioner of the Internal Revenue Service

Internal Revenue Service

Counsel for Plaintiffs-Appellants:

Michael P. Farris

Sarah E. Siu

Rita M. Peters

Citizens for Self-Governance

James A. Campbell

John J. Bursch

David A. Cortman

Jacob P. Warner

Alliance Defending Freedom

David A. Kallman

Stephen P. Kallman

Kallman Legal Group, PLLC, Attorney at Law

Counsel for Defendants-Appellees:

Jonathan L. Blacker

Marie Wicks

Aaron Henricks

Eduardo Mendoza

Brett A. Shumate

Joshua Wu

Francesca Ugolini

United States Department of Justice

Amici Curiae:

American Center for Law & Justice

Congressman Jeff Crank

Congressman Mark Harris

Home School Legal Defense Association

True North Legal

Kansas Family

Texas Values

Wagner Faith & Freedom Center

America's Future

Public Advocate of the United States

Public Advocate Foundation

Citizens United

Citizens United Foundation

Orthodox Church Mission Fund of Texas

Orthodox Church Mission Fund of Houston, Texas

Conservative Legal Defense and Education Fund

Freedom From Religion Foundation

Campaign Legal Center

Public Citizen, Inc.

Americans United for Separation of Church and State

Counsel for Amici Curiae:

Jordan A. Sekulow

Stuart J. Roth

Andrew J. Ekonomou

Benjamin Sisney

Geoffrey R. Surtees

Nathan J. Moelker

American Center for Law & Justice

Anne Marie Mackin

John Ehrett

Lex Politica PLLC

William J. Olson

Jeremiah L. Morgan

William J. Olson, P.C.

Michael Boos

J. Mark Brewer

Rick Boyer

Integrity Law Firm

Patrick C. Elliott

Valencia Richardson

Erin Chlopak

Kevin P. Hancock

Emily Halpin McCarthy

Elias Daiute

Alex J. Luchenitser

Americans United for Separation of Church and State

*/s/ Michael P. Farris*
Michael P. Farris
Counsel for Appellants

## TABLE OF CONTENTS

Certificate of Interested Persons .......... i

Table of Authorities .......... vii

Introduction .......... 1

Argument .......... 3

I. The AIA does not bar Plaintiffs' suit. .......... 3

A. Plaintiffs do not seek to restrict the assessment or collection of a tax. .......... 3

1. The Johnson Amendment and any tax penalty are several steps removed. .......... 3

2. The Johnson Amendment burdens speech apart from any tax. .......... 4

3. Violations bring severe nontax consequences. .......... 6

B. Plaintiffs have no other path to relief. .......... 7

C. The DJA does not bar the injunction sought. .......... 10

II. The AIA is a claim-processing rule, and the Government waived it as to the consent judgment. .......... 11

A. This issue is preserved. .......... 11

B. Congress gave no clear statement that the AIA is jurisdictional. .......... 13

1. The AIA speaks to litigants. .......... 14

2. The AIA addresses procedure. .......... 16

3. The AIA yields to waiver and equity. .......... 18

C. No precedent forecloses the question. .......... 19

1. This Court's AIA cases rest on unanalyzed labels. ..... 19

2. The Supreme Court has never applied the clear-statement test to the AIA. ..... 21

D. The Government waived the AIA as to the consent judgment ..... 23

III. Amici's other objections fail. ..... 23

A. Plaintiffs have standing, and their claims are ripe. ..... 24

B. The parties' narrow consent decree does not defeat adversity. ..... 26

C. CLC's policy concerns do not bear on jurisdiction. ..... 28

IV. This Court should reverse the judgment, not affirm in part. ..... 28

Conclusion ..... 29

Certificate of Service ..... 31

Certificate of Compliance ..... 32

## TABLE OF AUTHORITIES

**Cases**

*Agostini v. Felton*,
521 U.S. 203 (1997) ........................................................................22

*Bob Jones University v. Simon*,
416 U.S. 725 (1974) ....................................................................9, 10

*Boechler, P.C. v. Commissioner*,
596 U.S. 199 (2022) ........................................................... 13, 17, 19

*Bowles v. Russell*,
551 U.S. 205 (2007) ........................................................................18

*Branch Ministries v. Rossotti*,
211 F.3d 137 (D.C. Cir. 2000).......................................................5, 25

*Breuer v. Jim's Concrete of Brevard, Inc.*,
538 U.S. 691 (2003) ..................................................................14, 15

*Christian Echoes National Ministry, Inc. v. United States*,
470 F.2d 849 (10th Cir. 1972) .........................................................25

*CIC Services, LLC v. IRS*,
593 U.S. 209 (2021) ......................................................... 3, 4, 6, 7, 10

*Citizens United v. FEC*,
558 U.S. 310 (2010) ....................................................................5, 12

*Cotton v. Hinton*,
559 F.2d 1326 (5th Cir. 1977) .........................................................11

*Enochs v. Williams Packing & Navigation Company*,
370 U.S. 1 (1962) .................................................... 17, 18, 20, 21, 22

*Fort Bend County v. Davis*,
587 U.S. 541 (2019) ........................................................................23

*Gonzalez v. Thaler*,
565 U.S. 134 (2012) ........................................................................16

*Harward v. City of Austin*,
84 F.4th 319 (5th Cir. 2023) .......... 4

*Helvering v. Davis*,
301 U.S. 619 (1937) .......... 18

*Hotze v. Burwell*,
784 F.3d 984 (5th Cir. 2015) .......... 20

*In re Bonvillian Marine Service, Inc.*,
19 F.4th 787 (5th Cir. 2021) .......... 21

*In re Westmoreland Coal Company*,
968 F.3d 526 (5th Cir. 2020) .......... 20

*In re Mooney Aircraft, Inc.*,
730 F.2d 367 (5th Cir. 1984) .......... 18

*Institute for Free Speech v. Johnson*,
148 F.4th 318 (5th Cir. 2025) .......... 7, 24

*Lebron v. National Railroad Passenger Corp.*,
513 U.S. 374 (1995) .......... 12

*Linn v. Chivatero*,
714 F.2d 1278 (5th Cir. 1983) .......... 7

*Local No. 93, International Association of Firefighters, AFL-CIO C.L.C. v. City of Cleveland*,
478 U.S. 501 (1986) .......... 26

*MedImmune, Inc. v. Genentech, Inc.*,
549 U.S. 118 (2007) .......... 10

*Miller v. Standard Nut Margarine Company*,
284 U.S. 498 (1932) .......... 21

*National Federation of Independent Business v. Sebelius*,
567 U.S. 519 (2012) .......... 15, 23

*National Infusion Center Association v. Kennedy*,
No. 25-50661, 2026 WL 2517285 (5th Cir. Aug. 26, 2026) .......... 8, 20

*Nelson v. Landry*,
714 F. Supp. 3d 790 (M.D. La. 2024) ............................................ 27

*Norcave Properties, L.L.C. v. IRS*,
188 F.4th 818 (5th Cir. 2026) .................................................. 4, 20

*Pegues v. Morehouse Parish School Board*,
706 F.2d 735 (5th Cir. 1983) ..................................................... 12

*Pool v. City of Houston*,
87 F.4th 733 (5th Cir. 2023) .................................................. 26, 27

*Reed Elsevier, Inc. v. Muchnick*,
559 U.S. 154 (2010) .................................................................. 15

*Regan v. Taxation with Representation of Washington*,
461 U.S. 540 (1983) .................................................................... 5

*Riley v. Bondi*,
606 U.S. 259 (2025) .............................................. 13, 15, 17, 22, 23

*Rios v. City of Del Rio*,
444 F.3d 417 (5th Cir. 2006) ..................................................... 21

*Rivero v. Fidelity Investments, Inc.*,
1 F.4th 340 (5th Cir. 2021) .................................................... 15, 20

*Rollins v. Home Depot USA*,
8 F.4th 393 (5th Cir. 2021) ........................................................ 12

*Santos-Zacaria v. Garland*,
598 U.S. 411 (2023) ............................................................. 13, 22

*Smallwood v. Gallardo*,
275 U.S. 56 (1927) .................................................................... 16

*Snyder v. Marks*,
109 U.S. 189 (1883) .................................................................. 18

*South Carolina v. Regan*,
465 U.S. 367 (1984) .................................................................... 7

*Susan B. Anthony List v. Driehaus*,
573 U.S. 149 (2014) .......... 7, 10

*Turtle Island Foods, S.P.C. v. Strain*,
65 F.4th 211 (5th Cir. 2023) .......... 25

*United States v. Clintwood Elkhorn Mining Company*,
553 U.S. 1 (2008) .......... 15

*United States v. Kwai Fun Wong*,
575 U.S. 402 (2015) .......... 13

*United States v. Windsor*,
570 U.S. 744 (2013) .......... 27

*Urantia Foundation v. Commissioner*,
684 F.2d 521 (7th Cir. 1982) .......... 9

*Villegas v. Noem*,
149 F.4th 554 (5th Cir. 2025) .......... 13, 15, 17, 20

*Webster v. Doe*,
486 U.S. 592 (1988) .......... 8

*Wilkins v. United States*,
598 U.S. 152 (2023) .......... 16

*Yee v. City of Escondido*,
503 U.S. 519 (1992) .......... 12

**Statutes**

26 U.S.C. § 501 .......... 5

26 U.S.C. § 508 .......... 5

26 U.S.C. § 7409 .......... 6, 7, 10

26 U.S.C. § 7421 .......... 14, 17

26 U.S.C. § 7422 .......... 9, 10

26 U.S.C. § 7428 .......... 9, 10

28 U.S.C. § 1341 .......................................................................... 17

28 U.S.C. § 2283 .......................................................................... 18

**Other Authorities**

Br. for Appellee, *Sunshine Anthracite Coal Co. v. Adkins,* 310 U.S. 381 (1940) (No. 804), 1940 WL 71213 ........................................... 19

Executive Order 13798 (2017) ................................................................ 24

## INTRODUCTION

The Anti-Injunction Act (AIA) protects the Government's power to collect taxes. Yet the Government—the party the AIA protects—asks this Court to reverse.

The proposed consent decree is narrow. It would bar the IRS from enforcing the Johnson Amendment against two churches for what they tell their own congregations, in worship, about electoral politics. No tax has been assessed or sought. But the district court held that the AIA and the Declaratory Judgment Act (DJA) denied it jurisdiction.

Three independent routes lead to reversal.

First, the AIA does not reach this suit or it falls within a recognized exception. Plaintiffs seek to enjoin a speech restriction, not a tax. Even the district court found it "not obvious" that any tax consequence will ever follow. Yet a chill falls on Plaintiffs' speech today. And they have no other path to relief.

Second, the AIA is a claim-processing rule, and the Government waived it as to the consent judgment. Congress must speak clearly before a rule strips federal courts of power. The AIA does not. It tells litigants that "no suit … shall be maintained in any court by any person"—and never mentions jurisdiction; it sits in the Tax Code, not among Title 28's jurisdictional grants; and while courts cannot create equitable exceptions to jurisdictional rules, the Government's own path to reversal

runs through *Williams Packing*, an exception that turns on whether "equity jurisdiction otherwise exists." The existence of this equitable exception affirms that the AIA is a claim-processing rule.

Third, the Government offers its own ground for reversal. Plaintiffs do not oppose it.

Amici's remaining objections fail. FFRF[1] says the threat of enforcement is too remote. But AU told the district court that speech the consent judgment permits "facially violate[s]" the Johnson Amendment. And years after the Executive Order FFRF invokes, the IRS investigated a church after an election sermon and imposed a tax.

Nor does the parties' narrow agreement erase the controversy. The Government answered by asking that Plaintiffs "take nothing" and still contests every other claim. A consent judgment presupposes a live dispute; it does not dissolve one. And CLC's policy objections go to whether to enter the judgment, not jurisdiction.

The AIA protects the collection of taxes. It does not strip a federal court of power to enter the narrow judgment both parties requested. This Court should reverse in full.

[1] Throughout this brief, "AU" means Americans United for Separation of Church and State, "CLC" means Campaign Legal Center and Public Citizen, and "FFRF" means the Freedom From Religion Foundation.

## ARGUMENT

Four points follow. First, this suit falls outside the AIA or within a recognized exception. Second, the AIA is a claim-processing rule that the Government waived as to the consent judgment. Third, amici's other objections fail. And fourth, the Court should reverse in full.

### I. The AIA does not bar Plaintiffs' suit.

The AIA asks about a suit's purpose, measured by "the relief the suit requests." *CIC Servs., LLC v. IRS*, 593 U.S. 209, 217 (2021). This suit seeks to enjoin a speech restriction, not a tax. So both the consent judgment and the suit as a whole are outside the AIA. Dkt.24.45–62.

#### A. Plaintiffs do not seek to restrict the assessment or collection of a tax.

*CIC Services* asked whether a suit was "a tax action in disguise" by weighing three features "in combination": the distance between the rule and any tax, the costs the rule imposes apart from a tax, and the consequences of violating it. 593 U.S. at 219–22. All three show that the relief sought targets a speech rule, not a tax.

##### 1. The Johnson Amendment and any tax penalty are several steps removed.

When a rule and any tax "are several steps removed from each other," and the plaintiff "stands nowhere near the cusp of tax liability," it is "hard to characterize [the] suit's purpose as enjoining a tax." *CIC Servs.*, 593 U.S. at 220–21. That's the case here.

AU's answer—that if the churches ever speak, a later revocation would be "the same threatened injury" as in *Bob Jones* and *Crenshaw*, Dkt.70.15—proves it: any tax consequence lies beyond a future choice, an IRS investigation, and a discretionary decision to act. *See* Dkt.24.48–53. Even the district court found it "not obvious" that any tax will ever be assessed. ROA.1140. Unlike this Court's recent decision, *Norcave Properties, L.L.C. v. IRS*, 188 F.4th 818, 824 (5th Cir. 2026), no assessment is "in motion" here.

Relief may run against a "prerequisite to assessment." *Norcave*, 188 F.4th at 824 (quoting *Harward v. City of Austin*, 84 F.4th 319, 324 (5th Cir. 2023) (per curiam)). That is all Plaintiffs seek. The speech restriction they challenge is not an assessment or collection of a tax; at most, it is a "prerequisite to assessment" that lies far "upstream" of any tax, separated by multiple contingencies. *Norcave*, 188 F.4th at 824; *CIC Servs.*, 593 U.S. at 221.

#### 2. The Johnson Amendment burdens speech apart from any tax.

The Government and amici disregard that the Johnson Amendment imposes a severe nontax cost: it chills what churches tell their congregations, whether or not a tax ever follows. That is a cost "separate and apart from the statutory tax penalty." *CIC Servs.*, 593 U.S. at 220.

The Government, AU, and CLC respond that the Johnson Amendment does not restrict Plaintiffs' speech; it just declines to subsidize it, and Plaintiffs remain free to speak through a § 501(c)(4) affiliate or without the exemption. Dkt.60.52; Dkt.70.15–16, 23; Dkt.69.18–23. This is wrong for two reasons.

First, it disregards that churches are treated as exempt under Section 501(c)(3) without ever applying. 26 U.S.C. § 508(c)(1)(A); ROA.244. And a church that speaks through a separate § 501(c)(4) affiliate no longer speaks *as a church*. *Contra* Dkt.70.16.

Second, the affiliate option does not relieve the burden. Citizens United could have spoken through a separate political action committee. But that option did not cure the burden on the corporation's own speech. *Citizens United v. FEC*, 558 U.S. 310, 337–39 (2010).

AU quotes the earlier *Regan* concurrence for the affiliate option, Dkt.70.23, but stops a sentence short: "[a]ny significant restriction on this channel of communication … would negate the saving effect of § 501(c)(4)." *Regan v. Tax'n with Representation of Wash.*, 461 U.S. 540, 553 (1983) (Blackmun, J., concurring). *Branch Ministries* found that standard met in a case about a church's newspaper ads, because the church's affiliate could form a PAC. *Branch Ministries v. Rossotti*, 211 F.3d 137, 139, 143 (D.C. Cir. 2000). But for worship, the channel is closed. As AU told the court below, the IRS treats speech "at an official

church function" as the church's own. ROA.533. No PAC can preach the church's sermon.

### 3. Violations bring severe nontax consequences.

In *CIC Services*, "separate criminal penalties" meant the plaintiff could not safely break the rule and sue for a refund later. 593 U.S. at 221–22. Plaintiffs face a similar problem here.

Section 7409 lets a court, at the Government's request, enjoin an organization's political expenditures and order relief to preserve its assets—what the Government itself calls an "extraordinary civil remedy"—whether or not the IRS revokes the organization's status or assesses any tax. Dkt.60.54; *see* 26 U.S.C. § 7409(a)(1) (court may act "separate and apart from any other action brought by the United States"). And an investigation alone imposes heavy costs, even if no penalty follows. *See* ROA.885–86 (churches' amicus brief describing their investigations); ROA.683–86, 692 (similar). So Plaintiffs have ample nontax reasons to challenge the Johnson Amendment's chill on their speech.

The Government calls a Section 7409 injunction a "far cry" from the criminal penalties in *CIC Services*. Dkt.60.54–55. Not so. Loss of control over funds, invasive investigations, and IRS demands for contributor lists impose costs no refund can repair. ROA.692; ROA.885–86. And *CIC Services* invoked criminal penalties to show severity, not to

draw a criminal-only line. 593 U.S. at 221–22. "[A]dministrative action, like arrest or prosecution, may give rise to harm sufficient to justify pre-enforcement review." *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 165 (2014); *accord Inst. for Free Speech v. Johnson*, 148 F.4th 318, 327 (5th Cir. 2025).

So this case parallels *Linn* and *CIC Services*, not *Bob Jones*. The plaintiff in *Linn* sought the return of records retained in violation of the Fourth Amendment, and because he did "not challenge the propriety of any tax that may be assessed against him," the AIA did not apply. *Linn v. Chivatero*, 714 F.2d 1278, 1283 (5th Cir. 1983). Likewise, as in *CIC Services*, this dispute is about costs separate and apart from taxes.[2] The downstream possibility of taxes could evaporate and Plaintiffs would still need to bring this challenge due to the other freestanding and "extraordinary" penalties, to borrow the Government's term. "Only an injunction against" the speech restriction "gives [the plaintiff] what it wants: relief from" the speech restriction. *CIC Servs.*, 593 U.S. at 222.

### B. Plaintiffs have no other path to relief.

The AIA also does not apply because Plaintiffs have no other path to relief. *See South Carolina v. Regan*, 465 U.S. 367, 378 (1984) (AIA

---

[2] The Government also says Section 7409 relief is "neither a tax nor a penalty" and claims that it "remedies a discrete issue apart from revocation of exemption," as though that makes it irrelevant. Dkt.60.54. On the contrary, its nontax nature strengthens its similarity to the nontax consequences in *CIC Services*. 26 U.S.C. § 7409(a)(1), (b).

does not reach "aggrieved parties for whom [Congress] has not provided an alternative remedy"). And this Court reads that exception more broadly than the Government does. *See* Dkt.24.55–56. No one identifies a path Plaintiffs can take *today* without first breaking the law—and even that does not guarantee them recourse.

This Court's recent decision in *National Infusion Center Ass'n v. Kennedy*, which the Government itself cites, Dkt.60.65, supports Plaintiffs' position. There, the plaintiffs had no alternative remedy even though a post-payment refund suit was technically available to them, and even though their participation and exposure in the challenged program was voluntary. No. 25-50661, 2026 WL 2517285, at *3 & n.3, *10 (5th Cir. Aug. 26, 2026). The Court agreed with plaintiffs that while a refund suit was an option on paper, it was unavailable as a practical matter because "any taxpayer subject to the tax would find it extraordinarily difficult to pay," and a remedy built on "a tentatively phrased footnote" and "a nonbinding policy" is too uncertain to be an alternative. *Id.* at *10. It warned against "[i]nterpreting the AIA as broadly and the *Regan* exception as narrowly as the Government does," because that "would effectively insulate the [challenged law] from judicial scrutiny of its potential unconstitutionality." *Id.* And it emphasized that "where Congress intends to preclude judicial review of constitutional claims its intent to do so must be clear." *Id.* (quoting *Webster v. Doe*, 486 U.S. 592, 603 (1988) ("serious constitutional question" would "arise if a federal

statute were construed to deny any judicial forum for a colorable constitutional claim")). The barrier here differs—there, the tax would be difficult to pay; here, any refund or Section 7428 path would require a church to violate the law and then await IRS action—but the principle is the same. Nothing in the AIA clearly bars Plaintiffs' colorable constitutional claims, which bear only a remote connection to any tax. And Plaintiffs have no other way to bring them.

The Government and AU push two alternatives—Section 7422's post-payment-refund path and Section 7428's pre-tax declaratory relief suits to challenge adverse determinations of tax-exempt status. But those options are out of Plaintiffs' reach because each requires a violation, then an IRS inquiry, a finding against the church, and a revocation or a tax—barriers they do not dispute. *See* Dkt.60.55; Dkt.70.17–18. *Urantia Foundation v. Commissioner*, cited by AU, even emphasizes that Section 7428's scope is limited to "judicial review of IRS determinations." 684 F.2d 521, 525 (7th Cir. 1982).

Invoking only *Bob Jones*, the Government asserts that requiring an adverse IRS action does not disqualify the two statutes as alternative legal remedies. Dkt.60.55 (quoting *Bob Jones Univ. v. Simon*, 416 U.S. 725, 746 (1974)). But the Government confuses past and future adverse action. In *Bob Jones*, adverse IRS action had already occurred: the Commissioner's proceedings to revoke its ruling letter, which would open the door to the Tax Court and a refund suit, had begun. 416 U.S.

at 735, 746. Here, the IRS has taken no action against Plaintiffs, so they have "no access … to judicial review." *Id.* at 746. *Bob Jones* itself said that if that were so, "our conclusion might well be different." *Id.*

Plaintiffs cannot be forced to break the law. *See CIC Servs.*, 593 U.S. at 222 (distinguishing the AIA's "familiar pay-now-sue-later procedure" from one "with lawbreaking at the start"); *Driehaus*, 573 U.S. at 158–59 (quoting *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 128–29 (2007) ("[W]here threatened action by *government* is concerned, we do not require a plaintiff to expose himself to liability before bringing suit to challenge the basis for the threat")). And even if they did, the IRS might wait years to act and then seek a Section 7409 injunction or use other nontax tools that would injure Plaintiffs without opening the door to a Section 7422 or Section 7428 suit. Neither path opens until the IRS chooses to open it. Until then, the churches' speech stays chilled. So this suit is Plaintiffs' only path to relief, and the *Regan* exception applies.

### C. The DJA does not bar the injunction sought.

The Government agrees that the DJA poses no obstacle, because "the proposed consent judgment contains an injunction, not declaratory relief." Dkt.60.49 (citing ROA.417–18). AU answers that paragraphs 5 and 6 of the judgment are declaratory and that a consent judgment must stand or fall as a whole. Dkt.70.29–32. But those paragraphs are

prefatory recitals; the operative relief is the ¶ 7 injunction and the dismissal of the remaining claims. ROA.417–18. And a court reviewing a proposed decree may "make suggestions … for modifications." *Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977). So the parties are free to conform the recitals on remand.

## II. The AIA is a claim-processing rule, and the Government waived it as to the consent judgment.

The issue is preserved. On the merits, Congress gave no clear statement that the AIA is jurisdictional, no binding precedent holds otherwise, and the Government waived the AIA as to the consent judgment.

### A. This issue is preserved.

Contrary to the Government's and AU's assertions, Dkt.60.56–57; Dkt.70.34–35, the claim-processing argument is timely and preserved.[3] Whether the AIA barred a consent judgment the parties requested was pressed, ROA.1054–55; ROA.1023–25, opposed, ROA.1113 ("Consent cannot cure this defect."), and decided, ROA.1134–36. Critically, both parties represented that jurisdiction existed, ROA.408, and the Govern-

[3] The Government's assertion that Plaintiffs "treated the AIA as jurisdictional" below, Dkt.60.32, is unfounded. The Amended Complaint called the AIA "a barrier to seeking equitable relief." ROA.287. And the letter brief the Government cites, ROA.1106–09; *see* Dkt.60.56, discusses the AIA without calling it jurisdictional. ROA.1107–08.

ment—in AU's words—chose to "waive its AIA defense." Dkt.70.32. Because nonjurisdictional statutes yield to waiver, that waiver controls if the AIA is nonjurisdictional. *See* Section II.B.3, *infra.* The district court rejected the waiver on one premise: the AIA and DJA "are jurisdictional," so jurisdiction "cannot be waived or created by litigation conduct." ROA.1134–35. That premise is wrong, and this panel is free to say so.

"Once a federal claim is properly presented, a party can make any argument in support of that claim; parties are not limited to the precise arguments they made below." *Yee v. City of Escondido*, 503 U.S. 519, 534 (1992). At most, Plaintiffs make "a new argument to support what has been [a] consistent claim"—that federal courts have jurisdiction to enter the requested relief. *Citizens United*, 558 U.S. at 331 (quoting *Lebron v. Nat'l R.R. Passenger Corp.*, 513 U.S. 374, 379 (1995)). And even if the argument had been forfeited (it wasn't), the Court may consider a "pure legal question" to avoid "a miscarriage of justice," *Rollins v. Home Depot USA*, 8 F.4th 393, 398 (5th Cir. 2021), especially where "no prejudice will accrue" to any party. *Pegues v. Morehouse Par. Sch. Bd.*, 706 F.2d 735, 738 (5th Cir. 1983).

Plaintiffs' claim has not changed. And the Government and AU have answered the purely legal argument on the merits. Dkt.60.56–75; Dkt.70.34–40. No one is surprised; no one is prejudiced.

### B. Congress gave no clear statement that the AIA is jurisdictional.

The Government concedes that the AIA's text addresses litigants. *See* Dkt.60.59 ("speaks both to the litigant and to the court"); Dkt.60.66 ("speaks as much to the court as to the litigant"); Dkt.60.67 ("informs the court as well as litigants"). Litigant-directed text signals a claim-processing rule. *Riley v. Bondi*, 606 U.S. 259, 274 (2025). So at most, the text supports two readings: the Government's jurisdictional one and a claim-processing one. "[W]here multiple plausible interpretations exist—only one of which is jurisdictional—it is difficult to make the case that the jurisdictional reading is clear." *Villegas v. Noem*, 149 F.4th 554, 562–63 (5th Cir. 2025) (quoting *Santos-Zacaria v. Garland*, 598 U.S. 411, 416 (2023) (quoting *Boechler, P.C. v. Commissioner*, 596 U.S. 199, 205 (2022))). Even if the Government's reading were better (it's not), "better is not enough." *Boechler*, 596 U.S. at 206. Indeed, a statute that speaks to neither litigants nor courts—untimely claims "shall be forever barred"—has been held not jurisdictional. *Riley*, 606 U.S. at 277 (quoting *United States v. Kwai Fun Wong*, 575 U.S. 402, 410–11 (2015)).

The Government cites *Riley*'s comment that "magic words" are not required, Dkt.60.57 (citing *Riley*, 606 U.S. at 274). It omits the next clause: *Riley* "will not categorize a provision as 'jurisdictional' unless the signal is exceedingly strong." 606 U.S. at 274. And the Government's

own conclusion is only that the AIA's text, purpose, and context "support" a jurisdictional reading, not that they plainly show it. Dkt.60.58. That fails *Riley*'s standard. The AIA's text, context, and history each point the other way.

### 1. The AIA speaks to litigants.

Start with the grammar. "Suit" is the subject. "By any person" names the actor. "In any court" is locative only. Dkt.24.33 (interpreting 26 U.S.C. § 7421(a)). The Government does not dispute the first two points; it argues only that "maintained in any court" also speaks to the court. Dkt.60.66–67. Nor does the Government dispute that the trailing clause, "whether or not such person is the person against whom such tax was assessed," serves only to define which persons the bar reaches. Any other reading renders the clause surplusage. *See* Dkt.24.33.

As for the word "maintained," the Supreme Court called "maintain" "ambiguous at best" in the parallel phrase "may be maintained … in any … court." *Breuer v. Jim's Concrete of Brevard, Inc.*, 538 U.S. 691, 695 (2003). Every definition *Breuer* lists describes litigant conduct: "continue to litigate," "bring or file," "commence or institute," "imports the existence of a cause of action." *Id.* (citation modified). That last definition is the Government's *Boutiller* definition, Dkt.60.67. Even the sense the Government stresses—keeping a pending suit alive—describes what a party does: "an employee may continue to litigate, i.e., 'maintain,' an

action already pending." *Breuer*, 538 U.S. at 695 n.1. The phrase is at most ambiguous, and ambiguity favors the litigant.

Contrary to the Government's argument that the AIA poses "no procedural hurdles," Dkt.60.69, the AIA is an exhaustion rule, a quintessential type of claim-processing rule. *Rivero* defines claim-processing rules as requirements to "complete, or exhaust, before filing." *Rivero v. Fid. Invs., Inc.*, 1 F.4th 340, 344 (5th Cir. 2021) (citation modified). The Government describes the AIA as requiring a *refund* suit, allowing litigants to "seek recourse only after it has been unlawfully exacted." Dkt.60.34 (quoting *United States v. Clintwood Elkhorn Mining Co.*, 553 U.S. 1, 10 (2008)). *National Federation of Independent Business v. Sebelius* confirms the point: taxes "can ordinarily be challenged only after they are paid, by suing for a refund." 567 U.S. 519, 543 (2012).

The AIA parallels the provision in *Riley* and in *Reed Elsevier, Inc. v. Muchnick*, 559 U.S. 154, 160–66 (2010). *See* Dkt.24.31–34. A statute that "tells [litigants] what they must do … but … provides no directives to *courts*" is not jurisdictional. *Riley*, 606 U.S. at 274. Here, the AIA informs courts no more than any other claim-processing rule does. Its grammar and language target litigants.

The Government points to the AIA's "sweeping, mandatory words" as evidence of its jurisdictional nature. Dkt.60.59. But this Court has explained that it is not "relevant that the language … is rigid or harsh." *Villegas*, 149 F.4th at 566.

The other cases cited by the Government require no different result. The Government cites *Gonzalez v. Thaler*, 565 U.S. 134, 141–42 (2012), to show passive voice can be jurisdictional. Dkt.60.59, 67–68. But structure, not voice, did the work there. Section 2253(a) empowers courts of appeals to review final habeas orders; (c)(1) withholds that "appeal … to the court of appeals" absent a certificate. *Gonzalez*, 565 U.S. at 140. The Court never addressed voice. Reading the certificate provisions "against the backdrop of § 2253(a)'s clear jurisdictional grant," it relied on pre-*Arbaugh* precedent and party agreement. *Id.* at 142. Here, the question is contested; the AIA binds "any person" and accompanies no grant. And *Smallwood v. Gallardo*, 275 U.S. 56, 60 (1927), which the Government cites for dismissing claims under language like the AIA's, Dkt.60.67, long predates the clear-statement rule. Its direction to dismiss "for want of jurisdiction," *Smallwood*, 275 U.S. at 62, came with no analysis of whether the bar was jurisdictional or a mandatory claim-processing rule—the kind of unrefined usage that receives "no precedential effect." *Wilkins v. United States*, 598 U.S. 152, 160 (2023) (citation modified). Claim-processing rules may require dismissal just as much as jurisdictional ones.

**2. The AIA addresses procedure.**

Move to context. As the Government admits, the AIA sits in Title 26, not among Title 28's jurisdictional grants. Congress "eschewed those

logical homes for a true jurisdictional provision." *Riley*, 606 U.S. at 274. And the fact that Congress placed some jurisdictional grants in Title 26 does not transform all other requirements sitting nearby. "A requirement does not become jurisdictional simply because it is placed in a section of a statute that also contains jurisdictional provisions." *Villegas*, 149 F.4th at 566 (quoting *Boechler*, 596 U.S. at 206–07). So no jurisdictional presumption attaches to the AIA. Moreover, the Government's own Title 26 jurisdictional examples speak expressly of jurisdiction—several provide that a court "shall have jurisdiction," Dkt.60.60, 69. So Congress knows how to draft a clear statement. It did not in Section 7421(a).

Next, the TIA's language strengthens the claim-processing rule reading of the AIA. Congress drafted the TIA to direct that "district courts shall not ...," 28 U.S.C. § 1341. The fact that the TIA was modeled on the AIA, as the Government emphasizes, Dkt.60.70–71, makes that deliberate change more telling, not less. *Williams Packing* itself treated a textual difference between the two statutes as deliberate: had Congress wanted the AIA to carry a limit the TIA spells out, "it would have said so explicitly." *Enochs v. Williams Packing & Navigation Co.*, 370 U.S. 1, 6 (1962).

And the AIA's pedigree goes unanswered. The 1867 "And no suit ..." clause was added to Section 19 of an 1866 act's pay-first, sue-later exhaustion provision. It was "*in pari materia*" with that provision, and

"any" was "inserted by the revisers." *Snyder v. Marks*, 109 U.S. 189, 191–92 (1883); *see* Dkt.60.34 n.2 (quoting the same "And no suit" text). In other words, it was born as a claim-processing exhaustion rule. And as this Court has held, the district court conceded, and no one has disputed, the AIA's sibling statute, 28 U.S.C. § 2283, is nonjurisdictional as well. ROA.1136 (citing *In re Mooney Aircraft, Inc.*, 730 F.2d 367, 372 (5th Cir. 1984)).

#### 3. The AIA yields to waiver and equity.

End with history. Courts have "no authority to create equitable exceptions to jurisdictional requirements." *Bowles v. Russell*, 551 U.S. 205, 214 (2007). Yet both the *Williams Packing* and *Regan* exceptions exist. Neither the Government nor amici cite *Bowles*. And while the Government says those exceptions define the AIA's scope, Dkt.60.71–72, an exception that turns on whether "equity jurisdiction otherwise exists" is an equitable exception. *Williams Packing*, 370 U.S. at 7.

The history of waivers points the same way. In *Helvering*, the majority reached the merits after the Government's "waiver of a defense under section 3224," the AIA's predecessor. *Helvering v. Davis*, 301 U.S. 619, 639–40 (1937). In *Sunshine Anthracite*, the Government "expressly waived … its defense under Section 3224," Br. for Appellee, *Sunshine Anthracite Coal Co. v. Adkins,* 310 U.S. 381 (1940) (No. 804), 1940 WL 71213, at *9—while arguing in the same brief that the district court

"had no jurisdiction" on a different ground, *id.* at *6. So the Government itself separated a true jurisdictional limit from a waivable defense. The Government calls the *Helvering* and *Sunshine Anthracite* waivers "anomalies," Dkt.60.73, which concedes they happened. AU calls them "outdated," Dkt.70.33, yet admits elsewhere that the 1966 amendment "had no bearing on the [AIA's] jurisdictional effect." Dkt.70.39. And the 1939 and 1954 recodifications AU invokes, Dkt.70.39, came after *Helvering* and before *Williams Packing*. If reenactment ratified anything, it ratified the waiver rule and nonjurisdictional treatment recognized in the *Helvering* line of cases.

*Boechler*'s rule is clear: A jurisdictional rule cannot be waived, must be raised *sua sponte*, and admits no equitable exceptions. 596 U.S. at 202–03. The AIA fails all three, and neither the Government nor amici apply this test to reach a different outcome.

### C. No precedent forecloses the question.

This panel is free to hold that the AIA is nonjurisdictional. The decisions labeling the AIA jurisdictional never ran the clear-statement test, so neither this Court's line nor the Supreme Court's cases bind the panel to that label.

#### 1. This Court's AIA cases rest on unanalyzed labels.

No one defends *Westmoreland* or *Hotze* on their own analysis. The chain leads from *In re Westmoreland Coal Co.*, 968 F.3d 526, 533 (5th

Cir. 2020), to *Hotze v. Burwell*, 784 F.3d 984, 996 (5th Cir. 2015), to one sentence in *Williams Packing*, 370 U.S. at 5. Neither the Government nor amici contend that *Westmoreland* or *Hotze* analyzed the question. Dkt.60.74; Dkt.70.36. Beyond *Williams Packing*, the Government relies on *Rivero* and *Norcave*, Dkt.60.57, 64 & n.7, which are addressed below.

The *Villegas* framework, 149 F.4th at 563–65, governs the review of this line. Unanalyzed jurisdictional labels are dictum, or drive-by rulings with "no precedential effect," even if necessary to the case's disposition. *Id.* at 564 (citation modified). Later panels' citations back to dictum do not cure it. *Id.* And a "long line" of Fifth Circuit cases repeating dictum is not the line *Riley* contemplates. *Id.* at 567.

Later Fifth Circuit cases add no curative analysis. First, in *Rivero*, while the panel did order letter briefs, the panel decided only the DJA question. *Rivero*, 1 F.4th at 344–45. It restated that the AIA "divests courts of subject-matter jurisdiction," but held the AIA "simply inapplicable" and used that statement only to "buttress[]" its DJA holding. *Id.* at 345 (citation modified). And *Rivero*'s analytical method favors Plaintiffs. The DJA speaks to "any court of the United States"; the AIA speaks to "any person." *Id.* at 343–45 (citation modified). Neither the Government nor amici address this distinction.

Likewise, the Fifth Circuit's most recent cases, *National Infusion* and *Norcave*, repeat the dictum label without further analysis. *National Infusion*, 2026 WL 2517285, at *9; *Norcave*, 188 F.4th at 819–20, 826.

*Norcave*'s reference to a "clear jurisdiction strip" is a conclusion, with no clear-statement analysis or citation of *Boechler* or *Arbaugh*.

The rule of orderliness does not save the "jurisdictional" label. *Contra* Dkt.60.75; Dkt.70.37. An earlier panel controls, but not as to dictum. Dictum does not bind. *Rios v. City of Del Rio*, 444 F.3d 417, 425 n.8 (5th Cir. 2006) ("The binding force of earlier opinions extends to alternative holdings but not to *obiter dictum*.").

In addition to prior labels not being actual holdings, *Boechler* would free this panel from them. It applied the clear-statement test to a Tax Code provision after *Hotze*, *Westmoreland*, and *Rivero*. Dkt.24.40–41. The Government answers that *Boechler* involved a different provision. Dkt.60.75. But "[t]he overriding consideration is the similarity of the issues decided," not the statute. *In re Bonvillian Marine Serv., Inc.*, 19 F.4th 787, 792 (5th Cir. 2021) (citation omitted).

#### 2. The Supreme Court has never applied the clear-statement test to the AIA.

The Supreme Court cases cited by the Government and amici also do not command a different result.

First, *Williams Packing* does not support the weight of the Fifth Circuit dictum. The Court granted certiorari in that case to decide the scope of *Miller v. Standard Nut Margarine Co.*, 284 U.S. 498 (1932). *Williams Packing*, 370 U.S. at 2–3. The Government invoked the AIA's

bar, and waiver was never at issue. *Id.* at 2. The Court also used "jurisdiction" loosely, using the phrase "equity jurisdiction" soon after speaking of "withdraw[ing] jurisdiction." *Id.* at 5, 7. And its examination of the purpose and text of the AIA was with an eye to determining the applicability of the AIA, not deciding its character.

AU asserts that the lack of clear-statement analysis in *Williams Packing* is irrelevant because *Agostini v. Felton* still requires courts to follow otherwise-questionable precedents with "direct application." Dkt.70.36–37; *see* 521 U.S. 203, 237 (1997). But *Williams Packing* does not have "direct application" to this case because it never decided whether the AIA's bar can be waived.

Second, AU cites *Riley* for the proposition that a court will not overturn a "definitive earlier interpretation" of a statute as jurisdictional without a clear congressional directive. Dkt.70.38. But *Riley* confined that rule to cases like *John R. Sand*, where "decisions going back more than a century had held that the provision in question and its predecessors were truly jurisdictional" and "referred to the unique characteristics of jurisdictional provisions." 606 U.S. at 276. Loose usage that does not "atten[d] to the distinction between 'jurisdictional' rules (as we understand them today) and nonjurisdictional but mandatory ones"—such as the usage found in *Williams Packing*—does not count. *Id.* at 276 (quoting *Santos-Zacaria*, 598 U.S. at 421). The AIA's long line, marked

by waivers and equitable exceptions, points away from a jurisdictional conclusion.

Third, the Government and AU invoke *NFIB*. But *NFIB* calls the jurisdictional characterization only "a reasonable argument" that "no party supports," then decides the case based on the AIA's scope. 567 U.S. at 542–43, 546.

So no binding precedent holds the AIA jurisdictional.

### D. The Government waived the AIA as to the consent judgment.

The Government argued below that the AIA "does not bar" a consent judgment it requests. ROA.1050, 1054–55, 1058; ROA.1166. And it represented that Section 1331 jurisdiction and the power to enter the injunction existed. ROA.408–09. That ends the matter. A claim-processing rule is waived when the party entitled to invoke it gives it up. *Fort Bend Cnty. v. Davis*, 587 U.S. 541, 548–49 (2019). Once the Government declines to press a nonjurisdictional rule, the rule "does not preclude this case from proceeding." *Riley*, 606 U.S. at 277. Waiver, of course, does not *create* jurisdiction; Section 1331 supplies it.

## III. Amici's other objections fail.

Amici's remaining objections fail. The record satisfies standing, ripeness, and adversity. CLC's misplaced policy concerns relate to whether to enter the consent judgment, not to jurisdiction.

### A. Plaintiffs have standing, and their claims are ripe.

Plaintiffs have shown a serious intent to engage in arguably proscribed speech, restraining only out of fear of violating the Johnson Amendment, and a credible threat of future enforcement. Their injury is traceable and redressable. Dkt.24.27–29. No more is required for pre-enforcement standing and ripeness. *Inst. for Free Speech*, 148 F.4th at 327–33 (finding both on similar facts).

The speech is arguably proscribed. AU itself told the district court that the speech the consent judgment covers "facially violate[s] the Johnson Amendment." ROA.1115.

And the threat of enforcement is credible. FFRF points to the 2017 Executive Order 13798 as proof that Plaintiffs are safe from enforcement. Dkt.64.20. But the IRS has enforced the Johnson Amendment since then, including against Cornerstone Chapel: after its pastor's 2020 election sermon and its distribution of a voter guide, the IRS subjected it to "an invasive investigation" and assessed an excise tax. ROA.285; ROA.634; ROA.885. The size of the tax is beside the point; the investigation was the burden. An executive order guarantees nothing while the statute stays on the books.

FFRF also calls Cornerstone "an anomaly in a sea of nonenforcement." Dkt.64.19. It gets there by discounting Plaintiffs' other two examples—the 2017 targeting settlements and the Christians Engaged denial—as not "enforcements of the Johnson Amendment." Dkt.64.18–

19. But the Amended Complaint offered them as evidence of targeting, not as enforcement actions. ROA.284–86. That pattern, together with Cornerstone, makes future enforcement more than speculative.

CLC's examples make the point: both enforcement actions it cites targeted religious organizations that opposed liberal candidates. Dkt.69.24 (citing *Branch Ministries*, 211 F.3d at 139 (upholding church's tax-exemption revocation for advertisements opposing Bill Clinton); *Christian Echoes Nat'l Ministry, Inc. v. United States*, 470 F.2d 849, 856, 858 (10th Cir. 1972) (upholding retroactive revocation for ministry that criticized President Johnson)).

AU, for its part, argues that the three-step chain of contingencies that renders the AIA inapplicable also defeats standing. Dkt.70.41. But that chain concerns when a tax attaches, not whether the restriction chills speech now. It does.

The Government does not dispute standing. Dkt.60.50 n.5. It maintains that Plaintiffs may not intervene in campaigns while keeping their exemption. ROA.1053. And its position that the speech the consent judgment covers falls outside the Johnson Amendment is a litigation position. A disavowal that binds no one—including the next Administration—is not compelling. *Turtle Island Foods, S.P.C. v. Strain*, 65 F.4th 211, 218 (5th Cir. 2023). Only the consent judgment's entry would bind the IRS. Absent that, the threat of enforcement remains concrete enough for standing.

### B. The parties' narrow consent decree does not defeat adversity.

FFRF says the parties' narrow agreement leaves no case or controversy. Dkt.64.21–23. Not so. Parties who agree "from the beginning" that a law is unconstitutional present a "faux dispute[]." *Pool v. City of Houston*, 87 F.4th 733, 734 (5th Cir. 2023). This case is different.

The parties still disagree. The Government moved to dismiss, answered and denied all liability, and still contests every claim not covered by the consent judgment. ROA.105–53; ROA.373–97; ROA.1049 n.2; ROA.1053. Narrow agreement on one or two sub-issues impacting only some of the parties, at least where, as here, the agreement arises out of settlement negotiations, is not enough to defeat adversity. Parties are allowed to settle and seek entry of consent judgments. *See, e.g., Loc. No. 93, Int'l Ass'n of Firefighters, AFL-CIO C.L.C. v. City of Cleveland*, 478 U.S. 501, 517–22 (1986) (encouraging consent decrees to promote the government's voluntary compliance with federal law). If FFRF were correct, no consent judgment could ever be entered because the moment the parties requested it, adversity would vanish. But "[c]onsent decrees are entered into by parties to a case after careful negotiation has produced agreement on their precise terms. . . , [and] in exchange for the saving of cost and elimination of risk, the parties each give up something they might have won had they proceeded with the litigation." *Id.* at 522 (citation omitted). So too here: Plaintiffs give up every other

claim, with prejudice, and settle for relief limited to two churches' worship-service speech. ROA.298, 417–18.

Moreover, agreement on relief does not end a controversy while the plaintiff's injury remains "concrete, persisting, and unredressed." *United States v. Windsor*, 570 U.S. 744, 756 (2013). Here, that injury persists until a court enters the consent judgment, as only a judgment would bind the IRS.

FFRF's cases are inapposite because none involved the special context of a consent judgment, which is the only context in which the IRS has made the admissions in question, nor the narrow field of agreement here. *See, e.g., Pool*, 87 F.4th 733; *compare Nelson v. Landry*, 714 F. Supp. 3d 790, 805–07 (M.D. La. 2024) (limiting *Pool* to its facts and allowing a case to proceed even after the government decided not to enforce a statute as unconstitutional, because there had been no "formally announced change[] to official governmental policy," only litigation-position statements) (citation modified).

To the extent prudential concerns remain, the vigorous participation of amici who oppose the consent judgment answers them. *Windsor*, 570 U.S. at 760 (adversarial presentation "assured by the participation of *amici curiae* prepared to defend with vigor" the law).

### C. CLC's policy concerns do not bear on jurisdiction.

CLC's concerns about election spending were ably addressed by amici below. ROA.934–70. Moreover, those concerns go to whether the district court should enter the consent judgment on remand, not to jurisdiction.

## IV. This Court should reverse the judgment, not affirm in part.

The court below entered one judgment dismissing "[a]ll claims … without prejudice for lack of subject-matter jurisdiction." ROA.1142. The consent judgment resolves every claim on its own terms via the ¶ 7 injunction and the dismissal of the rest with prejudice. ROA.417–18. Plaintiffs' release of claims is conditioned on the consent judgment's entry. ROA.411–12.

The Government argues that the Court "need not reach" issues beyond those redressed by the consent judgment, as a reason not to reverse on Plaintiffs' AIA-inapplicability arguments. Dkt.60.50. But while those arguments necessarily support jurisdiction for all Plaintiffs' claims, they equally support jurisdiction over the consent decree. And the Government's position overlooks the lower court's discretion over entry of consent decrees. Should the court not enter the decree, Plaintiffs would again need to press their other constitutional claims. But Plaintiffs have no other opportunity to correct the lower court's erroneous holding that the AIA and DJA bar *all* their claims. And a partial affirmance would freeze a jurisdictional dismissal of the very claims the

consent judgment resolves on its own terms. Therefore, this Court should reverse the judgment in its entirety.

## CONCLUSION

This Court should reverse the judgment of dismissal and remand with instructions for the district court to consider the parties' joint motion for the consent judgment.

Dated: October 27, 2026

Respectfully submitted,

*s/Michael P. Farris*

Michael P. Farris
Sarah Siu
NATIONAL RELIGIOUS BROADCASTERS
800 Maryland Ave, N.E.
Washington, D.C. 20002
(571) 359-6000
mfarris@nrb.org
ssiu@nrb.org

James A. Campbell
John J. Bursch
David A. Cortman
ALLIANCE DEFENDING FREEDOM
440 First Street NW, Suite 600
Washington, DC 20001
(202) 393-8690
jcampbell@ADFlegal.org
jbursch@ADFlegal.org
dcortman@ADFlegal.org

Jacob P. Warner
ALLIANCE DEFENDING FREEDOM
15100 N. 90th Street
Scottsdale, AZ 85260
(480) 444-0020
jwarner@ADFlegal.org

Rita M. Peters
CITIZENS FOR SELF-GOVERNANCE
7586 Stoney Lick Road
Mount Crawford, VA 22841
(540) 830-1229
rpeters@selfgovern.com

David A. Kallman
Stephen P. Kallman
KALLMAN LEGAL GROUP, PLLC
ATTORNEY AT LAW
5600 W. Mount Hope Hwy.
Lansing, MI 48917
(517) 322-3207
dave@kallmanlegal.com
steve@kallmanlegal.com

*Counsel for Appellants*

## CERTIFICATE OF SERVICE

I hereby certify that on October 27, 2026, I electronically filed the foregoing brief with the Clerk of the Court for the United States Court of Appeals for the Fifth Circuit using the appellate CM/ECF system. I certify that all participants in the case are registered CM/ECF users, and that service will be accomplished by the CM/ECF system.

*s/ Michael P. Farris*
Michael P. Farris
*Counsel for Appellants*

## CERTIFICATE OF COMPLIANCE

This brief complies with the word limit of Fed. R. App. P. 32(a)(7)(B) and Circuit Rule 32 because this brief contains 6,468 words, excluding parts of the brief exempted by Fed. R. App. P. 32(f).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in Word 365 using a proportionally spaced typeface, 14-point Century Schoolbook.

Dated: October 27, 2026

*s/ Michael P. Farris*
Michael P. Farris
*Counsel for Appellants*